JUDGE NATHAN

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**15 CV 6119**



| | |
|---|---|
| **STEVEN E. GREER, MD**<br>an individual. | ) |
| | ) **COMPLAINT** FOR: |
| Plaintiff; | ) |
| | ) 1. VIOLATION OF FIRST AMENDMENT |
| v. | )    RIGHTS |
| | ) 2. DISCRIMINATION IN VIOLATION OF |
| **Dennis Mehiel**, an individual, **Robert** | )    FAIR HOUSING ACT 42 U.S.C. 3601 et seq. |
| **Serpico**, an individual, **The Battery Park** | ) 3. RETALIATION IN VIOLATION OF FAIR |
| **City Authority**, a New York State | )    HOUSING ACT 42 U.S.C. 3601 et seq. |
| authority, **Howard Milstein**, an individual, | ) |
| **Steven Rossi**, an individual, **Janet Martin**, | ) 4. DEFAMATION |
| an individual, **Milford Management**, a | ) |
| New York corporation, and **Mariners Cove** | ) |
| **Site B Associates**, a New York corporation. | ) DEMAND FOR JURY TRIAL |
| | ) |
| Defendants. | ) |

Plaintiff Steven E. Greer ("Greer" or "Plaintiff") hereby complains and alleges as follows:

## NATURE of CASE

    1.    The Plaintiff was retaliated against by Dennis Mehiel, Robert Serpico, The Battery Park City Authority, Howard Milstein, Steven Rossi, Janet Martin, Milford Management and Mariners Cove Site B Associates (collectively as "Defendants") over his local news reporting of each of them. They colluded to evict Plaintiff from his apartment where he has paid above-market-rate rent for 13-years and. In doing so, Defendants have violated Plaintiff's First Amendment rights.

    2.    In the course of defending himself in state court to stop the eviction, Plaintiff uncovered more wrongdoing relating to The Fair Housing Act. Defendants have violated the

Fair Housing Act be scheming to segregate apartment buildings by race and income. Lastly, Defendants have defamed Plaintiff.

      3.     This federal case shares the same common nucleus of operative facts as an ongoing state Landlord and Tenant court case and Plaintiff asks that this court to enjoin that case.

<h3 style="text-align:center;"><u>THE PARTIES</u></h3>

      4.     Plaintiff Steven E. Greer ("Greer") is a citizen of the United States of America currently living and domiciled in New York, New York. Since 2002, Plaintiff has resided at 200 Rector Place, 35F, New York, New York, 10280. Greer is a citizen of New York and the United States.

      5.     Defendant Dennis Mehiel ("Mehiel") is a citizen of the United States of America currently living and domiciled in New York, New York. Mehiel is a citizen of New York. At all times relevant herein, Mehiel was Chairman of the Battery Park City Authority ("BPCA") in New York..

      6.     Defendant Robert Serpico ("Serpico") is a citizen of the United States of America currently living and domiciled in New York, New York. Serpico is a citizen of New York. At all times relevant herein, Serpico was the Chief Financial Officer of the Battery Park City Authority.

      7.     The Battery Park City Authority ("BPCA") is a New York State Authority located in Southern Manhattan, New York City.

      8.     Defendant Howard Milstein ("Milstein") is a citizen of the United States of America currently living and domiciled in New York, New York. Milstein is a citizen of New York.

      9.     Defendant Steven Rossi ("Rossi") is a citizen of the United States of America currently living and domiciled in New York, New York. Rossi is a citizen of New York. At all times relevant herein, Rossi has worked for Milford Management and Milstein.

      10.    Defendant Janet Martin ("Martin") is a citizen of the United States of America currently living and domiciled in New York, New York. Martin is a citizen of New York. At all

times relevant herein, Martin has worked for Milford Management and Milstein.

11.    Defendant Milford Management ("Milford") is a New York State corporation with its principal place of business in New York City, New York.  Milford is owned by Milstein.

12.    Defendant Mariners Cove Site B Associates ("Mariners") is a New York corporation with its principal place of business in New York, New York.  Mariners is owned by three different LLC partnerships. Milstein owns a 40% interest in Mariners through another one of his companies, Rector Park LLC.

13.    At all times relevant herein, Milstein, Martin, and Rossi were/are employees of Mariners and Milford. Defendant Rossi reports daily to work at 99 Battery Place in Lower Manhattan.  Martin works mostly in the Midtown Manhattan offices of Milford. Milstein employs individual defendants Martin and Rossi through shell companies, such as Defendants Milford and Mariners.

