speech by sending a chilling message in the form of years of legal proceedings. If the defendants succeed in eviction, then the Plaintiff's freedom of speech and press will be violated even further.

93.     The aforementioned conduct of the Defendants caused the damages suffered by the Plaintiff. The retaliatory eviction has directly caused mental and financial hardship for the Plaintiff, as well as hampered his ability to create free press and speech.

94.     Plaintiff runs a site called BatteryPark.TV with offices in his apartment at the Rector Apartments. Because the plaintiff needs to have those offices directly in the community of Battery Park City, which is controlled by Defendants via the BPCA and their real estate companies, the retaliatory eviction against Plaintiff violated Plaintiff's freedom of the press and speech.

95.     By the acts and practices described above, Defendants Serpico and Mehiel, acting in their individual capacity and under the color of the law, violated the First Amendment of the United States Constitution when they colluded to chill and deprive Plaintiff of his rights to freedom of speech and freedom of the press by removing him from the neighborhood and apartment building via eviction.

96.     Because Plaintiff is a community activist and organizes a tenants association, Defendant's retaliatory eviction violates state law N.Y. RPP. LAW § 223-b.

97.     42 U.S.C. § 1983, commonly referred to as "section 1983" provides the plaintiff with the legal tool to sue the defendants over the violation of his First Amendment rights.

98.     "Section 1983" allows for compensatory and punitive damages. As a result of the defendants illegal behavior, the plaintiff has suffered years of irreparable mental anguish not knowing the fate of his home or whether he will be homeless, has been forced to expend the hundreds of hours of work required in preparing pro se court documents and attend court, has been humiliated in his community.

99.     As employees and members of the state-run Battery Park City Authority (BPCA), defendants Serpico and Mehiel were acting under the "color of the law" in "individual capacity" when they deprived the plaintiff of his constitutional rights under the First

Amendment, and also when they violated the Fair Housing Act.

## SECOND CAUSE OF ACTION
(Discrimination Under Fair Housing Act 42 U.S.C. § 3601et seq.)
(Against All Defendants)

100.   Plaintiff restates and incorporates by reference each of the foregoing paragraphs.

101.   By the acts and practices described above, Defendants acting in their individual capacity and under the color of the law, coerced, intimidated, threatened, and interfered with Plaintiff's exercise and enjoyment of a quality of life that would have been enjoyed in a more racially diverse building and community, thereby violating terms of the Fair Housing Act of 1968 (Title VIII of the Civil Rights Act of 1968), 42 U.S.C. Section 3604, and/or (The Civil Rights Act of 1866) 42 U.S.C. Section 1982

102.   By withholding vital rent-stabilization protections that should have been afforded to the plaintiff in the building, the defendants effectively segregated the building, making it virtually all-white. That is a crime against the prospective tenants in the protected classes of The Fair Housing Act, and also deprived the plaintiff of a certain quality of life that would have been enjoyed in a more racially diverse building and community.

103.   The Supreme Court of the United States ruled on June of 2015, in *Texas Department of Housing & Community Affairs v. The Inclusive Communities Project, Inc.,* that it is a violation of the Fair Housing Act for a "business practice" to cause a **disparate-impact** to minorities. In that case, the State of Texas was selectively awarding Low Income Housing Tax Credits to regions of Dallas that were already predominantly minority, thereby de facto propagating a housing segregation policy.

104.   In the instant case, the Plaintiff argues that the defendants have likewise created a **disparate-impact** segregated housing community in Battery Park City, New York, by

withholding crucial rent-stabilization protection from apartments that should have been made available due to the 421-a law that the defendants opted into. By doing so, the defendants have kept the large apartment building they own with thousands of residents in it to an almost all-white demographic. Fewer than 2% of the tenants are African American or Hispanic. This is a **disparate-impact.**

105.     All Defendants colluded and participated in this illegal violation of the Fair Housing Act. The real estate Defendants, Mariners, Milford, Milstein, and Rossi committed the illegal acts of concealing of the rent-stabilization protection that should have been afforded to renters and of defrauding the New York State Attorney General, while the BPCA employee Defendants, Serpico and Mehiel, looked the other way knowing without a shadow of doubt that the apartment building in question had rental units from the day it was built more than 30-years ago and was part of the 421-a rent-stabilization program since the lease was signed between their BPCA and the real estate Defendants in 1984.

