UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GREER,

    *Plaintiff*,

- against -

DENNIS MEHIEL, ROBERT SERPICO, THE BATTERY PARK CITY AUTHORITY, HOWARD MILSTEIN, STEVEN ROSSI, JANET MARTIN, MILFORD MANAGEMENT, and MARINERS COVE SITE B ASSOCIATES,

    *Defendants*.

Case No. 1:15-cv-06119

Judge Alison J. Nathan
Magistrate Judge James L. Cott

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE CORRECTED AMENDED COMPLAINT BY DEFENDANTS THE HUGH L. CAREY BATTERY PARK CITY AUTHORITY, DENNIS MEHIEL, AND ROBERT SERPICO

SIVE, PAGET & RIESEL P.C.

*Attorneys for Defendants
The Hugh L. Carey Battery Park
City Authority, Dennis Mehiel,
and Robert Serpico*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

POINT I.
PLAINTIFF FAILS TO ADEQUATELY PLEAD FIRST AMENDMENT
RETALIATION BECAUSE HE DOES NOT ALLEGE CONSPIRACY,
RETALIATORY CAUSATION, CHILLING EFFECT, OR CONCRETE INJURY .................... 2

    A. The BPCA Defendants' Lack Of Involvement
       In The Non-Renewal Of Plaintiff's Lease ............................................................. 2

    B. The Amended Complaint Does Not Adequately Plead Causation ....................... 3

    C. Plaintiff Does Not Adequately Plead Injury By "Chilling Effect"
       Or "Concrete Harm" ............................................................................................ 4

        1. Plaintiff's "Subjective Chill" Cannot, as a
           Matter of Law, Establish a Chilling Effect ............................................. 4

        2. Plaintiff's Allegations Do Not
           Constitute Cognizable Harms ................................................................. 5

           a) Milford's Lease Non-Renewal was
              Discretionary and Thus Not a Concrete Harm ............................. 5

           b) Moving Plaintiff to a Satellite
              Room is Not a Concrete Harm ..................................................... 6

           c) Plaintiff's Interactions with PEP
              Officers are Not a Concrete Harm ............................................... 6

POINT II.
THE AMENDED COMPLAINT'S FHA DISCRIMINATION CLAIM
FAILS BECAUSE PLAINTIFF IDENTIFIES NO "OUTWARDLY
NEUTRAL PRACTICE" CAUSING A "DISPARATE IMPACT" ............................................ 7

POINT III.
THE AMENDED COMPLAINT'S FHA RETALIATION CLAIM
FAILS BECAUSE PLAINTIFF DOES NOT ESTABLISH THAT HE
HAS PROTESTED DISCRIMINATION OR SUFFERED RETALIATION ............................. 9

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE(S)**

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................... passim

Bearam v. Sommer,
No. 12 Civ. 1858 (RJS), 2013 WL 5405492 (S.D.N.Y. Sept. 25, 2013) .................... 2 n.1

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................................... 4

Curley v. Vill. of Suffern,
268 F.3d 65 (2d Cir. 2001) ..................................................................................... 4, 5

Dorsett v. Cnty. of Nassau,
732 F.3d 157 (2d Cir. 2013) ................................................................................... 2, 5

Glick v. Harvey,
2014 WL 96413 (N.Y.Sup.) .................................................................................... 6

Krug v. McNally,
368 F. App'x 269 (2d Cir. 2010) ............................................................................. 3, 4

LaVertu v. Town of Huntington,
No. CV 13-4378 SJF WDW, 2014 WL 2475566 (E.D.N.Y. Apr. 4, 2014) ............... 5

Loren v. NYC Dep't of Educ.,
No. 13-CV-7597 VEC, 2015 WL 3917490 (S.D.N.Y. June 25, 2015) ..................... 4

Pandozy v. Segan,
518 F. Supp. 2d 550 (S.D.N.Y. 2007)
aff'd, 340 F. App'x 723 (2d Cir. 2009) ..................................................................... 9, 10

Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,
294 F.3d 35 (2d Cir. 2002) ..................................................................................... 9

Schoolcraft v. City of New York,
No. 10 CIV. 6005 RWS, 2015 WL 5542770 (S.D.N.Y. Sept. 18, 2015) .................. 7

