UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 4 2016
```

---

Steven E. Greer,

             Plaintiff,

      –v–

Dennis Mehiel, *et al.*,

             Defendants.

15-cv-6119 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff Steven E. Greer, a resident of the Battery Park City community at the southwestern tip of Manhattan, brings this action *pro se* against the company that owns his apartment building, the company that manages the building, the Battery Park City Authority ("BPCA"), and several individuals associated with each entity. Greer's suit alleges violations of his First Amendment rights, violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and defamation. Before the Court today is Greer's request for a preliminary injunction to halt what he claims is a retaliatory eviction proceeding in state housing court. For the reasons set forth below, Greer's request for a preliminary injunction is DENIED.

## I.      BACKGROUND

###     A.    The Parties

      Steven E. Greer resides in Battery Park City, where he rents an apartment at 200 Rector Place. Second Amended Complaint ("Compl.") ¶ 4. Mariners Cove Site B Associates ("Mariners Cove") and Milford Management are New York corporations that, respectively, own and manage the 200 Rector Place building. *Id.* ¶¶ 11–12 & Ex. A at 1. Howard Milstein is the owner of Milford Management and a 40% owner of Mariners Cove. *Id.* ¶¶ 8, 11–12. Steven

Rossi and Janet Martin are employees of Milford Management. *Id.* ¶¶ 9–10.  Milstein, Rossi, Martin, and the landlord corporations comprise the "Landlord Defendants."

The Battery Park City Authority ("BPCA") is a New York State public benefit corporation established in 1968 to improve the area around Battery Park. *See* N.Y. Pub. Auth. Law § 1971 *et seq.*; *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 468 (S.D.N.Y. 2014) (describing the BPCA).  Dennis Mehiel and Robert Serpico are the Chairman and Chief Financial Officer of the BPCA, respectively, and with the BPCA are the "BPCA Defendants."  Compl. ¶¶ 5–6.

## B.    Factual Background[1]

Greer first moved into his apartment at 200 Rector Place in 2002.  Compl. ¶ 26.  At the time, his rent was $2,265 per month. *Id.*  He has since renewed his lease nine times, most recently in 2013, at which point his rent had risen to $3,395 per month. *Id.* ¶ 28.  Much of Greer's complaint, and the subject of the state housing court litigation (described below), concerns his claim that his apartment should be considered "rent-stabilized." *See id.* ¶¶ 24-27, 81-100.

In 2009, Greer created a local news website called BatteryPark.TV. *Id.* ¶ 103.  Greer published a number of articles on the website that, among other topics, purported to leak inside information from sources within the BPCA about the entity's activities.  On several occasions, Greer reported on the resignation of BPCA employees due to scandal, allegedly prior to those resignations becoming public knowledge. *See, e.g.*, *id.*, Ex. H at 5–6.  Greer also alleges that he founded a tenant's association called "Friends of BPC," which had its first meeting on March 23, 2014. *Id.* ¶ 103.  He claims that he has encouraged other tenants to assert their rent stabilization rights. *Id.*

---

[1] The facts described herein are taken from Greer's complaint, supporting exhibits, and the affidavits submitted by the Landlord Defendants in response to Greer's preliminary injunction motion.  They are undisputed unless otherwise noted.

In February 2014, Greer received a letter stating that his lease would not be renewed and instructing him to vacate the premises by April 30, 2014. *Id.* ¶ 35. In early May 2014, Mariners Cove began an eviction proceeding against Greer in the Civil Court of the City of New York ("state housing court"). *Id.* ¶ 33 & Ex. C. Greer alleges that at the time the eviction proceedings were initiated, he was paying above-market rate for his apartment and had not been the subject of any complaints by residents or the Landlord Defendants. *Id.* ¶ 40. The Landlord Defendants, however, claim that the decision not to renew Greer's lease was made because Greer had frequently been late in paying his rent since 2012 and was more than $10,000 in arrears by April 2014. Rossi Aff., Dkt. No. 104, ¶¶ 10–12.

