```
 1                        UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
      M.D. STEVEN E. GREER,               :
 4                                        :   15-CV-06119 (AJN)
                        Plaintiff,        :
 5                                        :   October 24, 2016
                 v.                       :
 6                                        :   500 Pearl Street
      DENNIS MEHIEL, et al.,              :   New York, New York
 7                                        :
                        Defendants.       :
 8    ------------------------------------X

 9
          TRANSCRIPT OF CIVIL CAUSE FOR HEARING ON DISCOVERY ISSUES
10                  BEFORE THE HONORABLE JAMES L. COTT
                       UNITED STATES MAGISTRATE JUDGE
11

12    APPEARANCES:

13    For the Plaintiff:          M.D. STEVEN E. GREER, Pro Se
                                  5206 Sabine Hall
14                                New Albany, Ohio 43054

15
      For the Defendants:         STEVEN BARSHOV, ESQ.
16    Dennis Mehiel,              Sive, Paget & Reisel, P.C.
      Battery Park City,          460 Park Avenue
17    Robert Serpico              New York, New York 10022

18
      For the Defendants:         DEBORAH ELLEN RIEGEL, ESQ.
19    Mariners Cove,              Rosenberg & Estis
      Janet Martin,               733 3rd Avenue
20    Milford Management,         New York, New York 10017
      Howard Milstein,
21    Steven Rossi

22

23    Court Transcriber:          SHARI RIEMER, CET-805
                                  TypeWrite Word Processing Service
24                                211 N. Milton Road
                                  Saratoga Springs, New York 12866
25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service.
```

```
                                                                    2
 1              THE CLERK:  In the matter of Greer v. Mehiel.
 2              Counsel, state your name for the record.
 3   (No response.)
 4              THE COURT:  Mr. Greer, do you want to state your
 5   name for the record.
 6              MR. GREER:  Steven Greer.
 7              THE COURT:  And you're pro se; correct?
 8              MR. GREER:  Correct.
 9              THE COURT:  All right.  Counsel.
10              MR. BARSHOV:  Steven Barshov, Sive, Paget & Reisel
11   for Battery Park City, Dennis Mehiel, and Mr. Serpico.
12              THE COURT:  All right.
13              MS. RIEGEL:  Deborah Riegel, Rosenberg & Estis, P.C.
14   for the remaining defendants, Your Honor.
15              THE COURT:  All right.  Counsel.  So, I know you all
16   have been litigating before Judge Nathan.  I saw you all many
17   months ago now.  I gather as a result of the motion practice
18   before her, there's a single First Amendment claim that's left
19   in the case; is that correct?
20              MR. GREER:  Correct.
21              THE COURT:  So, we need to set a discovery schedule.
22              For that, I understand, Mr. Greer, you also have a
23   motion to amend that's pending before Judge Nathan.
24              I also have from the parties a proposed scheduling
25   order in which there is a disagreement by 30 days over how
```

