CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
MARINERS COVE SITE B ASSOCIATES,

                       Petitioner,

    -against-

DR STEVEN GREER
200 RECTOR PLACE 35F
NEW YORK, NEW YORK 10280

                       Respondent
-----------------------------------------------------------X

Index No. L&T **63974/2014**

NOTICE OF
CROSS-MOTION

By Steven Greer,
represented pro se
(212) 945-7252

**PLEASE TAKE NOTICE**, that upon the annexed affidavit of Steven Greer sworn to on October 12, 2016, Respondent Greer will cross move this court at the Housing Part F, room 830, at the Courthouse located on 111 Centre Street, New York, New York on **24th day of October, 2016** at 9:30 AM, or as soon thereafter as counsel can be heard, for orders to: (a) Dismiss the motion for legal fees, (b) Dismiss the motion to withdraw the $44,135 in the city clerk account, (c) Require the Petitioner to refund respondent's $3,395 security deposit, (d) Award direct damages to respondent for the costs related to defending against the frivolous and malicious motions and debt collection, (e) Apply sanctions against the frivolous and malicious motions, (f) Require any future motions from Petitioner to first be approved by this Court, (g) other relief as deemed appropriate and necessary by this Court.

Enter:

_____

J.S.C.

CIVIL COURT OF THE CITY OF NEW YORK OF
NEW YORK

---------------------------------------------------------------X

MARINERS COVE SITE B ASSOCIATES,

                Petitioner,

  -against-

DR STEVEN GREER
200 RECTOR PLACE 35F
NEW YORK, NEW YORK 10280

                Respondent

---------------------------------------------------------------X

Index No. L&T **63974/2014**

AFFIDAVIT IN OPPOSITION AND SUPPORT OF CROSS-MOTION

By Steven Greer, represented pro se

STATE OF NEW YORK
COUNTY OF NEW YORK

## SUMMARY OF THE FACTS

1.    This instant motion brought by Petitioner, Mariners Cove Site B Associates ("Mariners"), is part of a larger case that is a textbook example of retaliatory eviction, violating RPL§223-b. I was neither behind in rent nor causing any trouble in the building at 200 Rector Place where I had lived for 14-years when Petitioner chose to not renew my lease, citing no reason whatsoever in the original petition other than the fact the building was a market-rate condominium allowing them to do this at will (Exhibit A).

2.    However, my critical investigative journalism on the news site BatteryPark.TV was threatening to the Battery Park City Authority (BPCA) and to the Petitioner.

3.    As a result, they conspired to have my lease not renewed in early 2014 (the BPCA is the landlord to the Petitioner, Mariners, and they have close ties).

4.    A federal judge ruled on September 30th, 2016 that this conspiracy charge is credible and denied the motion to dismiss (Exhibit B).

5.        I owe Petitioner no money whatsoever, either for rent, fair use, or legal fees.

### THE DOCTRINE OF LAW OF THE CASE, RES JUDICATA AND COLLATERAL ESTOPPEL BAR PETITIONER'S APPLICATION FOR ATTORNEYS FEES AS THE COURT HAS PREIOUSLY REJECTED IT

6.        In the motion filed by lawyer Deborah Riegel, a request is made yet again for legal fees, despite that the fact that the same motion has been rejected by previous judges.

7.        On March 13th, 2015, Judge Hahn clearly rejected legal fees (Exhibit C). Then again, on January 28, 2016, Judge Milin also denied Petitioner's motion for legal fees (Exhibit D). Petitioner's lawyers are now trying to relitigate old motions. The doctrine of law of this case, res judicata and collateral estoppel bar Petitioner's request for legal fees as various courts have previously rejected it.

