# Exhibit 42

HUGH L. CAREY BATTERY PARK CITY AUTHORITY
Meeting of the Members
One World Financial Center, 24th Floor
New York, NY 10281
July 29, 2015

Members Present
Dennis Mehiel, Chairman/CEO
Hector Batista, Member
Frank Branchini, Member
Donald Capoccia, Member
Lester Petracca, Member

Authority Staff in Attendance:   Shari C. Hyman, President/COO
Lauren Brugess, Paralegal/Assistant Corporate Secretary
Anthony Buquicchio, Director of Site Management
Marie Cornielle, Deputy Treasurer
Gwen Dawson, Vice President, Real Property
Robin Forst, Vice President, External Affairs
Luis Garcia, Assistant Treasurer
Abigail Goldenberg, Special Counsel and Risk Officer
Cherish Hurley, Administrative Assistant to the General Counsel
Benjamin Jones, Vice President of Administration and Internal Audit
Susie Kim, Associate General Counsel
Karl Koenig, Controller
Abigail Goldenberg, Special Counsel and Risk Officer
Kevin McCabe, Chief of Staff/Special Assistant to the Chairman/CEO
Brenda McIntyre, Vice President, Human Resources
Robert Nesmith, Chief Contracting Officer
Anthony Peterson, Director of Diversity Programs
Alix S. Pustilnik, General Counsel/Corporate Secretary
Jason Rachnowitz, Director of Financial Reporting
Robert M. Serpico, Chief Financial Officer
Seema Singh, Deputy General Counsel/Assistant Corporate Secretary
Alexis Torres, Special Advisor to the President/COO
Ken Windman, Director of Facilities & Infrastructure Management

Others in Attendance:   Betty Chin, Battery Park City Parks Conservancy Corporation
Stephen Faber, PFM Asset Management LLC
Bob Cheddar, PFM Asset Management LLC
Therese Loeb Kreuzer, Downtown Post NYC
Matt Fenton, The Broadsheet
Sue Malesevic, Downtown Express
Carl Glassman, Tribeca Trib
Various members of the general public

The meeting, called on public notice in accordance with the New York State Open Meetings Law, convened at 12:02 p.m.

1

BPCA001800

\* \* \*

The Chairman began the meeting by welcoming the Board's newest Member, Hector Batista. Mr. Mehiel stated that he was pleased to have Mr. Batista as a Member due to his experience and background, and was grateful that Mr. Batista accepted the position.

\* \* \*

The first item on the agenda was the approval of the minutes of the June 9, 2015 meeting. Upon a motion made by Mr. Capoccia and seconded by Mr. Branchini, the following resolution was unanimously adopted:

## APPROVAL OF MINUTES OF THE JUNE 9, 2015 MEETING

BE IT RESOLVED, that the minutes of the meeting of the Members of the Hugh L. Carey Battery Park City Authority held on June 9, 2015 are hereby approved.

\* \* \*

The next item on the agenda was the M/WBE Report presented by Mr. Peterson. Mr. Peterson said that the 22nd Annual Competitive Edge Conference, which was held on July 21, 2015 at BNY Mellon, was a huge success with 528 Minority/Women/Disadvantaged/Local Business Enterprises in attendance.

Mr. Peterson updated the Members on the Authority's and Conservancy's numbers for May and June 2015. He noted that for May 46% of the Authority's and Conservancy's total expenditures was paid to M/WBEs - 40% was paid to MBEs and 6% was paid to WBEs. And for June, 34% of the Authority's and Conservancy's total expenditures was paid to M/WBEs - approximately 8% was paid to MBEs and approximately 26% was paid to WBEs.

\* \* \*

The next item on the agenda, presented by Mr. Serpico, was the review of the Investment Performance Report for the period ended April 30, 2015. Mr. Serpico introduced Stephen Faber, managing director of the Authority's investment advisor, PFM Asset Management LLC ("PFM"), who began PFM's presentation by describing the overall performance of the Authority's investment portfolio. Mr. Faber discussed the performance of the short-term and long-term investment strategy, and then introduced Bob Cheddar, the senior portfolio manager, who discussed the portfolio strategy.

\* \* \*

The next item on the agenda, presented by Ms. Hyman, was an authorization to enter into a settlement agreement relating to the Eastern Boundary and the Route 9A Medians.