14.    The interrelationship of the Defendants and their multilayered shell companies is intentionally complex to discourage litigation. Below is a simplified chart to explain the organizations.

## Shell companies that own the building at 200 Rector Place, New York, NY

### Mariners Cove Site B Associates
(The company that owns 200 Rector Place)

|  |  | Ownership |
|---|---|---|
| Howard Milstein | Rector Park Associates LLC | 40% |
| Michael Nelson | Cara Associates LLC (Which is owned by Underhill Cara Managers Associates LLC) | 30% |
| Ivan Goodstein | Hudson South B Associates LLC and Hudson South Associates LLC (which are part of the Goodstein Development Corporation) | 30% |

### Milford Management
(Staffs and maintains the building)

| Howard Milstein | 100% ownership |
|---|---|

## JURISDICTION AND VENUE

15.     The Plaintiff's complaint contains federal claims arising under the Constitution and laws of the United States.  Defendants colluded to violate Plaintiff's rights to freedom of the press and speech guaranteed by the First Amendment. Defendants further violated the federal Fair Housing Act 42 U.S.C. § 3601 et seq. and 42 U.S.C. § 3617.  This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 3601, and 42 U.S.C. § 1983.

16.     Plaintiff's state law claims against Defendants arise from the same common nucleus of operative facts and are of such character that the claims are so related to claims in the action within such original jurisdiction of the Court that Plaintiff's state law claims form part of the same case or controversy.  Thus, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in the district of the Southern District of New York and all Defendants are residents of the State of New York.

## FACTS

18.     The Plaintiff is a medical doctor surgeon and author of a medical textbook as well as numerous peer-review research papers. He has been awarded prestigious federal research grants to conduct clinical trials. He also became a portfolio manager for premier financial funds, most recently at Merrill Lynch, where he was responsible for $250 Million in assets within a $10 Billion internal prop-trading unit. Both medicine and finance are highly regulated industries requiring Plaintiff to have undergone strenuous background checks, fingerprinting, and extensive state and federal testing.

19.     Plaintiff continues to volunteer his medical services to elderly patients in nursing homes in need of wound care. His research experience, having conducted clinical trials with federal grants from the VA and having written a textbook on wound healing, has medical directors of large New York long-term care facilities still requesting him to speak at grand

rounds to educate their staff.

20.     In addition, the Plaintiff is a journalist, with several Op-Ed's published in the Wall Street Journal, and the publisher of one of the most viewed local news website for Downtown Manhattan called BatteryPark.TV. Plaintiff spends many thousands of his own dollars, and hundreds of hours of time, each year to operate BatteryPark.TV as a community service.

21.     Plaintiff's journalism led him into federal oversight activities assisting the U.S. Senate and House investigate waste and fraud in medicine as a whistleblower. He has worked with Senator Grassley's Finance and Judiciary committees, helping get the Physician Payments Sunshine Act passed as part of the ACA law in 2010. His journalism has been referenced during congressional testimony.

22.     Plaintiff is also a regular guest pundit on national cable TV news channels, such as CNBC, MSNBC, and Fox.

23.     In the course of reporting, Plaintiff began to uncover scandals relating to the Defendants.

24.     In or around 1984, the owners of the apartment tower with more than 500 units located at 200 Rector Place, New York, New York, 10280 "Rector Apartments", where Plaintiff lives, signed a lease with the state-controlled BPCA. The lease allowed the BPCA to take advantage of certain property tax breaks provided by the N.Y. RPT. Law § 421-a ("421-a").

25.     Years later, in or around 1987, the building owners filed a "condominium offering" with the New York Attorney General and failed to state that 40% of the apartments would be kept as rentals indefinitely. As a result, the building owners were awarded a condominium status for the building as if there were no rental apartments, when in fact there have been rentals since the building was built. Defendants Milstein and Mariners never intended to sell the apartments that comprise 40% of the building and have continued to deceive the Attorney General for more than thirty years by filing at least twenty (20) more condominium offerings, none of which state that rental apartments were never meant to be sold as condominiums.

26.     In 2002, Plaintiff moved into 200 Rector Place, 35F, as a renter paying $2,265 per month pursuant to the "Coop/Condo Lease Agreement" between Mariners, Milford, and plaintiff ("Lease") with Milford, which is incorporated by reference and attached hereto as **Exhibit A.** Plaintiff's lease with Milford made no mention of the fact that the building was partaking in the 421-a program.  As a result, Plaintiff's apartment was "rent-stabilized" and not a "condo."