### THIRD CAUSE OF ACTION
(Retaliation Under Fair Housing Act 42 U.S.C. § 3601 et seq.)
(Against All Defendants)

106.     Plaintiff restates and incorporates by reference each of the foregoing paragraphs.

107.     By the acts and practices described above, Defendants violated § 3617 of The Fair Housing Act 42 U.S.C. § 3601 when they retaliated against the plaintiff by pursuing eviction proceedings in court.

108.     The Plaintiff had been assisting others in the community with their Fair Housing Act rights, through his BatteryPark.TV reporting and tenants' association, which is protected activity under the Fair Housing Act.

109.     All Defendants were aware of the protected activity of Plaintiff since they are regular viewers and readers of BatteryPark.TV.

110.     All Defendants subsequently subjected Plaintiff to an adverse action, which as

the retaliatory eviction proceeding.

111.    There was a causal connection between this adverse action and Plaintiff's protected activity. No other renting tenant of the Defendants has ever been evicted while also being paid up in rent and having no other complaints made about him.

112.    As a result of the defendants illegal behavior, the plaintiff has suffered years of irreparable mental anguish not knowing the fate of his home or whether he will be homeless, has been forced to expend the hundreds of hours of work required in preparing pro se court documents and attend court, has been humiliated in his community, and has been overcharged for rent since the year 2004 totally an amount of at least $40,000, factoring in "fair use" payments made at $3,395 per month after the last lease expired in 2014.

### FOURTH CAUSE OF ACTION
(Defamation)
(Against Defendants Martin, Rossi, Milford, and Mariners)

113.    Plaintiff restates and incorporates by reference each of the foregoing paragraphs.

114.    The Defendants defamed The Plaintiff. On May 30th, 2014, Martin, who runs the real estate interests of her co-defendant and boss Milstein, wrote in an email (**Exhibit M**) to her staff that was accidentally cc'd to the Plaintiff:

> **"Rossi and I are on top of this issue. He is a truly deranged person who has no concept of reality. Will keep you posted. Security will post pictures in this bldg for safety reasons."**

115.    This comment broadcast to others was *per se* defamatory. It exposed Plaintiff to public hatred, contempt, ridicule and disgrace.

116.    There is no question that the email comment was referring to the Plaintiff.

117.    The email from Martin was sent to others. Therefore, it was broadcast to the public.

118.    The email from Martin contained statements meant to be fact, not opinion, which were untrue. The Plaintiff is not a "truly deranged person who has no concept of reality." and there is no need to post photos of him alerting security.

119.     Martin sent the email and published it a grossly irresponsible manner without consideration for the standards of information gathering and dissemination followed by responsible parties. She made no attempt to research the facts, and had never met the Plaintiff in her life. At the time of this complaint filing, the Plaintiff and Martin still have never met in person nor spoken on the phone.

120.     The false allegation in the Martin email caused actual harm to the Plaintiff. He has suffered damages, such as personal humiliation, mental anguish and suffering, and damage to Plaintiff's reputation or standing in the community. As a result of this defamation by Defendants Martin, Rossi, and Milstein, many of the plaintiff's neighbors have shunned him.

121.     The Milsteins also own Emigrant Bank and Martin's email was sent to other bank employees. The "building" she was referring to seems to be one of the bank offices. Therefore, she was setting up Plaintiff to possibly be arrested had he unknowingly walked into one of their banks.

122.     The Plaintiff is a medical doctor and licensed financial expert who works in two highly-regulated professions. Any assertion that he is mentally ill, as Martin made in her blast email, is "*per se*" defamation.

123.     In addition, Rossi has been telling other tenants of the Plaintiff's building that he is a deranged man whom they are "trying to evict", and that he is a freeloader "not paying rent".