Short v. Manhattan Apartments, Inc.,
916 F. Supp. 2d 375 (S.D.N.Y. 2012) ..................................................................... 7, 8

Smith v. Campbell,
782 F.3d 93 (2d Cir. 2015) ..................................................................................... 2

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,
135 S.Ct. 2507 (2015)..............................................................................................9 n.11

Zelnik v. Fashion Inst. of Tech.,
464 F.3d 217 (2d Cir. 2006)..............................................................................5 n.6, 7 n.9

Zemel v. Rusk,
381 U.S. 1 (1965)..............................................................................................................6

Zherka v. Amicone,
634 F.3d 642 (2d Cir. 2011)....................................................................................5 n.5, 7

## PRELIMINARY STATEMENT

The Amended Complaint indicates that Plaintiff writes blog posts critical of the BPCA Defendants, the Landlord Defendants, and myriad others, and that his private landlord (not BPCA) declined to renew his Lease in 2014. But the Amended Complaint lacks any specific or plausible allegations that the BPCA Defendants conspired to cause the non-renewal. Without this vital link between the blogging and the non-renewal, Plaintiff's Lease-related claims against the BPCA collapse. Plaintiff's federal housing rights claims are similarly insufficient, because they are premised on equally vague and conclusory allegations of conspiracy involving BPCA.

More specifically, Plaintiff's First Amendment retaliation claim fails because it does not adequately plead that Plaintiff's blog posts actually <u>caused</u> any retaliatory action, or that he suffered either a chilling effect or a concrete harm from the alleged retaliation. Plaintiff's Opposition describes three additional blog posts as critical of the BPCA; one has nothing to do with the BPCA, and the other two describe BPCA staff changes. Even if any of these blog posts can be described as critical of BPCA, Plaintiff pleads no facts indicating that the posts actually caused any retaliation. Furthermore, Plaintiff's alleged "subjective chill" is irrelevant given his concession that he still exercises his First Amendment rights by continuing to blog about life in Battery Park City. Moreover, while Plaintiff's Opposition restates the purported concrete harms alleged in the Amended Complaint, they are not cognizable harms at all. <u>See</u> Point I.

Plaintiff's Fair Housing Act discrimination claim is insufficient because his sole candidate for an "outwardly neutral practice" – the Landlord Defendants' alleged decades-long evasion of rent-stabilization – was rejected by the Housing Court and is collaterally estopped. Additionally, Plaintiff's allegation that the BPCA Defendants conspired to facilitate any alleged discrimination by the Landlord Defendants remains too conclusory to survive dismissal. <u>See</u> Point II.

1

Finally, the FHA retaliation claim fails, as Plaintiff still does not adequately plead either his status as a tenant organizer or the existence of any retaliation. Plaintiff's Opposition adds new allegations concerning his ostensible tenant-organizing activities,[1] but they are vague, implausible, and do not describe any actual work aimed at protesting housing discrimination. Plaintiff repurposes the same alleged instances of retaliation he used for his First Amendment claim for this claim, and for the same reasons, they do not add up to retaliation as a matter of law. See Point III.

## POINT I. PLAINTIFF FAILS TO ADEQUATELY PLEAD FIRST AMENDMENT RETALIATION BECAUSE HE DOES NOT ALLEGE CONSPIRACY, RETALIATORY CAUSATION, CHILLING EFFECT, OR CONCRETE INJURY

To plead a First Amendment retaliation claim, a plaintiff "must show [that] the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right...and [that] the defendant's actions caused him some injury." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015). This injury can take the form either of a "chilling effect" on First Amendment expression, or an actual "concrete harm." Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). The Amended Complaint meets none of these standards.