In March 2014, the state housing court issued an order in which it determined that Greer's residence is "an unregulated, condominium apartment." Compl., Ex. F at 1. The court awarded Mariners Cove "all unpaid use and occupancy from April, 2014 through March, 2015" and set the case for trial. *Id.* at 3-4. The court also decided that it would permit Greer to raise the affirmative defense of retaliatory eviction. *Id.* at 2. On January 28, 2016, the state housing court entered a judgment against Greer for failure to pay court-ordered use and occupancy and awarded Mariners Cove $44,135. Dkt. No. 134 at 4. The court also awarded Mariners Cove "a final judgment of possession and the forthwith issuance of [a] warrant of eviction," but stayed execution of the warrant of eviction to March 31, 2106, on the condition that Greer pays his February and March use and occupancy. *Id.*

### C.    Procedural History

Greer filed suit in this Court on August 4, 2015. Dkt. No. 1. Greer separately filed an application for a temporary restraining order and a preliminary injunction preventing Defendants from continuing the state court eviction proceeding or otherwise attempting to evict him. Dkt. No. 2. On August 6, 2015, the Court denied Greer's motion for a temporary restraining order, but permitted him to seek a preliminary injunction and ordered briefing. Dkt. No. 4. The BPCA Defendants responded on August 24, 2015, with a declaration from their counsel, Steven Barshov. Dkt. No. 37. Barshov's declaration stated that the motion for a preliminary injunction

3

should be denied as to the BPCA Defendants because they are not parties to the state housing court litigation. *Id.* ¶¶ 8-9. The next day, the Landlord Defendants responded with a memorandum of law in opposition to Greer's application for a preliminary injunction. Dkt. No. 40. Greer filed a reply on August 26, 2015. Dkt. No. 48.

The current operative complaint, the Second Amended Complaint, was filed on November 4, 2015. Dkt. No. 85. Both groups of Defendants have moved to dismiss the Second Amended Complaint, Dkt. Nos. 102 & 114, and those motions are currently pending before the Court.

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court may issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. In this circuit, a party seeking a preliminary injunction must make one of two showings. First, he may "show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015). Alternatively, "he may show irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Id.* (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)).

In considering a motion for a preliminary injunction, "'there is no hard and fast rule in this circuit that oral testimony must be taken . . . or that the court can in no circumstances dispose of the motion on the papers before it.'" *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (internal quotation marks and citation omitted). Rather, an evidentiary hearing is required only if there are "essential facts" in dispute. *In re Rationis*

4

*Enters., Inc. of Panama*, 261 F.3d 264, 269 (2d Cir. 2001).  When assessing Greer's pleadings, the Court is mindful that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest.*"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quotation marks and citation omitted).

## III.   DISCUSSION

Greer's complaint raises four causes of action: (1) that the Defendants retaliated against him for exercising his First Amendment rights, in violation of 42 U.S.C. § 1983; (2) that the Defendants violated the Fair Housing Act by withholding rent-stabilization protections, thus making 200 Rector Place unaffordable to non-white tenants; (3) that the Defendants retaliated against him for his reporting and tenant organizing activities, in violation of the Fair Housing Act; and (4) that the Landlord Defendants defamed him.  He seeks a preliminary injunction preventing Defendants from continuing the state court eviction proceeding or otherwise attempting to evict him.

Although a preliminary injunction is always an extraordinary remedy, the relief Greer seeks is particularly exceptional: he asks this Court to intervene in a state housing court case and halt an eviction that the state court has now approved.  Any time a federal court confronts the prospect of staying a state court action or enjoining state court relief, questions concerning the jurisdiction of the federal courts are likely to arise.  That is certainly true here, and the Landlord Defendants have put forward several reasons why the Court should not reach the merits of Greer's preliminary injunction application.   The Court concludes, however, that it has subject matter jurisdiction over this dispute and that Greer may seek a preliminary injunction on the basis of his First Amendment retaliation claim.  But the Court also concludes that Greer has not alleged an irreparable injury and that his request for a preliminary injunction must therefore be denied.

5

**A.    Threshold Issues**

The Landlord Defendants advance three main arguments as to why the Court lacks jurisdiction over this case or otherwise does not have the authority to issue an injunction. First, they contend that the Court lacks subject matter jurisdiction over state landlord-tenant disputes; second, they argue that the Anti-Injunction Act bars the Court from enjoining the state eviction proceeding; and third, they claim that the Court must or should abstain from interfering with the state proceeding.

**1.    Subject Matter Jurisdiction**

"[B]efore deciding any case," a court must assure itself that "the case is properly within [its] subject matter jurisdiction." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation marks and citation omitted). The Landlord Defendants argue that the Court broadly lacks subject matter jurisdiction over landlord-tenant matters involving eviction proceedings, and they cite several cases in which courts held that a plaintiff could not bring or remove actions that sought only to raise issues of state housing law. *See, e.g., Glen 6 Assocs. Inc. v. Dedaj*, 770 F. Supp. 225 (S.D.N.Y. 1991) (New York summary eviction proceeding could not be removed to federal court). Three of Greer's four causes of action, however, arise directly under federal law. *See* Compl. ¶¶ 131, 135, 141. And the Landlord Defendants have not suggested, much less shown, that there is a landlord-tenant exception to federal question jurisdiction.