                                                                   3

1    long discovery should last.  Let's be practical here.  What is
2    discovery going to entail in this particular case?
3               Mr. Greer, are you planning to take depositions in
4    this case?
5               MR. GREER:  Yes, of real estate defendant employees,
6    many of whom have been fired; the same with The Battery Park
7    City Authority who have been fired.  And there's [sic] the
8    multiple --
9               THE COURT:  Well, how many people are you talking
10   about?
11              MR. GREER:  Well, I don't exactly know -- the first
12   part will be under discovery to learn the list of names.  But
13   it could exceed five easily.
14              THE COURT:  Okay.  But you think you can get all of
15   that done by the end of February; that's your proposal?
16              MR. GREER:  I would prefer that; yes.  I think they
17   live locally.  I work fast.  It would be -- just be a matter
18   of the -- arranging for -- the right limited step would be the
19   witnesses.
20              THE COURT:  Have you served document requests yet?
21              MR. GREER:  We had done nothing; no.
22              THE COURT:  Okay.  My only concern is, it's now
23   October 24th.  If you served them today, they wouldn't be due
24   until November 24th.  Then you're into December.
25              MR. GREER:  All right.

```
                                                             4
 1              THE COURT:  Then you're into the holidays.  Then
 2   you're talking about trying to get people who both sides
 3   probably won't necessarily be able to control if they're under
 4   -- you know, so, it's going to be a little tricky to
 5   necessarily make this happen quite as quickly as you want.
 6              On the other hand, you know -- I mean, in a typical
 7   case, I sort of start from the default of 120 days.  And then
 8   the parties can tell me, well, it should be shorter for these
 9   reasons, or it should be longer for these reasons.
10              Obviously, if it's, you know, a complex antitrust
11   case or something like that, it's going to be longer.  If it's
12   a single plaintiff employment discrimination case, in which
13   there are only three people who are going to be deposed, maybe
14   it should be shorter.
15              MR. GREER:  I said four months, and I'm not sure
16   what they finally put on paper.  So, four --
17              THE COURT:  They said one more month.  They say --
18              MR. GREER:  Okay.
19              THE COURT:  -- you say February 28th.  They say
20   March 30th.  So, this --
21              MR. GREER:  Well, I'm in agreement with your 120
22   days, whatever date that is.
23              THE COURT:  Okay.  But realistically, that's
24   November, December, January, and February.  So, that's the end
25   of February --
```

```
                                                               5
 1              MR. GREER:  Okay.
 2              THE COURT:  -- and so, let me ask defense counsel
 3   why do we need an extra month?
 4              MR. BARSHOV:  Your Honor, we --
 5              THE COURT:  Less is more sometimes, counsel.  The
 6   longer you go on, the more disputes you'll have with
 7   Mr. Greer.
 8              MR. BARSHOV:  Your Honor, we're not talking about a
 9   protracted period of time here.
10              THE COURT:  Well, what's the extra month for?
11              MR. BARSHOV:  I --
12              THE COURT:  Other than deposing Mr. Greer, if you're
13   going to do that, who else are you going to depose?
14              MR. BARSHOV:  Well, we don't know, Your Honor.
15   Because most of the witnesses that are to be identified by
16   Mr. Greer, as the ones that he claims are the -- for lack of a
17   better word, whistle blowers.  He has not named them.  We
18   don't know how many there are.  We don't know how difficult it
19   will be to get them.
20              So, it's a very much an open-ended question.  I
21   believe it will be easier for us to identify the number of
22   witnesses.  It's really, we are waiting on him and his Rule 26
23   disclosures to at least have an idea as to the number of
24   witnesses that will be deposed.
25              THE COURT:  How come those disclosures haven't been
```

```
                                                                  6
 1   made yet?  This case has been going on a long time.  Why
 2   wouldn't that have happened?  Have you made yours?
 3            MR. BARSHOV:  No, we have not, Your Honor --
 4            THE COURT:  Why hasn't anyone made them?  I usually
 5   say in my order -- I can't remember if in this case I did or
 6   not -- that they were to have been made before the conference?
 7            MR. BARSHOV:  Your Honor, I don't recall that.
 8   We're prepared to make them within a week of today.
 9            THE COURT:  Can you do the same?
10            MR. GREER:  Oh, sure; yes.
11            THE COURT:  All right.  So, I hereby order you make
12   your Rule 26 disclosures no later than October 31st.  Okay.
13   So, let me micro-manage your case a little bit.  Let me give
14   you a deadline by which document requests can be served.
15            MS. RIEGEL:  Judge, if I may --
16            THE COURT:  Yes, ma'am.
17            MS. RIEGEL:  I'm in a little bit of a peculiar
18   position here.  Because all of the causes of action against my
19   clients were dismissed pursuant to Judge Nathan's order.  The
20   First Amendment claim was not asserted against the landlord
21   defendants.  Mr. Greer's motion to amend seeks to bring my
22   clients into that claim.  But at the moment, I don't have a
23   horse in that race.
24            THE COURT:  Okay.
25            MS. RIEGEL:  So, I just want to make sure you're
```

                                                                    7

1  aware of that.
2            THE COURT:  Okay.
3            MS. RIEGEL:  And that partly goes into the timing
4  issue.
5            THE COURT:  Okay.  Well, if your clients are not in
6  the case now, but come back into the case, then you'll make
7  your own Rule 26 disclosures within one week of that time;
8  okay?  But if they're not in the case at the moment, then
9  there's nothing to disclose.
10           Let's set a deadline by which you can make your
11 document requests, so we put everything on track here.  Can I
12 propose that you do that by November 14th?  Which means that
13 your responses are going to be due by December 14th.  And then
14 you can talk about any issues that you may have with each
15 other during December.
16           And then once you sort those out, then you're going
17 to have all of January and all of February to take
18 depositions.  And that seems to me, it should be adequate
19 here.  And if the landscape changes because the amended
20 complaint has been granted and your clients are in, and all of
21 a sudden there are more people, and you need more time than
22 the end of February, you'll write me a letter.
23           But let me tell you this, write me the letter by the
24 beginning of February.  Don't write three days before the
25 deadline.  Thirty days before the deadline, if you all think