### PETITIONER MISSED THEIR OPPORTUNITY FOR A PROPER APPEAL OF LEGAL FEES

8.        Moreover, if lawyer Riegel had disagreed with the orders denying legal fees, she should have filed a notice of appeal within 30-days from service of a copy of the order and written notice of entry, as required by NY CPLR §5513(a). Then, per 22 N.Y.C.R.R. §640.6(a)(1), they had thirty (30) days after the filing of the notice of appeal to procure the clerk's return and as per 22 N.Y.C.R.R. §640.6(a)(3) within sixty days (60) days after the filing of return they should have noticed the appeal for argument. Petitioner's time to do so has expired.

9.        On April 30th, 2015, lawyer Bodoff filed a Notice of Appeal (Exhibit E) of the Judge Hahn order denying legal fees, <u>but abandoned the motion and never perfected it</u>. For the January 28th, 2016 order by Judge Milin, <u>no attempt whatsoever was made to appeal</u>.

10. Only during my failed attempts to appeal the order granting Petitioner occupancy of the apartment did lawyer Riegel make any reference to legal fees, in their opposition papers filed on March 4th, 2016, in the Appellate Term (Exhibit F). However, the court denied their motion for legal fees.

11. I also tried to appeal the eviction in the Appellate Division, and in lawyer Riegel's opposition papers on March 30th, 2016, there was no attempt to claim legal fees (Exhibit G). The legal team had clearly given up after numerous rejections by the courts.

12. Moreover, the time has expired too on those appeals courts motions for the lawyers to now attempt to drag up, once again, the matter of legal fees.

## A PREVAILING PARTY HAS NOT YET BEEN DETERMINED

13. Section 17(E) of the lease (Exhibit H) requires a prevailing party before any consideration of legal fees. It specifically states:

> <u>Owner's right to legal fees in a lawsuit is conditioned upon whether Owner has substantially prevailed in that lawsuit.</u> "Substantially Prevail" for the purposes of determining entitlement to legal fees, (<u>where money is the primary issue in dispute</u>) will be considered as having been awarded an amount by a court equal to at least 80% of the amount sought In the Initial demand for a liquidated amount in the litigation.

14. This case is not ripe and there is no "prevailing party" yet due to the ongoing plenary action in federal court. As allowed by multiple decisions/orders from this Court granting me the right to pursue "plenary actions", I am now pursuing claims of retaliatory eviction and violation of First Amendment rights by the real estate defendants, as part of a plenary action in federal court (*Greer v. Mehiel, Mariners Cove Site B Associates, et al,* 15-cv-6110, Southern

District of New York). <u>That case survived the motion to dismiss and pre-trial hearings are scheduled.</u>

## THIS IS THE WRONG CASE NUMBER
## FOR PETITIONER TO ASK FOR LEGAL FEES

15. The lease also stipulates that legal fees only can be awarded "**where money is the primary issue in dispute**" in the original lawsuit. In this instant case number of 63974/14, the original Notice of Petition Holdover Dwelling filed on May 21, 2014 (Exhibit A) <u>did not ask for "money" because no money was due</u>. I had paid all rent and fair use owed at the time this petition was filed.

16. Since the petition was a pure act of illegal retaliatory eviction, Petitioner had no leg to stand on if they had asked for "money".

17. Moreover, in a totally separate lawsuit in this Court filed on April 9, 2014, *Mariners v. Greer*, under the Index# 61405/2014, the money issue was raised and I subsequently paid off the amount of rent that I had been withholding, preparing to place it into an escrow account anticipating this litigation. The $10,937 asked for in that separate case was paid to the clerk before any judge was assigned and that matter was never heard before a judge during a bench hearing (Exhibit I).

18. On February 26th, 2015, Judge Hahn denied my motion to merge the two cases (Index# 61405/2014 and 69374/2014), <u>and the cases remained separate</u>.

19. <u>Therefore, per the terms of the lease, if Petitioner had wanted to pursue legal fees, only case number 61405/2014 asked for "money" and was eligible for legal fees</u>. However, Petitioner never requested legal fees in that case and the time has long since expired for them to do so now.