Ms. Hyman explained that there was a legislative change to the Hudson River Park Trust's ("HRPT") boundaries in 2013 and as a result, HRPT is no longer maintaining the eastern boundary between Battery Park City and New York City from Pier A up to Chambers Street (the "Eastern Boundary"). The Authority has been working with the Mayor's Office and the Comptroller's Office to negotiate a two year settlement agreement, which has been agreed to. The Authority started weeding

BPCA001801

and mulching the Eastern Boundary, and will eventually to take on the Route 9A Median maintenance as well. The Route 9A Median maintenance has not been transferred, Ms. Hyman said, because there are some capital infrastructure repairs and plantings that must be completed by the New York State Department of Transportation prior to transfer.

The Board was asked to formally authorize this two-year Settlement Agreement, with the understanding that the budget would have to be revisited at the end of the term.

Upon a motion made by Mr. Branchini and seconded by Mr. Petracca, the following resolution was unanimously approved:

## AUTHORIZATION TO ENTER INTO A SETTLEMENT AGREEMENT RELATING TO THE EASTERN BOUNDARY AND THE ROUTE 9A MEDIANS

BE IT RESOLVED, that in accordance with the materials presented to this meeting, the President and Chief Operating Officer (the "President") of the Authority or her/his designee(s) be, and each of them hereby is authorized to execute a Settlement Agreement (the "Settlement Agreement") relating to the Eastern Boundary and the Route 9A Medians; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is authorized and empowered to execute and deliver the Settlement Agreement on behalf of the Authority, subject to such changes as the officer or officers executing the Settlement Agreement, shall, with the advice of counsel, approve as necessary and appropriate and in the best interests of the Authority, such approval to be conclusively evidenced by the execution and delivery of the Settlement Agreement; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute all such other and further documents and to take all such other and further actions as may be necessary, desirable or appropriate in connection with the transactions contemplated in the foregoing resolutions, and any such execution of documents and any other further actions heretofore taken are hereby ratified and any actions hereafter taken are confirmed and approved.

\*　　\*　　\*

Mr. Capoccia made a motion to enter Executive Session to discuss matters leading to the appointment of a particular corporation and pertaining to the financial or credit history of a particular corporation, which was seconded by Mr. Branchini. The Members entered Executive Session at 12:32 p.m.

\*　　\*　　\*

The Members exited Executive Session at 1:42 p.m. and resumed the public meeting.

\*　　\*　　\*

After discussions during Executive Session, the Board made the decision to vote on two items relating to the Conservancy's employees and benefits. The first resolution is an authorization to treat Conservancy time as Authority time for purposes of other post-employment benefits ("OPEB"). As a

BPCA001802

result, no Conservancy employee will lose any time when accounting for OPEB benefits – all of the Conservancy's employees' time will count the same as if it were the Authority's employees' time.

Upon a motion made by Mr. Petracca and seconded by Mr. Capoccia, the following resolution was unanimously approved:

**AUTHORIZATION TO TREAT CONSERVANCY TIME AS AUTHORITY TIME FOR PURPOSES OF OTHER POST-EMPLOYMENT BENEFITS ("OPEB")**

BE IT RESOLVED, that, as discussed at this meeting, and pursuant to the Conservancy's OPEB Program, the President and Chief Operating Officer (the "President") of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to treat all Conservancy time as Authority time for purposes of OPEB; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to take all such other and further actions as may be necessary, desirable or appropriate, including effectuating a payroll transfer from the Conservancy to the Authority, in connection with the treatment of such Conservancy time as Authority time for the purposes of OPEB, as contemplated in the foregoing resolution, and any other and further actions heretofore taken are hereby ratified and any actions hereafter taken are confirmed and approved.

\* \* \*

The second resolution to come out of the Executive Session discussions is an authorization to fund the restoration of current Conservancy employees' lost time for purposes of their Cultural Institutions Retirement System ("CIRS") pension benefits in the approximate amount of $1,000,000. When the Conservancy entered CIRS, the Conservancy employees at that time lost a portion of their credited work time, and received no CIRS benefit for that time as a result. The Authority would like to restore this time, and has asked the Members to vote to fund the restoration of current Conservancy employees' such lost time. Mr. Mehiel clarified that this restoration would be at no cost to the affected Conservancy employees.

Upon a motion made by Mr. Batista and seconded by Mr. Branchini, the following resolution was unanimously approved:

**AUTHORIZATION TO FUND THE RESTORATION OF CURRENT CONSERVANCY EMPLOYEES' LOST TIME FOR PURPOSES OF THE CULTURAL INSTITUTIONS RETIREMENT SYSTEM ("CIRS") PENSION BENEFITS**

BE IT RESOLVED, that, as discussed at this meeting, the President and Chief Operating Officer (the "President") of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to fund the restoration of current Conservancy employees' lost time for purposes of CIRS pension benefits (time that was lost upon entry into CIRS); and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to take all such other and further actions as may be necessary, desirable or appropriate, in connection with funding the restoration of Conservancy employees' lost time for purposes of CIRS pension benefits, as contemplated in the foregoing resolution, and any other and

BPCA001803

further actions heretofore taken are hereby ratified and any actions hereafter taken are confirmed and approved.