27.     On July 15, 2014 defendant Rossi stated in an Affidavit filed in Landlord and Tenant Court, **Case No. 63974/2014**, that the 421-a status was "irrelevant" to renting tenants. The Affidavit is incorporated herein by reference and attached hereto as (**Exhibit J** see ¶ 59).

28.     In 2004, Plaintiff renewed his lease and the rent increased 8% to $2,450. Rent-stabilization would have capped the increase to only 2.2%, or to $2,310. Plaintiff renewed his lease eight more times, most recently in 2013. The rent demanded in the 2013 lease was 7.8% greater than the year before and rose to $3,395 per month.

### Lease terms for
### Rent paid by Plaintiff

| Year | | year-over-year increase |
|------|--------|------|
| 2002 | $2,265 | |
| 2003 | $2,378 | 5.0% |
| 2004 | $2,450 | 3.0% |
| 2005 | $2,575 | 5.1% |
| 2006 | $2,675 | 3.9% |
| 2007 | $2,850 | 6.5% |
| 2008 | $2,995 | 5.1% |
| 2009 | $2,995 | 0.0% |
| 2010 | $2,995 | 0.0% |
| 2011 | $3,150 | 5.2% |
| 2012 | $3,150 | 0.0% |
| 2013 | $3,395 | 7.8% |
| | **CAGR** | |
| | 4.5% | |

Rent-stabilization caps increases at 2.2%

**Actual total rent paid by Plaintiff**

| Year | | annual payments |
|------|--------|-----------------|
| 2002 | $2,265 | $27,180 |
| 2003 | $2,378 | $28,539 |
| 2004 | $2,450 | $29,400 |
| 2005 | $2,575 | $30,900 |
| 2006 | $2,675 | $32,100 |
| 2007 | $2,850 | $34,200 |
| 2008 | $2,995 | $35,940 |
| 2009 | $2,995 | $35,940 |
| 2010 | $2,995 | $35,940 |
| 2011 | $3,150 | $37,800 |
| 2012 | $3,150 | $37,800 |
| 2013 | $3,395 | $40,740 |
| | Total | $406,479 |

**Total rent that should have been paid
if the building were rent-stabilized**

| Year | | annual payments |
|------|--------|-----------------|
| 2002 | $2,265 | $27,180 |
| 2003 | $2,315 | $27,778 |
| 2004 | $2,366 | $28,389 |
| 2005 | $2,418 | $29,014 |
| 2006 | $2,471 | $29,652 |
| 2007 | $2,525 | $30,304 |
| 2008 | $2,581 | $30,971 |
| 2009 | $2,638 | $31,652 |
| 2010 | $2,696 | $32,349 |
| 2011 | $2,755 | $33,060 |
| 2012 | $2,816 | $33,788 |
| 2013 | $2,878 | $34,531 |
| | Total | $368,668 |

**Total amount of rent overpaid by Plaintiff**

**$37,811**

29.     In 2009, Plaintiff created the local news website called **BatteryPark.TV** and began muckraking, uncovering corruption at the city and state levels of government. Defendants were targets of his investigative reporting, which is incorporated by reference and attached hereto as **(Exhibit H)**. Plaintiff has also organized some members of the community and to try and help them enforce their rights under the Fair Housing Act through a tenants' association, and through a block association called "Friends of BPC", which held its first meeting on March 23rd, 2014.

## THE REAL ESTATE DEFENDANTS AND BPCA DEFENDANTS
## HAVE CLOSE TIES

30.     In New York, big real estate companies are often closely intertwined with state politicians. In this instant case, the New York State-controlled BPCA has powerful influence over any real estate developer that leases property from the BPCA, such as Milstein and Mariners, where the Plaintiff lives. The BPCA negotiates the ground lease and "Payments in Lieu of Taxes" ("PILOT fees") that Defendants Milstein and Mariners in this case have to pay. If Defendants Serpico and Mehiel wanted to collude and retaliate against Plaintiff by asking defendants Milstein, Rossi, or Martin to evict him, they easily would have obtained the cooperation of said Defendants.

31.     As evidence of this cozy relationship between the BPCA and its tenants, such as Defendants Milstein, Milford, and Mariners, one of the rare sales that Milstein has ever made of the original rental apartments set aside in the 1980's was a sale to a BPCA board member, Robert Mueller, at below-market-rate. This is according to a legal complaint filed by real estate business partners of Defendants Milstein and Mariners, which is incorporated by reference and attached hereto as **(Exhibit B)**.