124.     On April 29th, 2015, the Plaintiff interacted with the building superintendent, Gus Ouranitsas, over major repairs need to his apartment. Mr. Ouranitsas accused the Plaintiff of not paying rent, which was why he was received a used dishwasher to replace the old one, and not getting new kitchen cabinets after the pipes in the sink burst. The assistant handyman Paul Maddox witnessed the comment. The Plaintiff documented the conversation in an email (**Exhibit N**):

> **"You just left my apartment at 4:10 PM today...(I said to you) "I pay $3,500 for this apartment. I demand proper repairs. Not this half ass work", and you derisively replied, "You are not paying rent".**
>
> **That explains it all. You and your supervisors are clearly harassing me and withholding services from me because you think I am not paying rent."**

125.   The fact that Mr. Ouranitsas uttered these words means that Defendants Rossi, Martin, or Milstein had told him lies about Plaintiff, defaming him.

126.   Additional witnesses and evidence will be produced during trial to detail the full extend of the defamation created by the Defendants' smear campaign.

127.   The actual, assumed, and punitive damages to the plaintiff allowed in cases of defamation will be determined during trial by this court.

## PERMANENT INJUNCTION
### (on the state Landlord and Tenant Court case)

128.   The plaintiff is requesting of this court to enjoin the ongoing case in Landlord and Tenant court, "*Mariners Cove Site B Associates v Dr. Steven Greer*", **Case No. 63974/2014**, since it involves many of the constitutional matters of this instant federal case as a "common nucleus of fact".

129.   In the state Landlord and Tenant court case, a trial set for August 10th will determine whether a retaliatory eviction is being attempted by the defendants in this case (the petitioners in that case), which would be a violation of the RPP § 223-b. Courts have ruled that it is a First Amendment federal matter for state employees to violate § 223-b.

130.   Richard H. Fallon, Jr., et al., Hart and Wechsler's The Federal Courts and the Federal System, 903 (5th ed. 2003); 13D Charles Alan Wright, et al., Federal Practice & Procedure § 3566 (3d ed. 2009) (concluding that "the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws")." In this instant case, "state officers" are Defendants Mehiel, Serpico, and BPCA who are working to evict Plaintiff in state court to violate his First Amendment rights.

131.   A 1998 review of Section 1983 by the Federal Judicial Center (FDC) states, "With jurisdiction over federal claims, many federal courts in 42 U.S.C. § 1983 suits also have jurisdiction to adjudicate state law claims that arise out of "a common nucleus of operative

fact." Formerly known as ancillary and pendent jurisdiction, supplemental jurisdiction under 28 U.S.C.§ 1367 permits both pendent claim and pendent party jurisdiction. 28 U.S.C. § 1367 changed "the preexisting law in that it makes supplemental jurisdiction mandatory, not discretionary.".

132.   The arguments made in this instant federal case relate to whether the building is truly a "condominium" or whether the defendants obtained that status by misleading the New York Attorney General. Also, a key issue argued in the state court case is whether the building should have been rent-stabilized due to 421-a law, thereby making it illegal to evict Plaintiff. Those are all part of a "common nucleus of operative fact" that is also being argued in the lower state Landlord and Tenant court (**Exhibits C - G**).

133.   In the ongoing case in state Landlord and Tenant court, *"Mariners Cove Site B Associates v Dr. Steven Greer"*, **Case No. 63974/2014**, the petitioners in that case, who are the Defendants in this federal case, have an Order to Show Cause pending a decision on August 10th that seeks the eviction of Plaintiff and possession of his apartment.

134.   The revised anti-injunction statute, section 2283 of Title 28 of the United States Code, includes three specific exceptions. Federal courts are given the power to enjoin state court proceedings to: 1) protect and effectuate federal judgments; 2) aid in jurisdiction; and 3) comply with Acts of Congress which expressly authorize injunctions.