A. The BPCA Defendants' Lack Of Involvement In The Non-Renewal Of Plaintiff's Lease

The gravamen of Plaintiff's First Amendment retaliation claim is that his landlord's non-renewal of the Lease gives rise to a claim against the BPCA Defendants. Crucially, the decision not to renew the Lease was made by the landlord defendant Milstein, not the BPCA Defendants. To conjure a theory of liability against the BPCA Defendants, Plaintiff concludes that the BPCA Defendants conspired with his landlord. As set forth in the BPCA Defendants' moving papers ("Motion" or "MTD"), Plaintiff's vague allegations of a conspiracy are insufficient as a matter of

---

[1] Contentions in Plaintiff's submission that go beyond the allegations of the Amended Complaint are not properly before this Court. Bearam v. Sommer, No. 12 Civ. 1858 (RJS), 2013 WL 5405492, at *5 (S.D.N.Y. Sept. 25, 2013).

law. (MTD at 13-15.) In his Opposition ("Opp."), Plaintiff restates his conclusory claims, and adds that "once the discovery process produces emails, video surveillance, and interrogatories from the defendants, mountains of other evidence should come forth." (Opp. at 8.) Plaintiff's vague assertion of a BPCA conspiracy to influence his private third-party landlord to not renew the Lease, is not salvaged by Plaintiff's promise to provide witnesses with conspiracy details at a later date.[2] Plaintiff's promise to bolster his claims with future discovery, cannot cure his failure to plead facts sufficient to "unlock the doors of discovery" in the first instance. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

B. The Amended Complaint Does Not Adequately Plead Causation

Even if the Amended Complaint included factual allegations sufficient to support the existence of a "conspiracy," the First Amendment claim still should be dismissed as Plaintiff fails to plead a specific and plausible causal link between his blog and any alleged retaliation. Instead, Plaintiff alleges that he wrote certain blog posts about BPCA staffing changes (posts which simply relay those changes, and not, as Plaintiff now claims, "led to" such changes) (Opp. at 4-5); that his Lease was not renewed by his landlord months later; and that the Lease non-renewal must therefore have been retaliatory. Plaintiff's brief does little to clarify the plausible basis for his conclusory allegations; rather, he only recites vague, irrelevant, and inadmissible claims, like that the BPCA Defendants are "vindictive people who abuse their power and retaliate." (Opp. at 6-7.) Without a plausible causal link, Plaintiff's conclusory retaliation claim fails. Iqbal, 556 U.S. at 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Krug v. McNally, 368 F. App'x

---

[2] Despite this Court's order that the Amended Complaint include "all of the information he believes is necessary" (ECF, Dkt. 74), Plaintiff only promises to provide details later. (Opp. at 7, claiming that Plaintiff "has witnesses" who "will provide," at an unspecified time, "specific dates of the times" they witnessed a conspiracy).

3

269, 270 (2d Cir. 2010) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed").

Whether Plaintiff's claim is related to the Lease non-renewal or other alleged "retaliation," the mere <u>existence</u> of critical blog posts is not sufficient; Plaintiff is required to make a well-pleaded, particularized factual allegation that a specific blog post so inflamed a BPCA official as to <u>cause</u> retaliation. Where such causation is not specifically and plausibly pled, there can be no retaliation. <u>Loren v. NYC Dep't of Educ.</u>, No. 13-CV-7597 VEC, 2015 WL 3917490, at *7 (S.D.N.Y. June 25, 2015) (dismissing retaliation claim where plaintiff failed to allege "any plausible facts from which the court could infer that there was <u>any</u> causal connection, let alone a retaliatory connection" between First Amendment activity and the alleged adverse response). The Amended Complaint contains no specific, plausible allegation that any BPCA personnel actually read any of Plaintiff's blog posts, or that if they did, that they were so agitated as to conspire to retaliate. Simply put, Plaintiff's claims cannot survive because while he shows that he is a blogger, Plaintiff fails to show that any retaliation was <u>caused by</u> his blogging.[3]

C. <u>Plaintiff Does Not Adequately Plead Injury By "Chilling Effect" Or "Concrete Harm"</u>

1. <u>Plaintiff's "Subjective Chill" Cannot, as a Matter of Law, Establish a Chilling Effect</u>

For a "chilling effect" to suffice as an injury, it must be demonstrated by an actual "change in behavior" with respect to the First Amendment activity. Mere claims of feeling demoralized, while continuing the activity, will not suffice. <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001) (rejecting First Amendment retaliation claim where plaintiff continued campaigning after

---

[3] Plaintiff has numerous, shifting theories as to what caused Milford, his private landlord, to not renew the Lease. In the Verified Answer filed by Plaintiff in Housing Court, he claims that the non-renewal was at the hands of, inter alia, numerous employees of Milford Management, one of his neighbors in his building, Sheldon Silver, and/or one of Silver's "staffers." (ECF Dkt. 76-1 at 4-5.) Conspicuously missing from such "theories" is that the Lease might not have been renewed due to Plaintiff's habitual late rent and abuse of other residents. (MTD at 5.)