The Landlord Defendants do suggest though that Greer's two Fair Housing Act claims should be decided in state court, citing a case from this district in which the court held that it lacked jurisdiction over a plaintiff's Fair Housing Act claims. *See Kristopher v. Stone St. Properties, LLC*, No. 13-CV-566 (RJS), 2013 WL 499752 (S.D.N.Y. Jan. 29, 2013). But in *Kristopher*, the plaintiff brought suit in federal court *after* the state housing court had already issued a warrant of eviction. *Id.* at 2013 WL 499752, *2. Accordingly, the court held that, to the extent the plaintiff was challenging that eviction order, it lacked jurisdiction under the *Rooker-Feldman* abstention doctrine (discussed below). *Id.* at 2013 WL 499752, *3. The court did not,

however, suggest that it generally lacked jurisdiction over the plaintiff's Fair Housing Act

claims. To the contrary, the court explained that to the extent the plaintiff sought to "stay *further*

eviction proceedings in state court," the court *did* have jurisdiction over such claims but was

precluded from enjoining the proceedings under the Anti-Injunction Act. *Id.* (emphasis added).

The same is true of Geer's claims here: because he brought suit in federal court *before* the state

housing court issued its warrant of eviction, the Court has subject matter jurisdiction over all his

claims. But as explained below, the Anti-Injunction Act bars this Court from issuing a

preliminary injunction on the basis of his Fair Housing Act claims.

### 2.      The Anti-Injunction Act

The Anti-Injunction Act (AIA) prohibits a federal court from granting "an injunction to

stay proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

For three of Geer's four claims—his two Fair Housing Act claims and his defamation claim—

the AIA bars the Court from enjoining the state housing court proceeding or staying the warrant

of eviction. As the court held in *Kristopher*, none of the three exceptions to the AIA apply to

Fair Housing Act claims, so long as the plaintiff "may raise [his] claim that Defendants violated

the Fair Housing Act as an affirmative defense to the eviction proceeding." *Kristopher*, 2013

WL 499752, at *3-4. That is the case here because the state housing court permitted Geer "to

raise the defense of retaliatory eviction." Compl., Ex. F at 2.[2] Similarly, Geer's defamation

claim, which arises under state law, does not trigger any of the AIA's exceptions.

But the primary ground on which Geer seeks a preliminary injunction is his First

Amendment Retaliation claim. *See* Pl. Br. 5 ("The retaliatory eviction proceedings in this case,

---

[2] In its most recent order, the state housing court indicated that Geer's affirmative defenses and counterclaims were "dismissed without prejudice to a plenary action." Dkt. No. 134 at 4. But even when a state housing court chooses to "sever complicated discrimination defenses or counterclaims," so long as "the severed claims still would be litigated in state court[,] the possibility of severance . . . has no effect on the Anti–Injunction Act analysis." *Kristopher*, 2013 WL 499752, at *4 (quotation marks and citation omitted).

which the Plaintiff seeks an injunction to stop, is a First Amendment issue.").[3]  That claim,

which arises under 42 U.S.C. § 1983, is not barred by the AIA.  The Supreme Court has held that

"§ 1983 is an Act of Congress that falls within the 'expressly authorized' exception of [the

AIA]."  *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); *see also Ram v. Lal*, 906 F. Supp. 2d 59,

71 (E.D.N.Y. 2012) (holding that the AIA does not bar a First Amendment claim where the

"Plaintiffs have made out a cognizable Section 1983 claim").  The Landlord Defendants do not

address the applicability of the AIA to Greer's First Amendment Claim, however, on the grounds

that Greer only raises that claim with respect to the BPCA Defendants.  Landlord Defs. Opp. Br.

15.  And the BPCA Defendants do not address the issue because they are not parties to the state

housing court proceeding, and Greer therefore cannot obtain injunctive relief, with respect to that

proceeding, against them.  *See* Barshov Decl., Dkt. No. 37, at ¶¶ 8-9.  Although the "First Cause

of Action" heading in Greer's complaint does indicate that he brings his First Amendment

retaliation claim against only the BPCA Defendants, *see* Compl. at 24, none of the Defendants

address whether the Court must nonetheless read his complaint as stating a claim for First

Amendment retaliation against both the BPCA Defendants and the Landlord Defendants.  If

Greer states such a claim, then the AIA is no bar to injunctive relief.

### 3.    First Amendment Retaliation Claim

As previously explained, the Court has an obligation to construe Greer's pleadings

liberally and to interpret them as raising the strongest possible arguments they suggest.

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Viewed through that

lens, Greer's complaint states a cognizable section 1983 claim for First Amendment retaliation

against both the BPCA Defendants and the Landlord Defendants.