8

1  you need another month because the case has taken a slightly
2  different shape than it's in now, you can ask me for a
3  discovery extension.  You get one opportunity to do that.  And
4  the only reason I'm letting you do that, because this is a
5  little bit of a moving target here, since we don't know if
6  Ms. Riegel's clients are going to be in or not.
7           And that obviously would change things a little bit.
8  So, I'm going to set the date, Mr. Greer, that you proposed,
9  which is February 28th with leave to seek an extension, a
10 brief extension, and one extension.  But to the extent anybody
11 wants to seek an extension, you have to seek it by
12 February 1st.
13          MR. BARSHOV:  Your Honor, one point to just have for
14 you in the back of your mind, Mr. Greer has indicated in an
15 email that he proposes to "delve into" -- these are his words:
16          "the entire 30-year history of Robert Serpico,
17      and his thick human resources file filled with
18      sexual complaints to determine why those were
19      covered up."
20          Which has nothing to do with this lawsuit.
21          THE COURT:  I don't really know what that means.
22          But I will just tell, Mr. Greer, the following,
23 which is the Federal Rules of Civil Procedure were amended in
24 2015.  You may or may not know this, to place a greater
25 emphasis on proportionality in discovery, which means that I

9

1 will look askance at anything that you are seeking that is
2 outside the four corners of what remains of your lawsuit.  We
3 will not allow fishing expeditions in this case.  We will not
4 allow the search for information that really has nothing
5 germane to what your claims are about.
6          That sounds pretty far afield of what I
7 understand --
8          MR. GREER:  May --
9          THE COURT:  -- your remaining claims to be, given
10 Judge Nathan's decision.  But I'm not going to opine on
11 anything at this point, because I have nothing before me at
12 this point.
13          MR. BARSHOV:  That's all right, Judge --
14          MR. GREER:  But may I explain --
15          MR. BARSHOV:  -- and I wasn't looking to ask you to
16 opine.  I was really speaking to the question of timing and
17 the idea that there may be motion practice involved with
18 discovery for the reasons that I have indicated.  So --
19          THE COURT:  Okay.  Well, let me be clear about that.
20 There's to be no motion practice in discovery without a
21 pre-motion conference.
22          MR. BARSHOV:  That's fine --
23          THE COURT:  And 95 out of 100 times, I will resolve
24 whatever the dispute is without formal motion practice.
25 Because we don't have time for formal motion practice.

```
                                                                    10
 1              MR. BARSHOV:  Yeah.
 2              THE COURT:  Okay.  If I had motion practice in every
 3   case I supervised discovery in, I literally wouldn't sleep;
 4   okay?  And 95 percent of the time, I can resolve it.  So, if
 5   it's we want to move to preclude or whatever, because
 6   Mr. Greer is asking for information that goes outside the
 7   boundaries, write me a letter consistent with my rules.
 8   Mr. Greer can respond.  And we'll have --
 9              I guess you're not living in New York anymore; is
10   that correct?
11              MR. GREER:  Correct.
12              THE COURT:  So, we'll have a telephone conference,
13   since you're living somewhere other than New York.  And I hope
14   I'll be able to resolve whatever those disputes may be in a
15   telephone conference if they come up.
16              MR. BARSHOV:  Thank you, Your Honor.
17              THE COURT:  Yes, sir --
18              MR. GREER:  May I just -- it's not a fishing
19   expedition whatsoever.  My reporting on Mr. Serpico, who was
20   covering up these sexual harass -- just recently, like two
21   years ago -- is the reason they initiated the eviction and
22   violated my -- it's extremely relevant to the case.  And it's
23   a simple file.  They have a file sit -- I'm not going to be
24   searching for 30 years of stuff -- it's sitting in a file
25   right now, easily turned over.
```

```
                                                                 11
 1            THE COURT:  What is searching -- what is in a file?
 2            MR. GREER:  His human resource file with various
 3   sexual harassment complaints by women in The Battery Park
 4   City --
 5            THE COURT:  What does that have to do with your
 6   First Amendment claim?
 7            MR. GREER:  That is my reporting on Battery Park TV
 8   among other stories that --
 9            THE COURT:  Listen to my question.
10            MR. GREER:  Yeah.
11            THE COURT:  What does the information you're
12   describing have to do with your First Amendment claim?
13            MR. GREER:  Because those people in that case --
14            THE COURT:  What people, in what case?
15            MR. GREER:  Well, whoever we find out -- the women
16   making those allegations will probably be very good witnesses
17   that they were probably --
18            THE COURT:  That doesn't pass the laugh test, with
19   all due respect.  I don't see how it has anything whatsoever
20   to do with your First Amendment claim.  You're not
21   representing some women.
22            MR. GREER:  They were sitting there observing the
23   discussion of the conspiracy to evict me.  It's a small office
24   on the 24th --
25            THE COURT:  What does that have to do with whether
```