## THE MOTION FOR LEGAL FEES
## IS FRIVOLOUS AND MALICIOUS

20. This request for legal fees is clearly a frivolous and malicious desperation attempt, added on to the other motion to collect the $44,135 deposited by me into the city account, per court order (Exhibit J). Lawyer Riegel knows fully well that I no longer live in New York, but rather Ohio now, and is hoping that I will not be able to properly defend myself without expending considerable money.

21. Despite knowing that I owe them no money, on August 25th, 2016, employees of the Petitioner (i.e. Milford Management, a company owned by Howard Milstein who is also the petitioner) filed a purely frivolous and harassing claim with a debt collection agency, DBF Collection Corp., for $44,135, despite me having already paid this amount into the city clerk's account.

22. DBF Collection Corp. promptly dropped the case when I provided them the details of my payment of the $44,135 to court (Exhibit K).

## THE BULK OF LEGAL FEES WERE CAUSED
## BY PETITIONER'S OWN LAWYERS' MALPRACTICE

23. In addition, even if the lawyers for Petitioner were still able to request for legal fees, which they are not, the vast majority of legal expenses were caused by their own incompetence. The original lawyer in the instant case, Jeffrey Bodoff, who served as the lead counsel for Petitioner from approximately March of 2014 until August of 2015, was fired, never to appear in court again. He was replaced by Deborah Riegel on August 9, 2015.

24. <u>The protracted legal course in this Court was caused solely by Mr. Bodoff's repeated requests for adjournments. I never asked for a single adjournment.</u>

25. In ¶¶12-35 of the Riegel Affirmation, she lists an incomplete series of docket motions and events, strategically omitting key facts that show how lawyer Bodoff requested numerous adjournments, dragging on the case for almost two-years. Sequences <u>omitted by Riegel</u> to mislead this Court are, *inter alia*:

- **2014, June 25th-** Petitioner's lawyer Bodoff adjourned the case to August 7th <u>because he was not prepared</u>. Judge Hahn granted his request.
- **2014, August 7th-** Petitioner's lawyer Bodoff once again adjourned the case to September 18th <u>because he was not prepared for court</u>.
- **2014, September 29th-** Judge Hahn dismissed Petitioner's motion because <u>it was not properly served</u>.
- **2014, November 13th-** Judge Hahn finally heard our oral arguments.
- **2015, May 1st-** Judge Hahn had rotated out of the part of the court handling the case. New, Judge Wendt adjourned the matter to June 26 so <u>that Judge Hahn might continue on with the case</u>.
- **2015, June 26th-** <u>Paperwork from the clerk office did not make it to the courtroom</u>. Judge Kraus was filling in for Judge Wendt, Lawyer Bodoff adjourned the matter until August 10.
- **2015, August 10th-** <u>Judge Wendt recused himself</u> from the case from unknown reasons.

26. Based on those courtroom actions listed above, omitted by lawyer Riegel in her affirmation, the Court can now more easily see how events beyond my control extended this case <u>from June 25, 2014, until August 10, 2015, or 14-months</u>. Whether intentional or due to malpractice, the lawyers were clearly inflating their billable hours thinking that I would be on the hook for them.

27. As Court of Appeal held in *A. G. Ship Maint. Corp. v. Lezak*, <u>frivolous litigation is so serious a problem affecting the proper administration of justice</u>, the courts may proscribe such conduct and impose sanctions in this exercise of their rule-making powers, in the absence of legislation to the contrary. *A. G. Ship Maint. Corp. v. Lezak*, 511 N.Y.S.2d 216, 219, 69 N.Y.2d 1, 6, 503 N.E.2d 681, 684 (N.Y. 1986).

28. 22 N.Y.C.R.R. 130-1.1 provides, in pertinent parts as follows:

> ". . . [T]he court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct . . .. [C]onduct is frivolous if (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation". 22 N.Y.C.R.R. 130-1.1 (a) and (c).