\* \* \*

The next item on the agenda, presented by Ms. Pustilnik, was an authorization to amend the 2013 retainer agreement with Holland & Knight LLP ("H&K").

Ms. Pustilnik explained that due to certain outstanding construction-related litigation, including litigation related to the restoration of Pier A, the Legal Department is seeking a $250,000 increase to the retainer agreement in order to cover anticipated legal fees. Mr. Capoccia recused himself from voting on this item.

Upon a motion made by Mr. Petracca and seconded by Mr. Batista, the following resolution was unanimously approved:

## AUTHORIZATION TO AMEND THE RETAINER AGREEMENT WITH HOLLAND & KNIGHT LLP

BE IT RESOLVED, that in accordance with the materials submitted at this meeting, the President and Chief Operating Officer (the "President") of the Battery Park City Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute an amendment (the "Amendment") to the retainer agreement with Holland & Knight LLP for legal services, increasing the amount payable thereunder by $250,000 for a total not-to-exceed amount of $500,000; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute and deliver the Amendment on behalf of the Authority, subject to such changes as the officer or officers executing the Amendment shall, with the advice of counsel, approve as necessary and appropriate in the best interest of the Authority, such approval to be conclusively evidenced by the execution and delivery of the Amendment; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute all such other and further documents, and to take all such other and further actions as may be necessary, desirable or appropriate, in connection with the transactions contemplated in the foregoing resolutions, and any such execution of documents and any other further actions heretofore taken are hereby ratified and any actions hereafter taken are confirmed and approved.

\* \* \*

The next item on the agenda, also presented by Ms. Pustilnik, was an authorization to amend the retainer agreement with Wilson Elser Moskowitz Edelman & Dicker, LLP ("WEMED") relating to the 9/11 Litigation.

Ms. Pustilnik mentioned that WEMED represents the Authority in ongoing litigation related to September 11th. The main reason for the anticipated increase in legal fees, Ms. Pustilnik explained, is due to an appeal that the Plaintiffs recently filed after the remaining 9/11 cases against the Authority were dismissed. In addition to the anticipated cost of litigating the appeal, if the Plaintiffs win their appeal, then the Authority must proceed with the defense of these cases. As a result, this is a request

5

for an increase of $200,000, she said, and although the Authority might not spend it, it will be available if needed to pay for this ongoing litigation. The Authority would also like to extend the expiration date of the retainer agreement through June 30, 2016.

Upon a motion made by Mr. Capoccia and seconded by Mr. Branchini, the following resolution was unanimously approved:

### AUTHORIZATION TO AMEND THE RETAINER WITH WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP RELATING TO THE 9/11 LITIGATION

BE IT RESOLVED, that in accordance with the materials submitted at this meeting, the President and Chief Operating Officer (the "President") of the Battery Park City Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute an amendment (the "Amendment") to the 9/11 litigation retainer agreement with Wilson Elser Moskowitz Edelman & Dicker, LLP for legal services, increasing the amount payable thereunder by $200,000 for a total not-to-exceed amount of $2,815,000 and extending the expiration date to June 30, 2016; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute and deliver the Amendment on behalf of the Authority, subject to such changes as the officer or officers executing the Amendment shall, with the advice of counsel, approve as necessary and appropriate in the best interest of the Authority, such approval to be conclusively evidenced by the execution and delivery of the Amendment; and be it further

RESOLVED, that the President of the Authority or her/his designee(s) be, and each of them hereby is, authorized and empowered to execute all such other and further documents, and to take all such other and further actions as may be necessary, desirable or appropriate, in connection with the transactions contemplated in the foregoing resolutions, and any such execution of documents and any other further actions heretofore taken are hereby ratified and any actions hereafter taken are confirmed and approved.

\*      \*      \*

Lastly, Mr. Serpico briefly discussed the Fiscal Year 2016 budget and financial plan, the use of 2013 bond proceeds, and the semi-annual budget to actual variance for Fiscal Year 2015, all of which were informational items.

\*      \*      \*

There being no further business, upon a motion made by Mr. Capoccia and seconded by Mr. Batista, the Members unanimously voted to adjourn the meeting. The meeting thereupon adjourned at 1:53 p.m.

Respectfully submitted,

Lauren Brugess
Assistant Corporate Secretary

6

BPCA001805