## PLAINIFF'S LEASE EXPIRES WITHOUT RENEWAL

32.     After dozens of calls and emails from Plaintiff to Defendants went unanswered, the expiration date of Plaintiff's apartment lease on April 31, 2014 passed by. Plaintiff was then served papers to appear in New York Civil Court, Landlord and Tenant division, to face eviction proceedings **(Exhibit C)**. Again, no reason for the eviction was given, just as no reason

was given in the January, 2014 letter from Clive Spagnoli.

33.     The case number for the ongoing Landlord and Tenant Court eviction case is **63974/2014**. The case has been allowed to go to trial and the next court date is August 10th, 2015. Notably, the judge in that case allowed respondent Greer (The Plaintiff in this instant case) to argue that he was evicted out of retaliation, violating "N.Y. RPP. LAW § 223-b : Retaliation by landlord".

### MILFORD INITIATES EVICTION PROCEEDINGS AGAINST PLAINTIFF

34.     In February of 2014, Plaintiff received a letter from an employee of Milford notifying him that the lease would not be renewed and to leave by April 30th of 2014 (**Exhibit D).** No reason was given for the eviction, and Plaintiff was paying his rent in full. This move to evict Plaintiff was clearly in retaliation for his news reporting.

35.     In March of 2015, defendant served a "Notice of Petitioner Holdover Dwelling, condominium apartment" on Plaintiff (**Exhibit C).**  Plaintiff replied that the building was not "condominium" and that the defendants were violating N.Y. Real Prop. Law § 223-b. ("Section 223-b") in a retaliatory eviction (**Exhibit E).**

36.     On March 13, 2015, Judge Hahn of the Landlord and Tenant court at 111 Centre Street decided to allow Greer the respondent (The Plaintiff in this instant case) to argue that Mariners violated Section 223-b and that the warranty of habitability was breached. Judge Hahn did not allow Plaintiff to argue that the building was not "condo" because that action would have been  a "counterclaim," which was forbidden by the lease. However, Judge Hahn stated that the argument could be made in a separate proceeding, which is being argued in this the instant action in federal court (**Exhibit F).**

37.     On April 20, 2015,  Mariners (the petitioners in the housing case), filed an Order to Show Cause ("OSC") to evict the Plaintiff, which is incorporated by reference and attached hereto as (**Exhibit G).**

38.     There is an OSC hearing set for August 10, 2015, and the entire matter is set for trial.

39.     At the time the eviction proceedings were initiated against Plaintiff, Plaintiff

was paying above the market rate for his apartment and was in good standing, having no complaints made about him by other tenants or by the defendants.

40.     In the course of defending himself against the retaliatory eviction proceedings underway in Landlord and Tenant Court, the Plaintiff discovered that Defendants Mariners, Milford, Rossi, and Milstein had fraudulently obtained "condominium" status for Rector Apartments and were not advising tenants of Rector Apartments that the building was actually rent-stabilized by Section 421-a.

## THE DEFENDANTS' DECISION TO EVICT PLAINTIFF IS IRRATIONAL UNLESS THE INTENT IS TO RETLAIATE

41.     The decision to evict the Plaintiff from his apartment at 200 Rector Place, unit 35F, is completely irrational, unless the real intent is to run the Plaintiff out of the community, making it impossible for him to exercise his freedom of speech and freedom of the press through BatteryPark.TV. Plaintiff pays a higher rent than comparable market rate apartments in his building, pays his rent in full, and has had no complaints against him in the 13-years of living at Rector Apartments. No other renter in a similar good standing has ever had his or her lease not renewed by the Defendants.

42.     The targets of the Plaintiff's investigative reporting, the Defendants, filed an action to evict Plaintiff and not to renew Plaintiff's lease in an attempt to chill and stifle his First Amendment rights (**Exhibits C, G**). All of the Defendants knew, that by removing Plaintiff from the neighborhood of Battery Park City, that his news site called BatteryPark.TV would be effectively shut down, or hindered at least.

## PLAINTIFF'S CRITICAL REPORTING ON THE REAL ESTATE DEFENDANTS LED TO RETALIATORY EVICTION

43.     Plaintiff has lived in his apartment complex Rector Apartments in Battery Park City for 13-years. On October 23, 2013, he reported in BatteryPark.TV on an issue involving Mariners, Milford, and Rossi. Plaintiff reported that Defendant Milford had schemed to sabotage street safety measures planned by the City DOT that would have made the street