135.   The retaliatory eviction proceedings in this case, which the Plaintiff seeks an injunction to stop, is a First Amendment issue. Cases involving the violation of civil rights granted by the First Amendment have been ruled by the courts to be one of the "federal judgments" of Title 28 that rise to the level of a federal injunction to prevent or stop the violation of rights.

136.   Moreover, cases brought in federal court under Section 1983 of the Civil Rights Act express authorization to grant injunction. This instant case involves Section 1983.

## DEMAND FOR JURY TRIAL

137.   Plaintiff respectfully demands a trial by jury in this action.

## INJURIES

1.      Plaintiff suffered loss of freedom of speech and press as guaranteed by the First Amendment of the United States Constitution

2.      Plaintiff suffered economic damages in the form of overpayment of rent towards a building that was improperly issued "condominium status" but should have been rent-stabilized

3.      Plaintiff will also further suffer additional economic damages as a result of having to relocate his residence unless this court issues an injunction against the eviction proceedings pending in state Landlord and Tenant court.

4.      Plaintiff suffered undue embarrassment, humiliation, mental distress, anxiety, and depression as a result of Defendants' misconduct.

5.      Plaintiff suffered irreparable harm to personal and professional reputation as a result of defamation


## RELIEF

**WHEREFORE**, Plaintiff Steven Greer requests relief from this court as follows:

### For the First Cause of Action

1.      Compensatory damages for the first cause of action (Violation of Plaintiff's First Amendment rights) in the amount to be proven at trial.

2.      Punitive damages against for the first cause of action (Violation of Plaintiff's First Amendment rights) in the amount to be proven at trial.


### For the Second Cause of Action

3.      For this court to overturn the New York Attorney General's real estate finance bureau decision to grant "condominium" status to the building at 200 Rector Place.

4.      For this court to rule that the building the building at 200 Rector Place is, and always should have been, under rent-stabilization regulations dictated under 421-a law.

5.      Compensatory damages for the amount of rent that Plaintiff has been overcharge, which are in excess of $40,000.

6.      Compensatory damages for the second cause of action (Discrimination under the Fair Housing Act) in the amount to be proven at trial.

7.      Punitive damages against for the second cause of action (Discrimination under the Fair Housing Act) in the amount to be proven at trial.

### For the Third Cause of Action

8.      Compensatory damages for the third cause of action (Retaliation under the Fair Housing Act) in the amount to be proven at trial.

9.      Punitive damages for the third cause of action (Retaliation under the Fair Housing Act) in the amount to be proven at trial.

10.     For treble damages as to Plaintiff's third cause of action in the amount to be permitted at trial; and

### For the Fourth Cause of Action

11.     Compensatory damages for the fourth cause of action (Defamation) in the amount to be proven at trial.

12.     Punitive damages for the fourth cause of action (Defamation) in the amount to be proven at trial.

### Other relief

13.     For an award of all costs and expenses incurred by Plaintiff permitted by law or rule of Court, including prejudgment and post-judgment interest;

14.     For attorney's fees in the amount to be proven at trial;

15.     For such other and further relief, including equitable relief, as the Court may deem just and proper.

16.     That this Court stay and enjoin the state Landlord and Tenants court proceedings in **Case No. 63974/2014** pending adjudication of Plaintiff's Federal Case commenced by the filing of this Complaint because of the "common nucleus of fact" with this federal complaint, per 42 U.S.C. § 1983.

17.     An order granting Plaintiff injunctive relief that Defendants, and their officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be preliminarily and permanently enjoined from engaging in any activity that would constitute an attempt of an actual eviction of Plaintiff from the apartment building at 200 Rector Place, New York, New York, zip code 10280.

Signed this 4ᵗʰ day of August, 2015          Signature of Plaintiff _____

State of New York
County of New York

Sworn to before me this
4ᵗʰ day of ___Aug___ 20 15

Notary stamp

FRANKIE ALMANZAR
Notary Public, State of New York
Reg. No. 04AL6287906
Qualified in New York County
Commission Expires Sept. 9, 20 17

Mailing Address:

Steven Greer
200 Rector Place, 35F
New York, NY 10280
(212) 945-7252
steve@batterypark.tv