4

alleged retaliation but felt "demoralized"). Plaintiff concedes that he continued to "writ[e] about BPCA and PEP" critically after the alleged retaliation, and adds a new claim that his continued blogging causes him "stress" and lost sleep. (Opp. at 8.) But this Circuit rejects the "subjective chill" theory, so these contentions are unavailing. Curley, 268 F.3d at 73.[4]

### 2. Plaintiff's Allegations Do Not Constitute Cognizable Harms

To meet the "concrete harm" requirement, Plaintiff identifies (i) the "eviction," (ii) event staff's direction that he view a BPCA board meeting from a satellite room, and (iii) the treatment he experienced when twice aggressively questioning PEP officers while filming. (Opp. at 9.) None of those meet the standard, as they must, of being "tangible"[5] and "more than de minimis."[6]

#### a) Milford's Lease Non-Renewal was Discretionary and Thus Not a Concrete Harm

As Plaintiff had no right to a Lease renewal, third-party defendant Milford's non-renewal of the Lease cannot, as a matter of law, be a tangible, concrete harm for First Amendment retaliation purposes. In Dorsett v. County of Nassau, 732 F.3d 157, 161 (2d Cir. 2013), the Second Circuit held that a legislature's delay in approving a settlement was not a sufficient injury for First Amendment retaliation, because the legislature's approving the settlement was a matter of "absolute discretion" and the plaintiff "had no right" to such approval. Id. Here, Plaintiff "had no right" to a Lease renewal, which matter was confined to the "absolute discretion" of his landlord, defendant Milstein. In addition, the Housing Court record reflects ample reason for the landlord's decision not to renew Plaintiff's Lease, including Plaintiff's habitual late payment of rent and verbal abuse of other residents. (MTD at 5.)

---

[4] Moreover, to the extent that this "stress" might be construed as physical harm, issues associated with psychological stress such as sleeplessness and severe headaches do not qualify as "concrete harm" for retaliation purposes. LaVertu v. Town of Huntington, No. CV 13-4378 SJF WDW, 2014 WL 2475566, at *8 (E.D.N.Y. Apr. 4, 2014).

[5] Zherka v. Amicone, 634 F.3d 642, 646 (2d Cir. 2011).

[6] Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006).

5

### b) Moving Plaintiff to a Satellite Room is Not a Concrete Harm

Plaintiff's second claimed "concrete harm" is that in July 2015, event staff directed him to observe a BPCA board meeting from a satellite viewing room. (Opp. at 9-10.) While Plaintiff complains of being "singled out," event staff have "absolute discretion" to direct any individual to a satellite room in order to protect the safety and good order of a public meeting, so long as that person's right to view the meeting is preserved. This principle specifically applies to the N.Y. Open Meetings Law. See Glick v. Harvey, 2014 WL 96413 (N.Y.Sup.), *34 (upholding as lawful the requirement that certain disruptive persons exit a legislative meeting and view a simulcast from a separate room).[7] While Plaintiff is disappointed that he was unable to publicly confront BPCA leaders at the July board meeting, Plaintiff simply has no First Amendment entitlement to unlimited newsgathering. (MTD at 17, citing Zemel v. Rusk, 381 U.S. 1, 17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information")).

### c) Plaintiff's Interactions with PEP Officers are Not a Concrete Harm

Plaintiff's final candidate for a "concrete harm" is his claim that he was harassed by NYC PEP officers in October 2015 and in June 2013. (Opp. at 11.) The Amended Complaint includes links to the videos he filmed during these interactions (see Amended Compl. ¶¶ 76, 79), which themselves are the best rebuttal of Plaintiff's claims. Regarding the October 2015 event,[8] Plaintiff's video depicts PEP Sergeant Guzman attempting to address Plaintiff's rambling complaints, until Plaintiff abruptly departs and begins yelling. (Id. ¶ 76.) For the June 2013 event, the video shows

---

[7] As demonstrated by attachments to the Amended Complaint, such concerns are not misplaced; Plaintiff's landlord received several complaints about Plaintiff's behavior, including one that Plaintiff "verbally attack[ed] and harass[ed]" a resident. (ECF Dkt. 76-3, at 14.)