Although section 1983 only applies to acts committed under color of state law, a plaintiff

may state a section 1983 claim against a private entity "on a section 1983 conspiracy theory" if

---

[3] The Court uses "Pl. Br.," "Landlord Defs. Opp. Br.," and "Reply Br." to refer to the briefing materials submitted with respect to Greer's request for a preliminary injunction.  Citations to the briefing on the motions to dismiss are identified according to the party that filed the motion, i.e., "Pl. Opp. to BPCA Defs. Mot. to Dismiss Br."

the complaint "allege[s] facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quotation marks and citation omitted). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). The Second Circuit has long cautioned that a conspiracy to violate civil rights is easy to allege, and that courts should therefore subject such claims to greater scrutiny. *See Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981). Accordingly, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324.

Although Greer identifies only the BPCA Defendants under the "First Cause of Action" heading in his complaint, his allegations under that heading—and throughout the complaint— make clear that he views his eviction as the product of a conspiracy between the Landlord Defendants and the BPCA Defendants to retaliate against him for his reporting. *See, e.g.*, Compl. ¶ 1 (alleging that the Defendants "colluded to evict Plaintiff from his apartment" and in doing so "violated Plaintiff's First Amendment rights"). Many of Greer's allegations going to this conspiracy are indeed conclusory. For instance, he claims that Milstein, the owner of the company that manages Greer's apartment, was "working in collusion with [the BPCA Defendants] who also wanted the Plaintiff silenced." Compl. ¶ 46. But elsewhere in Greer's complaint the allegations are more specific. He dedicates an entire section of the complaint to recounting conversations with purported witnesses to the conspiracy between the BPCA Defendants and the Landlord Defendants. *See id.* ¶¶ 58-67. In that section, Greer includes detailed allegations about specific conversations he had with former BPCA employees concerning the alleged conspiracy. For instance, Greer claims that on January 12, 2014, "Vince McGowan, a former senior executive employed by the BPCA who still had connections to BPCA insiders, tipped off Plaintiff that the BPCA was working to evict him." *Id.* ¶ 58. Greer further alleges that he "subsequently spoke to Mr. McGowan on the phone, and Mr. McGowan

9

confirmed that . . . Serpico [BPCA's CFO] was working with other Defendants to evict the Plaintiff by not renewing his lease." *Id.* ¶ 59. Additionally, Greer claims that he was contacted by another former BPCA employee, Kirk Swanson, on May 5, 2014. *Id.* ¶ 63. Greer recounts a conversation with Swanson in which Swanson reportedly "acknowledged that it was well known within the offices of the BPCA that the BPCA had pressured Mariners, Milford, and Rossi to not renew Plaintiff's lease." *Id.* ¶ 64. Adding detail to this allegation, Greer claims that "Swanson said that he was first informed in January of 2014 of the plan to not renew Plaintiff's lease by Kevin McCabe, the Chief of Staff to Mehiel [BPCA's Chairman and CEO]." *Id.* ¶ 65. Swanson allegedly received additional proof of the BPCA's involvement in the decision not to renew Greer's lease when he "directly asked Serpico in January of 2014 whether he was responsible for the non-renewal letter sent to Plaintiff, and Serpico confirmed that he was." *Id.* ¶ 66.

In the briefing on their pending motion to dismiss, the BPCA Defendants label Greer's conspiracy allegations "grossly inadequate." BPCA Defs. Mot. to Dismiss Br. 15.[4] But that characterization overlooks the above allegations, which provide details as to the dates on which Greer spoke with former BPCA employees, the individuals who participated in (and allegedly initiated) the conspiracy, and the object of the conspiracy—i.e., the non-renewal of Greer's lease. In other words, Greer does more than just assert a conspiracy without any plausible factual basis. *Compare Corsini v. Brodsky*, No. 13-CV-2587 (LTS), 2015 WL 3456781, at \*9 (S.D.N.Y. May 27, 2015) (dismissing section 1983 conspiracy claim where plaintiff alleged that two supposedly false arrests "occurred 'with the aid and in conspiracy with the City defendants,' without explaining what facts he relied on to draw this conclusion"). To be sure, the Defendants may have good reason to think that Greer's allegations will ultimately prove to be meritless. But although Greer's "claim may one day be ripe for summary judgment," *Dunkelberger v. Dunkelberger*, No. 14-CV-3877 (KMK), 2015 WL 5730605, at \*22 (S.D.N.Y. Sept. 30, 2015), at

---

[4]Although the Court does not decide either of the pending motions to dismiss today, much of the analysis in this Memorandum and Order will of course apply in resolving those motions.

this preliminary stage the Court must read his complaint to state a claim that the Landlord Defendants and BPCA Defendants conspired to evict him.