12

1  they made complaints or not?  I don't understand.
2             MR. GREER:  Oh, the people surrounding Robert
3  Serpico, who have an ax to grind with Robert Serpico, once I
4  discover who they are, will be the best witnesses in the world
5  to say yes, they didn't like Steve Greer.  And I was sitting
6  next to him at lunch one day -- or whatever their testimony
7  may be -- and I witnessed Robert Serpico conspire with the
8  real estate people.
9             THE COURT:  Okay --
10            MR. GREER:  They're going to be the best --
11            THE COURT:  Well, look, we're not going to resolve
12 this now.  I have no --
13            MR. GREER:  All right.
14            THE COURT:  -- way of knowing out of context exactly
15 how this all fits into the grand scheme of things.  I just
16 know from having read Judge Nathan's decision and what remains
17 in this case is that you have to be very careful, Mr. Greer,
18 that you don't run too far afield of what your case remains to
19 be unless your amended complaint is granted and expands the
20 scope of what your claims are.
21            In which case, that may change what the proper scope
22 of discovery is.  But you have to really think about the use
23 of discovery to be relevant to what your claims are in the
24 lawsuit, not what somebody else might have or whatever; okay?
25            MR. GREER:  Right.  The way -- if this goes to a

13

1  jury trial, the bottom line is, I'll have to prove that Robert
2  Serpico and The Battery Park City Authority conspired with
3  real estate people and said, we don't like this guy, let's
4  make an example of him.  Let's get him out of town.  That's
5  going to require witnesses on the stand.  And the best
6  witnesses are the people who were complaining about Robert
7  Serpico because they were working there.  So, that's my --
8              THE COURT:  Okay.  Well, I don't know how to answer
9  that --
10             MR. GREER:  All right.
11             THE COURT:  I think I've said what I needed to say.
12 I think otherwise, this small protective -- the scheduling
13 order that you submitted, seems fine.  I'm going to go with
14 the February 28th date.  If there are going to be pre-trial
15 motions -- why do you need 60 days after discovery, as opposed
16 to 30?
17 (No response.)
18             THE COURT:  I would say 30; okay?  That's more
19 typical.  And I will change it to 30.  And also, you'll file
20 your pretrial order within 30 days after the close of
21 discovery, or if a dispositive motion's been filed, within
22 21 days of a decision on such motion.  That's standard.
23             MR. GREER:  What was that, you changed from 60 to
24 30, what?
25             THE COURT:  You'll see --

                                                                14

1                MR. GREER:  Okay.
2                THE COURT:  -- I'll issue an order, and you'll have
3    it.  But what was submitted to me was that any pre-trial
4    motions would be submitted 60 days after the completion of
5    discovery.  And I'm saying that I'm changing that to 30 days.
6    And same with the submission of the pre-trial order if there
7    aren't motions; okay?  Anything else today?
8                MR. GREER:  You had asked us to discuss settlement.
9    And he asked me questions, but I -- it's up to --
10               THE COURT:  Well, are you interested in trying to
11   settle this --
12               MR. GREER:  We discussed it.  I gave him a number.
13   The ball's in their court.  I don't know --
14               THE COURT:  You've made a financial demand?
15               MR. GREER:  Yeah.
16               THE COURT:  Okay.
17               And you've received it?
18               MR. BARSHOV:  Yes, Your Honor.
19               THE COURT:  And there's nothing, I assume, you think
20   the Court can be helpful with in that regard?
21               MR. BARSHOV:  Not in this regard, Your Honor.
22               THE COURT:  Okay.  So, if for some reason you think
23   the Court could be helpful as far as settlement is concerned,
24   obviously, you can write me and let me know that.  I'd be
25   happy to have a settlement conference if you ever thought that

15

1  was useful.  But I obviously don't want to do it if it's
2  something where the parties are so far apart, and it's not
3  realistic use of our -- or a useful use of your time or mine,
4  then we won't proceed with it.
5          MR. BARSHOV:  I think that's a fair characterization
6  of the situation --
7          THE COURT:  No, I'm assuming Mr. Greer made a very
8  high demand, and you see the case as a nuisance-value case at
9  most.  And if it's that posture, then I don't want to
10 participate, because I don't have a magic wand.  And I can't
11 practice magic in here, or make people settle cases if they
12 don't want to settle.
13         MR. BARSHOV:  You may not have magic in your tool
14 chest, Your Honor, but clairvoyance is clearly part of what
15 you're doing.  You've got it exactly right.
16         THE COURT:  Well, I have clairvoyance.  I also have
17 what they call mediator intuition.  So --
18         MR. BARSHOV:  That's for sure --
19         THE COURT:  All right.  Everyone, have a good day.
20         MS. RIEGEL:  Thank you --
21 (End of hearing.)
22
23
24
25

```
                                                                    16
 1          I certify that the foregoing is a court transcript
 2   from an electronic sound recording of the proceedings in the
 3   above-entitled matter.
 4
                                     _____
 5
 6                                      Shari Riemer, CET-805
 7   Dated:  December 8, 2016
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```