29. My extensive attempts to appeal were essential. After the decision by Judge Milin granting Petitioner a warrant of eviction (Exhibit D), I was facing homelessness and was forced to exercise every option in the appeals courts (in fact, I was forced to relocate 500-miles away to Ohio). The United States Court of Appeals for the Second Circuit, New York State Appellate Division, and New York State Appellate Term courts all declined to hear my appeals without any discussion of the merits of my arguments.

## PETITIONER OWES $3,395 FOR SECURITY DEPOSIT REFUND

30. To this date, I still owe the petitioning landlord no money whatsoever. The judgment was satisfied in full on February 22, 2016 (Exhibit J).

31. In fact rather, Petitioner owes me $3,395 in the form of my security deposit that they are illegally confiscating. I vacated the apartment on April 6, 2016 and left it in good condition (Exhibit P).

32. A term in the lease allows for security deposits to be used to offset legal fees, but only if a court order grants legal fees. However, twice before, this Court has denied legal fees.

33. <u>Petitioner is not allowed to confiscate my security deposit "just in case"</u> they might eventually win a frivolous motion in the future.

## CORRECTION OF FACTUAL ERRORS
## IN PETITIONER'S MOTION

34. In ¶5, page 2 of the Riegel Affirmation, she wrote, "**landlord is unquestionably the prevailing party**". In fact, the opposite is true. <u>In Judge Hahn's decision (Exhibit C), it states that there is "no prevailing party". In the Judge Milin's decision (Exhibit D), no mention of prevailing party is ever made</u>. Moreover, the plenary actions to address my retaliatory eviction counterclaims, among other things, are ongoing in federal court.

35. In ¶6, page 2 of the Riegel Affirmation, she wrote, "**Tenant's affirmative defenses and counterclaims were all summarily dismissed.**" That statement is also false. In fact, both judges declined to hear my most important counterclaims, of retaliatory eviction, warrant of habitability, *inter alia*, and instead deferred them to a different court venue for "plenary action". Pending in federal court now are decisions on those plenary actions. Therefore, <u>lawyer Riegel is once again grossly misleading this Court</u>.

36. My plenary actions have merit. It is quite likely that Petitioner will be found guilty of retaliatory eviction, violation of the First Amendment, defamation, *inter alia*, based on the 21-page federal decision that has already been issued (Exhibit L). In addition, my federal complaint is proceeding to trial and was not dismissed, per order on September 30th, 2016 (Exhibit B).

37. In ¶10, page 2 of the Riegel Affirmation, she wrote, "**Landlord is the owner and landlord of 200 Rector Place, New York, New York, Apartment 35F**". That is a strategic intentional misrepresentation to this Court. In fact, lawyer Riegel knows full well that Howard Milstein, former managing partner of Petitioner Mariners, was ousted in a lawsuit by his partners (Exhibit M). The new "Landlord and owners" are not part of this instant case that lawyer Riegel is frivolously reviving.

38. In ¶19, page 4 of the Riegel Affirmation, she wrote, "**Judge Hahn further denied Tenant's motion to dismiss…**", but intentionally omits the most important aspect of the decision, granting me the right to argue my counterclaims in a different court under "plenary action".

39. In ¶27, page 5 of the Riegel Affirmation, she wrote, "**Judge Milin…denied Tenant's motion…**", once again, omitting key parts of the decision granting me the right to argue my counterclaims in another court venue.