[8] Plaintiff claims that the BPCA Defendants "sweep under the rug entirely the ['damning'] incident with PEP Sergeant Guzman." (Opp. at 11, 21.) In fact, the Motion addresses the 10/12/2015 incident (and Compl. ¶ 76), by accurately describing the encounter, by pointing out Plaintiff's failure to allege why or how the BPCA Defendants orchestrated the incident, and by arguing that the incident cannot constitute "retaliation." (MTD at 9, 18-19.)

a PEP officer explaining to Plaintiff that he may enter the PEP office if Plaintiff signs in like everyone else. Plaintiff refuses, declares, "This is America!" and leaves. (Id. ¶ 79.)

While Plaintiff's bizarre and aggressive conduct tests the officers' patience, their responses – albeit not the ones Plaintiff desired – cannot be construed as "concrete harm" giving rise to First Amendment retaliation. Plaintiff has not alleged any harm other than his emotional response to the denials of his requests for information and access to the PEP station without signing in; but "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." Zherka v. Amicone, 634 F.3d 642, 645-46 (2d Cir. 2011).[9] Even if Plaintiff made a specific and plausible allegation that the PEP officers had "acted aggressively towards him," "cursed" at him, or "stalk[ed]" him, such claims do not suffice as concrete harms for First Amendment retaliation purposes. Schoolcraft v. City of New York, No. 10 CIV. 6005 RWS, 2015 WL 5542770, at *7 (S.D.N.Y. Sept. 18, 2015).

The Amended Complaint thus lacks any specific, plausible allegation that any of the BPCA Defendants were motivated by Plaintiff's blog posts to conspire to violate Plaintiff's rights.[10]

### POINT II. THE AMENDED COMPLAINT'S FHA DISCRIMINATION CLAIM FAILS BECAUSE PLAINTIFF IDENTIFIES NO "OUTWARDLY NEUTRAL PRACTICE" CAUSING A "DISPARATE IMPACT"

To plead a FHA violation under a "disparate impact" theory, Plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral

---

[9] Even actual harassment does not suffice unless it reaches a significant level, because "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from [First Amendment] expression." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006).

[10] The Supreme Court disagrees with Plaintiff's argument (Opp. at 12) that CEO Mehiel and CFO Serpico's "senior titles" make them liable under § 1983 for all BPCA acts. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable [under § 1983] for his or her own misconduct").

acts or practices." Short v. Manhattan Apartments, Inc., 916 F. Supp. 2d 375, 392 (S.D.N.Y. 2012). The Amended Complaint does not meet these requirements.

Plaintiff seeks to relitigate his state-court claim that 200 Rector Place should be rent stabilized, so that he can argue that "evasion" of that requirement is an "outwardly neutral practice" violating the FHA. (Opp. at 13.) Plaintiff claims that the rent-stabilization issue is not barred by collateral estoppel because "[n]o judge or jury has ever adjudicated the merits of the condo status of Plaintiff's apartment building, or whether the 421-a law makes the building rent-stabilized." (Opp. at 14.) Here, Plaintiff is at best, misleading, and at worst, deceptive.

Plaintiff and his landlord each raised and briefed the rent-stabilization issue in the Housing Court eviction proceeding, as demonstrated by documents attached to the Amended Complaint. The landlord's petition asserted that "[t]he Premises is not subject to the Rent Control Law, the Rent Stabilization Law of 1969, as amended by Chapter 576 of the Laws of 1974 or the Emergency Tenant Protection Act of 1974 because the Premises is a condominium apartment." (ECF Dkt. 76-1 at 27.) Plaintiff responded that the landlord's claim that the building is a condominium is "false," and that the landlord has "defrauded" the government because 200 Rector Place is really a "'rent controlled' building." (Id. at 40.) After oral argument on the papers, the judge noted the landlord had moved for eviction based on the premises being an "unregulated, condominium apartment." (ECF Dkt. 76-2 at 9.) The judge ruled in favor of the landlord, holding that "[t]he subject premises is an unregulated, condominium apartment...rented pursuant to free-market leases[.]" The judge also ordered Plaintiff to pay "use and occupancy" fees (rent prior to eviction) calculated based on "the rate of the lease last in effect," which was the apartment's free-market rent. (Id. at 11.)