This alleged conspiracy is only actionable under section 1983, however, if it is in retaliation for Greer's exercise of his First Amendment rights. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (alteration in original) (quotation marks and citation omitted). The only prong of this test that is fairly in dispute here is the second: whether Greer has sufficiently alleged that the Defendants were motivated to evict Greer on the basis of his reporting.[5] With respect to that prong, the Second Circuit has observed that "[t]he ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994). Accordingly, although "a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Id.*

Here, Greer's allegations concerning the blog posts he wrote about the BPCA are sufficient to infer a retaliatory intent. For instance, on September 12, 2012, Greer published a blog post with the headline "Exclusive: President/CEO of BPCA Gayle Horwitz resigns." Compl., Ex. H at 5. The post implies that Horwitz had acted corruptly, observing: "Ironically, or perhaps not, Ms. Horwitz is taking a position at *Nardello & Co*, which specializes in uncovering information related to bribery and corruption investigations." *Id.* On August 21,

---

[5] The BPCA Defendants, in their motion to dismiss briefing, make an argument that Greer has not suffered a sufficient First Amendment injury, as there is no indication that the eviction proceeding has chilled his speech. BPCA Defs. Mot. to Dismiss Br. 15-16. The question of whether Greer has alleged a chilling effect is discussed *infra*, in the context of irreparable injury, but a plaintiff need not allege such a chilling effect in order to state a claim for First Amendment retaliation. *See Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm" (emphasis in original)). Here, that concrete harm is Greer's impending eviction.

11

2013, Greer published another blog post about personnel changes at the BPCA, this one with the headline: "BPCA President Demitrios Boutris resigns amidst internal investigation." *Id.* Included in the post was the claim that "[s]ome staff alleged to investigators hired by the BPCA that Mr. Boutris used the 'N-word' with African American staff." *Id.* It is reasonable to infer from these posts, which report unfavorably on previous BPCA employees and imply that those individuals engaged in corruption and harassment, that the BPCA Defendants had motive to retaliate against Greer. He has therefore stated a claim for First Amendment retaliation.

### 4.   Abstention Doctrines

Having concluded that Greer alleges a conspiracy to engage in First Amendment retaliation—a claim that is not subject to the AIA—the only remaining basis for declining to reach the merits of the preliminary injunction application would be a finding that the Court should abstain from exercising its jurisdiction over this case. The Landlord Defendants claim that two distinct abstention doctrines apply here. The Court disagrees.

### i.   Burford abstention

The first basis for abstention on which the Landlord Defendants rely is *Burford* abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The underlying rationale for *Burford* abstention is that federal courts should abstain from interfering in complex state administrative schemes. As the Supreme Court has explained:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (quotation marks and citation omitted). The Landlord Defendants argue that, because landlord-tenant law "is a complex subject area that is heavily regulated by state authorities," *Burford* abstention applies here. Landlord Defs. Opp. Br. 9.

This rationale, however, suffers from the same defect as the Landlord Defendants' claim that the Court lacks subject matter jurisdiction: it ignores the federal question claims that are plead because they arise in the context of a landlord-tenant dispute. Whatever the Landlord Defendants may think of the merits of Greer's complaint, the claim that they conspired with the BPCA Defendants to evict Greer in response to his reporting falls within the realm of constitutional violations that federal courts adjudicate under section 1983. Greer's First Amendment retaliation claim involves no "difficult questions of state law," nor does it risk disrupting "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans*, 491 U.S. at 361 (quotation marks and citation omitted). By contrast, the principal case the Landlord Defendants rely on—*Moos v. Wells*, 585 F. Supp. 1348 (S.D.N.Y. 1984)—involved only an effort "to evict and collect back rent from . . . tenants" and did not raise any federal questions. *Id.* at 1348. The Landlord Defendants' rationale for *Burford* abstention is therefore inapplicable here.[6]

The Landlord Defendants additionally argue that "[a]bstention is also appropriate where a federal court is asked to adjudicate a dispute concerning a state tax program." Landlord Defs. Opp. Br. 9. It is unclear whether they advance this as a second argument in favor of *Burford* abstention or as a distinct abstention doctrine. Either way, the only controlling authority the Landlord Defendants cite is a passage from *Colorado River Water Conservation District v. United States*—a case known for an entirely different abstention doctrine that the Landlord Defendants decline (wisely) to invoke—in which the Court noted that "abstention is appropriate where . . . federal jurisdiction has been invoked for the purpose of restraining . . . collection of state taxes." 424 U.S. 800, 816. This case does not involve an effort to collect taxes. Nor does

---

[6] In a footnote to their discussion of *Burford* abstention, the Landlord Defendants suggest that *Younger* abstention would be appropriate "for public entities," i.e., the BPCA Defendants (though implicitly *not* for the Landlord Defendants). Landlord Defs. Opp. Br. 9 n.5; *see also Younger v. Harris*, 401 U.S. 37 (1971). But as the Supreme Court recently held, the "exceptional" cases subject to *Younger* abstention are "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). The Landlord Defendants do not argue that this case fits into any of these three categories, and the Court concludes that none apply.