40. In ¶59, page 12 of the Riegel Affirmation, she cited case law that defined "prevailing party", and quoted *Jocar Realty Co. v. Galas, 176 Misc 2d 534, 535- 36*, "**Judge "[a] determination of which party is the prevailing party requires an initial consideration of the true scope of the dispute litigated, followed by analysis of what was achieved within that scope**." However, this case law supports my case more than theirs given that Petitioner is not "prevailing", and the ongoing plenary action regarding retaliatory eviction, *inter alia*, is crucial to the "true scope of the dispute litigated"

41. In ¶61, page 12 of the Riegel Affirmation, she wrote, "**The Final Orders granted Landlord each and every item of relief sought by Landlord. Furthermore, Tenant did not prevail on any of his affirmative defenses and counterclaims, all of which were dismissed by the Final Orders**." This is patently false as anyone reading the multiple decisions/orders can determine upon first glance. My most important arguments were indeed "severed" and set aside for plenary action, not denied at all.

42. Of note, in the affidavit of service filed by lawyer Riegel on September 27, along with their motion, it states that I was served on September 20. However, that is factually incorrect. In fact, I was unable to be in New York on their original motion return date of October

12th, and I was in the middle of email negotiations with lawyer Tilton about scheduling a new date (Exhibit N). For unknown reasons, the lawyers arrogantly proceeded to file the motion without telling me. In fact, what they actually filed was not served upon me on September 20, but rather mailed by FedEx on September 30th (Exhibit O), and only after I alerted them of their mistake.

43. Normally, I would not bother the court with such procedural loopholes. However, in this case, it is symbolic of a much larger pattern of deception and perjury to this Court.

### ARGUMENTS

### POINT 1.
### The motion for legal fees is frivolous, and sanctions should apply

44. As mentioned before, the portion of Petitioner's motion asking for legal fees is not only frivolous, but also malicious, as defined by 22 N.Y.C.R.R. Subpart 130-1:

> Section 130-1.1, (c) For purposes of this Part, conduct is frivolous if:
> (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
> (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
> (3) it asserts material factual statements that are false.

45. Criteria (c)(1) "**without merit**" is satisfied in this case. There have been two previous housing court judge orders/decisions denying legal fees, as well as an Appellate Term denial, and no appeal attempt was ever made. Therefore, the motion is completely without merit.

46. Criteria (c)(2) "**frivolous and harassing**" is also satisfied. This motion, forcing me to travel from Ohio to New York at significant cost and time, is clearly harassment. In

addition, frivolous and harassing debt collection attempts were initiated by Petitioner, which were then promptly dropped by the collection law firm engaged when I informed them of the facts (Exhibit K).

47. Criteria (c)(3) "**factual errors**" is satisfied- The motion by Petitioner is replete with factual errors and intentional omissions meant to mislead this Court.

48. Also, this case is not ripe due to federal plenary action proceeding to a jury trial. Therefore, no "prevailing party" exists, and a prevailing party is required by contract law in the lease before legal fees can be awarded.

49. Even if legal fees could be awarded at this stage, which they cannot, the invoiced legal fees provided in the lawyers' exhibits are for incompetent legal work. The legal teams were clearly running up the charges hoping to bill me in the end. The numerous adjournments asked for by lawyer Bodoff were meant to inflate his billable hours.

50. According to 22 N.Y.C.R.R. 130-1, when lawyers behave in this fashion, sanctions also apply.

51. For those reasons, no legal fees apply in our case. The motion should be dismissed and sanctions applied against the lawyers.

## POINT 2.
## Petitioner owes $3,395 in security deposit refund

52. On April 6, 2016, I vacated the apartment in unit 35F at 200 Rector Place, New York, New York, 10280, and left it clean and good condition without any damage (Exhibit P). Petitioner does not dispute this.

53. The superintendent of the building, Gus Ouranitsas, made a walk-though with me and reported no damages. Petitioner does not dispute this.

54. On April 8th, 2016, I email Mr. Ouranitsas and others asking, "When will you be mailing me back my deposit?", and I received no reply.

55. On April 11th, I emailed lawyer Riegel and she replied:

> "In that you are no longer a resident of the building, the building staff will not communicate with you any further, and as I have previously advised, all communication must be through my office. With respect to your request for the return of your security deposit, until all judgments have been satisfied and the court has adjudicated what additional sums, if any, are due to my client, the deposit will be held by my client. As you are aware, the money judgment issued by Court has not been satisfied, nor have my client's claims for attorneys' fees as a result of your holding over been determined."