Plaintiff makes the strained argument that since he raised the issue of rent stabilization in a section of his papers that he styled "Counterclaims," the Housing Court never adjudicated the

8

issue because it precluded that and other of Plaintiff's counterclaims. (Opp. at 14.) This argument is unavailing, because Plaintiff raised the rent-stabilization issue <u>both</u> in his answer (ECF Dkt. 76-1 at 40) <u>and</u> in his counterclaims (ECF Dkt. 76-2 at 2). Moreover, as noted, the Housing Court adjudicated the issue and ordered Plaintiff to pay use and occupancy fees based on market rent. (<u>Id.</u> at 11.) Plaintiff is thus collaterally estopped from using rent-stabilization as the basis of his spurious FHA claims.

Additionally, the Opposition does not cure Plaintiff's failure to plead specific, plausible facts indicating any involvement by the BPCA Defendants. Instead, the Opposition merely repeats the Amended Complaint's single factual allegation that 200 Rector residents are "mostly white," insists that this "statistical evidence" proves discrimination, and restates the impermissibly vague and conclusory allegation that the BPCA conspired to cause this discrimination. (Opp. at 17.)[11]

## POINT III. THE FHA RETALIATION CLAIM FAILS BECAUSE PLAINTIFF DOES NOT ALLEGE PROTESTING DISCRIMINATION OR SUFFERING RETALIATION

To plead a FHA retaliation claim, a plaintiff must allege an "engagement in protected activity, that the [defendant] was aware of this activity, that the [defendant] took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action." <u>Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 54 (2d Cir. 2002). The Amended Complaint fails to adequately plead any of these elements.

A protected activity under the FHA "refers to 'action taken to protest or oppose statutorily prohibited discrimination.'" <u>Pandozy v. Segan</u>, 518 F. Supp. 2d 550, 557 (S.D.N.Y. 2007) <u>aff'd</u>, 340 F. App'x 723 (2d Cir. 2009). The Amended Complaint is devoid of any allegation concerning any action by Plaintiff to "protest or oppose" any form of discrimination under the FHA. The

---

[11] Moreover, "'[r]acial imbalance...does not, without more, establish a prima facie case of disparate impact' [which] protects defendants from being held liable for racial disparities they did not create." <u>Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.</u>, 135 S.Ct. 2507, 2523 (2015).

9

Complaint contains only Plaintiff's conclusory claim that Plaintiff's blog, "BatteryPark.TV," is itself also a "tenant's association." (MTD at 24.) Plaintiff does not explain why a blog that he runs by himself[12] should be construed as a tenants' organization.[13] Plaintiff also reiterates that he formed "Friends of BPC," though he does not identify a single FHA-related issue that it has addressed. (Opp. at 18.) Plaintiff's FHA retaliation claim cannot survive because he fails to plausibly allege that he was protesting or opposing housing discrimination.

Plaintiff's FHA retaliation claim should be dismissed for the independent reason that he fails to plead any actual retaliation. Indeed, Plaintiff's only bases for FHA retaliation are the recycled allegations about his "eviction" (the Lease non-renewal), the satellite room, and his two quarrelsome interactions with PEP officers; for the same reasons explained in Point I, supra, those incidents do not rise to the level of actual retaliation as a matter of law.

Dated: December 23, 2015  
New York, New York

By: _____  
Dan Chorost  
Sive, Paget and Riesel P.C.  
460 Park Avenue  
New York, New York 10022  
(212) 421-2150

*Of Counsel*:  
Dan Chorost  
Devin McDougal

---

[12] "Plaintiff is the sole person running the tenants' association of BatteryPark.TV." (ECF Dkt. 118, Plaintiff's Opposition to the Motion to Dismiss of the Landlord Defendants, at 17.)

[13] The Opposition adds a new factual allegation – which is not properly considered since it was not in the initial or the Amended Complaint – that Plaintiff has engaged in certain "conference calls" pertaining to tenant issues. Even if the Court considers Plaintiff's improper allegation, the Opposition does not specify what topics those alleged calls addressed, when they occurred, or who else, if anyone, participated in them. (See Opp. at 18.)

10