Greer's First Amendment retaliation claim raise the prospect that this Court would engage in "a judicial review of a state tax program," which the Landlord Defendants also claim is sufficient for abstention. Landlord Defs. Opp. Br. 10. The Court cannot abstain from exercising its jurisdiction on these grounds.

### ii.    Rooker-Feldman abstention

The second basis for abstention the Landlord Defendants invoke is the *Rooker-Feldman* doctrine. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine has four requirements:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* at 85 (quotation marks, citation, and alterations omitted).

*Rooker-Feldman* is inapplicable here because the fourth factor does not apply. The state housing court's decision to issue a warrant of eviction—the "state-court judgment" that Greer would have to be appealing to trigger the doctrine—was issued months after Greer commenced this suit. The Landlord Defendants nonetheless argue that, because the state housing court issued a decision in March 2015—a decision awarding the Landlord Defendants unpaid use and occupancy for April 2014 through March 2015, *see* Compl., Ex. F—the fourth requirement is met. But that judgment is irrelevant to the claim Greer has raised in seeking a preliminary injunction, namely that he is the victim of a retaliatory eviction. To be sure, the state housing court's March 2015 order also allowed Greer to *bring* his retaliatory eviction claim, but it did not purport to *decide* it. Rather, the court made clear that "[i]t shall be left to the trial court to decide whether respondent has met his burden to prove this defense." *Id.* at 2. Accordingly, when

14

Greer commenced this suit in August 2015, he was not seeking review of a state court judgment. *Rooker-Feldman* abstention therefore does not apply.

### B.    Preliminary Injunction

With those threshold matters addressed, the Court turns to the showing Greer must make to succeed on his preliminary injunction motion.  In assessing whether to issue a preliminary injunction, "[t]he showing of irreparable harm is '[p]erhaps the single most important prerequisite.'"  *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (second alteration in original) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).  To make such a showing, a party seeking a preliminary injunction must demonstrate that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation."  *Id.* (quotation marks and citation omitted).  Moreover, this harm must be "actual and imminent, not remote or speculative."  *Id.*  Greer points to two injuries that he claims constitute irreparable harm: his impending eviction and the chilling effect that the eviction proceeding has on his speech.  But, as elaborated below, eviction is not an irreparable injury in Greer's case, and Greer has not alleged an actual chilling effect.  Accordingly, Greer has not made a clear showing of irreparable injury, and his request for a preliminary injunction must be denied.

### 1.    Eviction

If Greer is evicted from his apartment, he will not suffer an irreparable injury.[7]  Greer claims that "[t]he cost to move is enormous" and that he may have difficulty finding another apartment because of "reference checks from previous landlords."  Pl. Reply Br. 4.  But the Second Circuit has held that eviction is not an irreparable injury in circumstances similar to Greer's.  *See Tellock v. Davis*, 84 F. App'x 109 (2d Cir. 2003).  In *Tellock*, the defendants

---

[7] Because the state housing court has issued a warrant of eviction, it is no longer premature to consider whether evicting Greer would cause irreparable harm. *See Mullarkey v. Borglum*, 323 F. Supp. 1218, 1229 (S.D.N.Y. 1970) (holding plaintiff had not shown irreparable harm where state housing court had not issued warrant of eviction and the defense of retaliatory eviction was available).

terminated the plaintiff's lease after he objected to a rent increase. *Id.* at 111. He brought suit in federal court, arguing that the defendants discriminated against him on the basis of race, and sought a preliminary injunction to halt proceedings in state housing court. *Id.* The Second Circuit affirmed the district court's denial of a preliminary injunction, in part because the plaintiff "failed to demonstrate that he will suffer irreparable harm." *Id.* The court reasoned that the costs of finding a new apartment after eviction, "includ[ing] the price of increased rent plus moving expenses," are injuries that "can be compensated by money damages." *Id.* at 112. Additionally, the court emphasized that the plaintiff earned "approximately $70,000 a year as an attorney and takes home approximately $3,000 each month" and that he "does not face the threat of imminent eviction" because there was approximately a month in between the court's decision and the date on which the parties had stipulated that the plaintiff would vacate the apartment. *Id.*

The facts of *Tellock* map well onto Greer's situation. Greer claims that he pays $3,395 in rent a month, and he does not allege (nor could he plausibly) that he cannot afford another apartment. *See* Reply Br. 1, 4. Additionally, the state housing court stayed the execution of the warrant of eviction until March 31, 2016, which is more than a month from now. Dkt. No. 144 at 4. Accordingly, the costs and inconveniences of moving, including perhaps the cost of renting a more expensive apartment, are harms that can be compensated by money damages. *See Demarco v. Redwood Mgmt. Co.*, No. 11-CV-2665, 2011 WL 6292199, at *2 (N.D. Ohio Dec. 14, 2011) (holding that "monetary damages will remedy rental payments and moving costs should the Demarcos prevail" and explaining that "[a]lthough the Court is sensitive that a mid-December eviction in Northern Ohio may cause the Demarco family a hardship, that unfortunate fact does not make eviction an irreparable harm"). In the unlikely event that Greer cannot find a new apartment between now and March 31, 2106, it is likely that he could recover damages for whatever short-term accommodations are necessary while he completes his apartment search. *Cf. Am. Postal Workers Union v. U.S. Postal Serv.*, 766 F.2d 715, 721 (2d Cir. 1985) (noting that, in government personnel cases, "irreparable harm is not shown . . . by a showing of financial distress or difficulties in obtaining other employment").