56. Riegel's email above is proof that she has been instructing Petitioner to illegally withhold my deposit without any court order giving them permission to do so.

57. The lease specifies how the security deposit will be handled after departure:

> SECURITY DEPOSIT: …If Tenant carries out all agreements in this Lease and moves out of the Apartment and returns it to Owner as and when required under this Lease, Owner will return to Tenant the full amount of the Security deposit and interest within 60 days after this Lease ends. If Tenant does not carry out all agreements in this Lease, Owner may keep all or part of the Security and any interest which has not yet been paid which are necessary to pay Owner for any losses incurred, including missed payments.
> Tenant is not entitled to direct Owner to use the Security for Rent
>
> If Tenant does not pay Rent on time, or otherwise defaults in the observance of any of the terms or conditions of this Lease, then Owner, at <u>Owner's sole option, may use the</u> <u>Security to pay for any damages suffered, or costs incurred, including attorney's fees</u>.

58. Since I never defaulted on any term of the lease, with no judge decision ever stating that I have, but rather the lease was not renewed in 2014 as part of an illegal retaliatory eviction, and since no legal fees were awarded or damages to apartment found, the Petitioner is

not allowed to confiscate my security deposit, per this contract law. <u>They cannot hold onto the deposit "just in case" some legal fees might arise in the future</u>.

# POINT 3.
# I am owed for my expenses incurred defending against this frivolous motion

60. 22 NYCRR Subpart 130-1 allows for the awarding of expenses incurred while defending against frivolous and malicious litigation, as well as sanctions. I informed lawyer Riegel via email that, if she went ahead and filed this motion, it would be frivolous. Nevertheless, lawyer Riegel rushed forward.

61. So far, I have spent approximately $5,000 in time, travel, and other expenses in defending against this matter. Receipts and invoices cannot be provided at this time since I have not yet traveled to New York City at the time of the filing of this brief.

62. Sanctions are also warranted.

# I am owed for my expenses incurred defending against frivolous debt collection

63. 22 NYCRR Subpart 130-1 allows for the awarding of expenses incurred while defending against frivolous and malicious litigation.

64. The flagrantly malicious debt collection stunt pulled by Petitioner's employees took more than 10-hours of my valuable time to resolve. I charge $1,000 per hour as a consultant.

65. Sanctions are also warranted.

## POINT 4.
## Petitioner's motion for $44,135
## should be denied until the case is ripe

66.     This case is not ripe given the ongoing plenary actions proceeding to jury trial in federal court.

67.     First of all, the balance of equities tips in favor of the respondent.

68.     The former managing partner of Petitioner Mariners, Howard Milstein, is a billionaire and has a pattern of using his immense resources to tie up the courts with extensive appeals when he loses lawsuits. For example, in *Cara Associates v. Milstein*. (651726/15 Supreme Court of New York, New York County), Milstein has now lost his appeal in the Appellate Division, and purely to stall the outcome is attempting to appeal the case further. Legal fees are of little consequence to him.

69.     Milstein also does not pay plaintiffs when he loses cases. In *Saint-John v. Emigrant Mortgage Company*, 11-CV-2122 (E.D.N.Y), Milstein was the key witness this year in a federal jury trial against Emigrant bank, which he owns. He was accused of predatory lending and lost, with a judgment of approximately $1,000,000.00. He has not yet paid that amount.

70.     Secondly, pursuant to New York Real Property Actions and Proceedings Law (NYRPAPL) §745(2)(c)(iv) "[u]pon the entry of the final judgment in the proceeding such deposits (in our case use and occupancy) shall be credited against any judgment amount awarded and, without further order of the court, be paid in accordance with the judgment".