16

To be sure, courts in this circuit have held that eviction can be an irreparable injury. Yet in every such case the Court has found, the party facing eviction also faced the real threat of homelessness. *See, e.g.*, *Wiesner v. 321 W. 16th St. Assocs.*, No. 00-CV-1423 (RWS), 2000 WL 1191075, at \*7 (S.D.N.Y. Aug. 22, 2000) ("Wiesner has made the necessary showing of irreparable injury because of the likelihood that the Defendants will proceed with eviction, coupled with the unlikely prospect that Wiesner could find alternative, affordable housing in New York City."); *Ayyad-Ramallo v. Marine Terrace Assocs. LLC*, No. 13-CV-7038 (PKC), 2014 WL 2993448, at \*4 (E.D.N.Y. July 2, 2014) (noting that "[g]enerally, eviction from one's home constitutes irreparable injury" in a case where the plaintiff lived in low-income housing); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012) ("[I]f the IHA is not enjoined from pursuing the summary holdover proceeding, the Plaintiffs will be evicted and rendered homeless."). Compared with these cases, the facts of *Tellock* apply far more squarely here. Consistent with the Second Circuit's holding in *Tellock*, Greer's eviction would not be an irreparable injury.

Finally, in addition to the generalized injuries stemming from eviction, Greer claims that his apartment "has a unique location" and that he cannot operate his local news site from an apartment outside of Battery Park City. Reply Br. 3-4. But Greer makes no factual allegations that would allow the Court to infer that he cannot obtain another apartment *in* Battery Park City. To the contrary, he repeatedly alleges that he is paying "above-market rent" for his apartment. Compl. ¶¶ 1, 40, 42, 46. At bottom, Greer has alleged that eviction would be unpleasant and inconvenient, but he has not alleged that it would be an irreparable harm.

### 2. Chilling Effect

Greer's second basis for claiming that he will suffer irreparable harm is that evicting him will have a chilling effect on his speech, particularly his future reporting.[8] There is no dispute

---

[8] In the briefing on the BPCA Defendants' motion to dismiss, Greer also alleges that he has been chilled from attending BPCA public meetings and "fear[s] for his safety" when he writes about the BPCA because of "numerous threats and harassing incidents" perpetrated by the BPCA's Park Enforcement Patrol. Pl. Opp. to BPCA Defs. Mot. to Dismiss Br. 8. A preliminary injunction concerning the state court eviction proceeding would have no

that "[v]iolations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction." *Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996). But as the Second Circuit has explained, courts treat claims of First Amendment abridgement differently depending on the nature of the restriction on speech. *See Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003). On the one hand, "[w]here a plaintiff alleges injury from a rule or regulation that *directly* limits speech, the irreparable nature of the harm may be presumed." *Id.* (emphasis added). On the other hand, "in instances where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury." *Id.* at 350. In those instances, the plaintiff must "establish[] an actual chilling effect." *Id.* at 349. And "[a]llegations of a 'subjective chill [of First Amendment rights] are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir. 1999) (alteration in original) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).

Greer's case fits into the second category of First Amendment claims—he does not argue that the Defendants are directly regulating or restricting his speech, but rather that their actions will chill his "future reporting and behavior." Reply Br. 4. But based on Greer's pleadings and exhibits, he cannot show the actual chilling effect required to establish irreparable harm. First, Greer has continued to report unfavorably on the BPCA during the pendency of the state court eviction proceeding. When courts evaluate claims that an individual's speech has been chilled, they often look to whether that speech has continued in the wake of the allegedly retaliatory action. In *Curley v. Village of Suffern*, for instance, the court rejected the plaintiff's First Amendment retaliation claim on the grounds that he had not demonstrated an actual chilling effect. 268 F.3d 65, 73 (2d Cir. 2001). The plaintiff, a previous mayoral candidate, claimed that he had been "arrested in retaliation for his comments made during the 1993 mayoral campaign"

---

effect on these actions, however, and therefore this source of an alleged chilling effect is irrelevant to the irreparable harm analysis.