71.     My plenary actions related to this instant case, now in federal court, have strong merit. It was not dismissed and is proceeding to trial (Exhibit B).

72. Therefore, given the David v. Goliath situation at play in this instant case, the balance of equities heavily tilts in favor of not releasing the $44,135.00 to Petitioner until all plenary actions are adjudicated.

## POINT 5.
## Lawyer Riegel must get Court approval
## before filing any further motions

72. Lawyers for Petitioner have recently engaged in a series of malicious and frivolous litigation, as well as lame attempts at debt collection. Knowing that I live in Ohio and cannot easily defend myself is likely one motivating factor for their actions. Also, the money sources to fund this retaliatory eviction conspiracy might have dried up now that Milstein has been removed as managing partner of Mariners, and the CFO of the BPCA, Robert Serpico, has "resigned".

73. Defending myself in these matters, then traveling from 500-miles away in Ohio to court, is a cost burden that I cannot bear.

74. No further motions from Petitioner lawyers should be allowed unless first approved by this Court.

# REQUESTS FOR RELIEF

Respondent Greer begs of this Court to:

1. Dismiss the motion for legal fees;

2. Dismiss the motion to extract the $44,135.00 in the city clerk account;

3. Require the Petitioner to refund respondent's $3,395.00 security deposit;

4. Award direct damages to respondent for the costs related to defending against the frivolous and malicious motions and debt collection;

5. Require any future motions from Petitioner to first be approved by this Honorable Court;

6. Apply sanctions on the lawyers for frivolous and malicious litigation;

7. Any other relief as deemed appropriate by this Court.

_____

# VERIFICATION

State of New York, County of New York ss:

Steven Greer, being duly Sworn, deposes and says: I am the respondent in this proceeding. I have read the Answer in Writing and know the contents thereof to be true to my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Sworn to before me this 12th day of October, 2016
_____          _____
Notary stamp or signature                                     Steven Greer

For Court Use Only  Initial Calendar Date_____   Both Sides Notified _____

CIV-LT-91a (Revised December, 2007)

CIVIL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
MARINERS COVE SITE B ASSOCIATES,   Index No. L&T **63974/2014**

                Petitioner,

                                        AFFIDAVIT OF SERVICE

    -against-

DR STEVEN GREER
200 RECTOR PLACE 35F
NEW YORK, NEW YORK 10280,

                Respondent.
-------------------------------------------------------------------X

     STATE OF NEW YORK    )
                                        ) ss.:
     COUNTY OF NEW YORK  )

Nataliya Boyko, being duly sworn, says:

I am not a party to the action; I reside in Brooklyn, New York, and I am over 18 years of age.

On the day 17th day of October, 2016, I served the within Notice of Cross-Motion and documents enclosed therewith by depositing true copies thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within New York State, addressed to the following at the last known address set forth below:

TO:

Deborah Riegel
ROSENBERG & ESTIS P.C.
733 Third Avenue
New York, New York 10017

                                                                                   _____
                                                                                   Nataliya Boyko

Sworn to before me
on \_\_\_\_\_ day of October, 2016

_____
NOTARY PUBLIC

Index No. L&T **63974/2014**
CIVIL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MARINERS COVE SITE B ASSOCIATES,

                Petitioner,

    -against-

DR STEVEN GREER
200 RECTOR PLACE 35F
NEW YORK, NEW YORK 10280,

                Respondent.

NOTICE OF CROSS-MOTION AND AFFIDAVIT IN OPPOSITION AND SUPPORT OF CROSS-MOTION

Service of a copy of the within          is hereby admitted.
Dated:

                                      -----------------------------------------
                                      Attorney(s) for

Sir:--Please take notice

☐ <u>NOTICE OF ENTRY</u>
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on          , 201

☐ <u>NOTICE OF SETTLEMENT</u>
that an order of which the within is a true copy will be presented for settlement to the HON. one of the judges of the within named court, at one          20   at      M.