and that this arrest had a chilling effect on his speech. *Id.* The court found, however, that the fact that he "continued his 1994 campaign for village trustee even after the arrest and ran again for village public office in 1995" demonstrated that he could "show no change in his behavior," and therefore had "quite plainly shown no chilling of his First Amendment right." *Id.*; *see also Ghaly v. Simsarian*, No. 04-CV-1779 (DJS) (TPS), 2006 WL 3346213, at *7 (D. Conn. Nov. 17, 2006) (finding no chilling effect when "the evidence indicate[d] that since receiving her notice of transfer, the plaintiff ha[d] continued to complain about her conditions of employment").

Here, the blog posts Greer attached to his complaint leave no question that Greer has continued, if not increased, his criticism of the BPCA since he received the letter indicating his lease would not be renewed in February 2014. In October 2014, for instance, he published a post with the headline "Exclusive: BatteryPark.TV obtains sexually inappropriate emails sent by CFO Robert Serpico to BPCA staff." Compl., Ex. H at 7. The post claims that a "reliable source[]" described the CFO's "pattern of 1960's Mad-Men-like sexual misconduct." *Id.* Greer returned to this theme several times in the ensuing year. *See id.* at 19 ("Did BPCA's General Counsel get a raise in exchange for not investigating Robert Serpico's latest sexual harassment scandal?"); *id.* at 3 ("The BPCA's CFO Robert Serpico has a human resource file filled with decades of sexual harassment complaints."). Greer's own exhibits conclusively demonstrate that the eviction proceeding has not chilled his reporting. *See Curley*, 268 F.3d at 73 ("Although plaintiff insists that his 1995 campaign was affected by his arrest—namely, that it was demoralized and only amounted to a token effort—the fact remains that Curley chose to run for public office even after the events of August 1994. Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.").

Second, to the extent Greer's claim is that he will be chilled *after* he is evicted, that argument does not withstand scrutiny. As several courts in this circuit have noted, an individual cannot be chilled from speaking after the retaliating entity has lost whatever leverage it purportedly had. For instance, in *Shady v. Tyson* the plaintiff was a neurosurgeon who sought a preliminary injunction because he was "on the verge of losing his faculty appointment" and

hospital privileges, allegedly in retaliation for voicing concerns about the treatment of patients at the hospital where he worked. 5 F. Supp. 2d 102, 104 (E.D.N.Y. 1998). In holding that the plaintiff had not established that his speech would be chilled in the absence of an injunction, the court explained that the plaintiff did not allege "that he is being forced to choose between exercising his First Amendment rights and retaining his job." *Id.* at 108. Rather, the court continued, "[h]e already has lost his position and is free to speak on any subject he pleases." *Id.* In other words, once the retaliatory action has been taken, and there is no possibility of future retaliation, there is no threat to future speech. Or as another court put it, there is a distinction between situations in which "a person has lost his First Amendment right and has retained his employment," and situations in which "a person has lost his employment but retained his First Amendment rights." *Blum v. Schlegel*, 830 F. Supp. 712, 723 (W.D.N.Y. 1993), *aff'd*, 18 F.3d 1005 (2d Cir. 1994). "[I]n the latter case, the damage is the loss of income, not the loss of First Amendment rights." *Id.* Here, even if Greer loses his apartment, he will retain his First Amendment rights. He therefore has not alleged an "actual chilling effect." *Bronx Household*, 331 F.3d at 349.

In sum, evicting Greer would not cause him irreparable injury, and he has not shown that halting the eviction proceeding would preserve any of his First Amendment rights. Greer therefore has not made the clear showing of irreparable harm required to secure a preliminary injunction. Because the Court reaches this conclusion based on the facts alleged in Greer's complaint and the exhibits he has submitted, there are no "essential facts" in dispute that would require the Court to conduct an evidentiary hearing. *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 269 (2d Cir. 2001). Taking all of Greer's allegations as true, there is no dispute that Greer can afford his apartment in Battery Park City, that Greer will have more than a month to find a new apartment, and that Greer has continued his criticism of the BPCA during the pendency of the state housing court proceeding. Accordingly, he cannot demonstrate irreparable harm and is not entitled to the extraordinary remedy of a preliminary injunction. *See Fournier v. Bank of Am. Corp.*, No. 13-CV-702, 2014 WL 421295, at *9 (N.D.N.Y. Feb. 4, 2014) (denying

request for preliminary injunction on the pleadings because "Plaintiff has failed to allege any facts plausibly indicating that she would suffer irreparable harm").

## IV.    CONCLUSION

For the foregoing reasons, Greer's request for a preliminary injunction is DENIED.  This resolves Docket Nos. 2 and 133.

SO ORDERED.

Dated: February ___, 2016
         New York, New York

_____
ALISON J. NATHAN
United States District Judge