UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GREER,

               Plaintiff,

      - against -

DENNIS MEHIEL, ROBERT SERPICO, THE
BATTERY PARK CITY AUTHORITY, HOWARD
MILSTEIN, STEVEN ROSSI, JANET MARTIN,
MILFORD MANAGEMENT and MARINERS COVE
SITE B ASSOCIATES,

            Defendants.

No. 15-CV-06119 (AJN) (JLC)


**THE BATTERY PARK CITY AUTHORITY AND ROBERT SERPICO'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
<u>SUMMARY JUDGMENT AND TO AMEND THE COMPLAINT</u>**


Michael Tremonte
Justin J. Gunnell
Michael W. Gibaldi
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel:  212.202.2600
Fax:  212.202.4156
E-mail:  mtremonte@shertremonte.com

*Attorneys for the Hugh L. Carey Battery
Park City Authority and Robert Serpico*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

I.      THE BPCA DEFENDANTS DID NOT VIOLATE PLAINTIFF'S FIRST
        AMENDMENT RIGHTS BY EXCLUDING HIM FROM THE BPCA
        BOARDROOM ON JULY 29, 2015 ............................................................................ 3

II.     THERE IS NO EVIDENCE THAT THE BPCA DEFENDANTS CONSPIRED
        WITH THE LANDLORD DEFENDANTS TO EVICT PLAINTIFF FROM HIS
        APARTMENT ............................................................................................................... 9

III.    THE COURT SHOULD DENY PLAINTIFF'S BELATED MOTION TO ADD
        DEFENDANTS ........................................................................................................... 17

        A.      The Motion Is Untimely ................................................................................. 17

        B.      The Motion Is Futile Because Mehiel and Serpico Would Be Entitled to
                Summary Judgment ......................................................................................... 18

IV.     PLAINTIFF HAS FAILED TO ESTABLISH THAT EITHER THE ALLEGED
        MEETING EXCLUSION OR ALLEGED CONSPIRACY WERE COMMITTED
        PURSUANT TO AN OFFICIAL POLICY OR CUSTOM ......................................... 21

V.      EVEN IF PLAINTIFF COULD ESTABLISH A VIOLATION OF HIS FIRST
        AMENDMENT RIGHTS, THERE IS NO EVIDENCE TO SUPPORT ANY
        RELIEF OTHER THAN NOMINAL DAMAGES ..................................................... 22

CONCLUSION ....................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Anderson v. Recore*,
317 F.3d 194 (2d Cir. 2003) ..................................................................................21

*Barton Grp., Inc. v. NCR Corp.*,
796 F. Supp. 2d 473 (S.D.N.Y. 2011) ....................................................................25

*Batista v. Rodriguez*,
702 F.2d 393 (2d Cir. 1983) ..................................................................................23

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) ...............................................................................................24

*Cotarelo v. Vill. of Sleepy Hollow Police Dep't*,
460 F.3d 247 (2d Cir. 2006) ..................................................................................19

*Cummiskey v. Chandris, S.A.*,
719 F. Supp. 1183 (S.D.N.Y. 1989) .......................................................................13

*Cusamano v. Sobek*,
604 F. Supp. 2d 416 (N.D.N.Y. 2009) ....................................................................18

*Dancy v. McGinley*,
843 F.3d 93 (2d Cir. 2016) ....................................................................................21

*DiPace v. Goord*,
308 F. Supp. 2d 274 (S.D.N.Y. 2004) ....................................................................23

*Farella v. City of New York*,
No. 05-CV-5711 (NRB), 2007 WL 193867 (S.D.N.Y. Jan. 25, 2007) ...........................17

*Farrell v. Burke*,
449 F.3d 470 (2d Cir. 2006) ..................................................................................21

*Flagg v. City of Detroit*,
No. 05-74253, 2010 WL 4366868 (E.D. Mich. Oct. 28, 2010) ....................................13

*Gaft v. Mitsubishi Motor Credit of Am.*,
No. 07-CV-527 NG/LB, 2009 WL 3148764 (E.D.N.Y. Sept. 29, 2009) ........................16

*Gordon v. United States*,
344 U.S. 414 (1953) ...............................................................................................16

*Guardian Angel Credit Union v. MetaBank*,
No. 08-CV-261-PB, 2011 WL 2784078 (D.N.H. July 14, 2011) ....................................5

*Krumme v. WestPoint Stevens Inc.*,
143 F.3d 71 (2d Cir. 1998).......................................................................................20

*Lautman v. 2800 Coyle St. Owners Corp.*,
No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947 (E.D.N.Y. Sept. 26, 2014)............11

*Lennon v. Miller*,
66 F.3d 416 (2d Cir. 1995)........................................................................................22

*Lomax v. Sears, Roebuck & Co.*,
238 F.3d 422 (Table), 2000 WL 1888715 (6th Cir. 2000) .............................................12

*Lucente v. Int'l Bus. Machines Corp.*,
310 F.3d 243 (2d Cir. 2002).......................................................................................25

*Mackay v. Massad*,
No. 16-CV-6906 (PAE), 2017 WL 2377986 (S.D.N.Y. May 31, 2017).........................13

*Majer v. Metro. Transp. Auth.*,
No. 90-CV-4608 (LLS), 1992 WL 110995 (S.D.N.Y. May 7, 1992) .............................24

*Malta v. Slagle*,
No. 05-CV-342S, 2007 WL 952045 (W.D.N.Y. Mar. 29, 2007)...................................22

*Marks v. Scalabrini*,
204 F. Supp. 3d 514 (S.D.N.Y. 2016) ..........................................................................15

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007).......................................................................................20

*Medina v. Multaler, Inc.*,
547 F. Supp. 2d 1099 (C.D. Cal. 2007) ........................................................................17

*Messier v. Southbury Training Sch.*,
No. 94-CV-1706 (EBB), 1999 WL 20907 (D. Conn. Jan. 5, 1999)...............................20

*Milanese v. Rust-Oleum Corp.*,
244 F.3d 104 (2d Cir. 2001).......................................................................................20

*Monell v. Dep't of Social Servs. of the City of N.Y.*,
436 U.S. 658 (1978) ...................................................................................................23

iii

*Montesano v. Westgate Nursing Home, Inc.*,
    956 F. Supp. 2d 417 (W.D.N.Y. 2013)..................................................................6

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977) ..........................................................................................19

*N.Y. ex rel. Spitzer v. Saint Francis Hosp.*,
    94 F. Supp. 2d 423 (S.D.N.Y. 2000) ................................................................16

*Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*,
    No. 02-CV-6493 (RJH), 2005 WL 2453078 (S.D.N.Y. Sept. 30, 2005)..........12

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997 ................................................................................13

*Rodriguez v. Modern Handling Equip. of NJ, Inc.*,
    604 F. Supp. 2d 612 (S.D.N.Y. 2009) ..............................................................13

*S.H.A.R.K. v. Metro Parks Serving Summit Cty.*,
    499 F.3d 553 (6th Cir. 2007)............................................................................22

*San Filippo v. U.S. Trust Co. of N.Y.*,
    737 F.2d 246 (2d Cir. 1984).............................................................................18

*See Stevens v. N.Y. Racing Ass'n, Inc.*,
    665 F. Supp. 164 (E.D.N.Y. 1987).....................................................................6

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004).............................................................................25

*Silverstein v. Chase*,
    260 F.3d 142 (2d Cir. 2001).............................................................................15

*Smith v. Stratus Computer, Inc.*,
    40 F.3d 11 (1st Cir. 1994)................................................................................17

*Stevens v. New York Racing Association, Inc.*,
    665 F. Supp. 164 (E.D.N.Y. 1987)...................................................................22

*Tanvir v. LaPorte*,
    No. 93-CV-6923 (JGK), 1997 WL 473084 (S.D.N.Y. June 13, 1997)............24

*United States v. DeSalvo*,
    No. 94-CR-119 (RPP), 1995 WL 479487 (S.D.N.Y. Aug. 10, 1995)..............14

*United States v. Diaz*,
    176 F.3d 52 (2d Cir. 1999) ........................................................................................18

*United States v. Oliver*,
    626 F.2d 254 (2d Cir. 1980) ......................................................................................14

*United States v. Ozsusamlar*,
    428 F. Supp. 2d 161 (S.D.N.Y. 2006) .......................................................................14

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ..................................................................................................25

*Williamson v. United States*,
    512 U.S. 594 (1994) ............................................................................................14, 15

*Willingham v. Cty. of Albany*,
    No. 04-CV-369 (DRH), 2005 WL 1660114 (N.D.N.Y. July 12, 2005) ......................18

**Statutes**

42 U.S.C. § 1983 ...............................................................................................5, 21, 23

**Rules**

Federal Rule of Evidence 804 .......................................................................................13, 14

Federal Rule of Evidence 1002 ...........................................................................................16

Federal Rule of Evidence 1004 ...........................................................................................16

Federal Rule of Civil Procedure 15 ....................................................................................20

Federal Rule of Civil Procedure 60 ....................................................................................19

Defendants the Hugh L. Carey Battery Park City Authority ("BPCA") and Robert Serpico ("Serpico," and together with the BPCA, the "BPCA Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff's Motion for Summary Judgment.

## PRELIMINARY STATEMENT

With discovery complete, it is now clear that Plaintiff's meeting exclusion and retaliatory eviction claims lack any factual support.

Plaintiff has failed to prove that his exclusion from a BPCA board meeting violated his First Amendment rights.  First, for the reasons principally stated in the BPCA Defendants' Memorandum of Law in support of their Motion for Summary Judgment, the admissible evidence demonstrates that the BPCA's decision to exclude Plaintiff from the BPCA boardroom was not based on any protected activity as a "journalist,"[1] but was based on Plaintiff's threatening and disruptive behavior, including his undisputed behavior during a board meeting on June 9, 2015.  Second, the BPCA's limited measure of requiring Plaintiff to view a live video broadcast of the July 29, 2015 board meeting from a separate room was reasonably tailored to address Plaintiff's behavior without restricting his ability to gather the news.  Plaintiff's assertion that this arrangement impeded his ability to ask questions during the meeting is meritless.  The undisputed evidence shows that, at all times relevant to this lawsuit, the BPCA did not take comments or questions from attendees, including members of the press, during board meetings.

The uncontested, admissible evidence similarly contradicts Plaintiff's retaliatory eviction claim.  Nothing presented by Plaintiff establishes that the non-renewal of his lease, and subsequent eviction, were the result of a conspiracy, rather than the undisputed fact that he

---

[1]     This Court has never "designated" Plaintiff as a journalist, as Plaintiff asserts.  (*See* Pl.'s Mem. of Law at 4.)  Instead, at the motion to dismiss stage, the Court accepted as true Plaintiff's allegation that he is a journalist. *See* Order at 10 n.6, ECF No. 177.  In any event, Plaintiff's claimed status as a journalist is not material to the pending motions for summary judgment.

habitually failed to pay his rent on time, and the history known by the Landlord Defendants of Plaintiff's harassment of other tenants and building staff.  Simply stated, none of the "evidence" cited by Plaintiff is sufficient to warrant summary judgment in Plaintiff's favor.  First, Plaintiff relies upon an unauthenticated recorded phone call between himself and Linda Soriero concerning an email that Robert Serpico purportedly sent to Steven Rossi.  This evidence is inadmissible as hearsay within hearsay that violates the Best Evidence Rule.  In any event, even if it were admissible, this evidence is simply not probative of a conspiracy between Serpico and Rossi to violate Plaintiff's First Amendment rights.  Second, Plaintiff's relies on the testimony of former BPCA employee Kirk Swanson.  Swanson testified only that Serpico had shrugged his shoulders and rolled his eyes when asked whether he had caused the non-renewal of Plaintiff's lease.  A shrug and an eye roll do not constitute probative evidence of a § 1983 conspiracy. Finally, Plaintiff relies on former BPCA employee Allyson Ford's vague testimony of "watercooler" talk, as well as her general opinions about the BPCA.  Such testimony is equally insufficient to prove the alleged conspiracy.

Because his claims lack any factual support, and indeed are flatly contradicted by the record developed during discovery, Plaintiff cannot prevail on summary judgment.  Rather, for the reasons discussed in the BPCA and Landlord Defendants' moving papers, Plaintiffs' claims should be dismissed.[2]

---

[2]     The BPCA Defendants use the term "Landlord Defendants" to refer to all defendants other than the BPCA Defendants.

2

## FACTUAL BACKGROUND

For the relevant factual background, the BPCA Defendants refer the Court to their Statement of Material Facts filed pursuant to Local Rule 56.1 in support of their Motion for Summary Judgment (cited herein as 56.1 ¶ __).  *See* ECF No. 377.

## ARGUMENT

This is not the "rare case" where a plaintiff has met the exceptionally high burden of proving his claims as a matter of law to prevail on summary judgment.  *See Guardian Angel Credit Union v. MetaBank*, No. 08-CV-261-PB, 2011 WL 2784078, at *8 (D.N.H. July 14, 2011) (noting that it is "a rare case in which the party with the burden of proof will be entitled to summary judgment"); *see also Montesano v. Westgate Nursing Home, Inc.*, 956 F. Supp. 2d 417, 421 (W.D.N.Y. 2013) (noting that "it is unusual for a plaintiff to move for summary judgment," and that such motions are rarely granted – particularly in cases where "the defendants' knowledge and intent" are at issue).  Far from it.  The record evidence cannot plausibly support either of Plaintiff's remaining claims.  Indeed, as set forth in the BPCA Defendants' Memorandum of Law in support of their Motion for Summary Judgment, ECF No. 372, summary judgment should be entered in the BPCA Defendants' favor.[3]

## I.    THE BPCA DEFENDANTS DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS BY EXCLUDING HIM FROM THE BPCA BOARDROOM ON JULY 29, 2015

Plaintiff's assertion that he is entitled to summary judgment on his claim that the BPCA unlawfully excluded him from the BPCA board meeting on July 29, 2015 (the "July Meeting") is without merit.  In order to be granted summary judgment on such claim, plaintiff must

---

[3]        In opposition to the instant motion, the BPCA Defendants adopt and incorporate by reference all of the arguments set forth in the Memorandum of Law in support of their Motion for Summary Judgment.

demonstrate that the undisputed facts establish the following three factors: (1) that his access to a public meeting was restricted in a content-based manner; (2) that such restriction was not "rationally related to the accomplishment of [a legitimate governmental] purpose"; and (3) that such restriction did not "outweigh the systemic benefits inherent in unrestricted (or lesser-restricted) access." *See Stevens v. N.Y. Racing Ass'n, Inc.*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987). (*See generally* BPCA Defs.' Mem. of Law at 9-10, ECF No. 372.) Plaintiff has failed to come forward with evidence to establish even one of these elements.[4]

First, Plaintiff was not excluded from the July Meeting because of the content of his blog, BatteryPark.TV, but because of his history of threatening and disruptive behavior, including his behavior during the board meeting held on June 9, 2015 (the "June Meeting"). In a futile attempt to seek summary judgment on his exclusion claim, Plaintiff asserts, in a wholly conclusory manner, that his exclusion from the July Meeting was unjustified because "the BPCA defendants failed to provide any such evidence of Plaintiff being disruptive or a threat." (Pl.'s Mem. of Law at 8.) However, as set forth in the BPCA Defendants' Motion for Summary Judgment, the record is replete with undisputed evidence, much of which comes directly from the mouth of the Plaintiff, to the contrary. (*See* 56.1 ¶¶ 14–36, 41–53, 64–66.) Plaintiff's history includes calling a BPCA attorney a "cunt" (*id.* ¶ 27), physically threatening BPCA Chief of Staff Kevin McCabe

---

[4]     Plaintiff also claims that he was barred from a town hall meeting on December 16, 2015, and a board meeting on April 13, 2016. (*See* Pl.'s Mem. of Law at 7.) However, the Corrected Amended Complaint ("CAC") does not mention either meeting, and Plaintiff never moved to amend the CAC. Accordingly, the parties completed discovery on the understanding that Plaintiff's equal access claim was premised upon his exclusion from the July Meeting. *See* Order at 8, ECF No. 177 (describing Plaintiff's First Amendment equal access claim as one that "stems from a July 29, 2015 BPCA meeting to which he was allegedly denied admission").

In any event, the same analysis supports the BPCA's exclusion of Plaintiff from the BPCA boardroom on April 13, 2016. As was the case with the July Meeting, the BPCA reserved a separate room from which Plaintiff could view and report on the April 13, 2016 meeting as it happened, in real time. (*See* McCabe Decl. ¶ 4.) Plaintiff's own video confirms that he was offered the opportunity to view the April 13, 2016 board meeting from a separate room, although Plaintiff apparently refused to go there. (*See* Gunnell Decl. ¶ 3, Ex. 2 at 0:11 – 0:17.) As for the town hall meeting on December 16, 2015, Plaintiff's own video evidence shows that Plaintiff was not excluded, but ultimately signed-in and attended that meeting. (*See* Gunnell Decl. ¶ 4, Ex. 3 at 2:23 – 3:37.)

4

(*id.* ¶ 30), stalking a summer camp director (*id.* ¶ 20(a)), harassing children for playing soccer on a park lawn (*id.* ¶ 20(b)), calling a BPCA receptionist a "lying piece of trash" (*id.* ¶ 26), and contacting BPCA staff on their personal cell phones (*id.* ¶¶ 21–25, 33–34, 36).  During the June Meeting, Plaintiff refused to leave the boardroom even after the public portion of the meeting had ended even though everyone else, as Plaintiff put it, "obeyed like sheep" and left the room. (*See id.* ¶ 47.)  Plaintiff then began shouting questions at Chairman Mehiel, even as McCabe told Plaintiff that he needed to leave the room.  (*Id.* ¶ 47.)  Plaintiff left the BPCA boardroom only after McCabe warned Plaintiff that McCabe would call the police.  (*Id.* ¶ 48.)  Even after Plaintiff left the boardroom, he lingered in the BPCA reception area and walked around the BPCA's private offices without authorization, photographing and filming those areas without permission.  (*Id.* ¶ 50.)  Plaintiff's disruptive behavior at the June Meeting is undisputed – indeed Plaintiff admitted it in his deposition (*see id.* ¶ 47) – and provided ample justification for Mehiel's decision to restrict Plaintiff's physical access to the BPCA boardroom.

    In stark contrast, Plaintiff points to no evidence to controvert these undisputed facts. Instead, Plaintiff cites to McCabe's testimony that Plaintiff "never even as much as touched McCabe, and that no security forces were called to remove Plaintiff."  (*See* Pl.'s Mem. of Law at 8.)[5]  McCabe's testimony that Plaintiff did not "strike or punch" (McCabe Dep. at 37:23 – 38:3) does nothing to undermine the testimony that Plaintiff's behavior was significantly disruptive;

---

[5]     Plaintiff's brief does not accurately characterize the cited transcript section.  Rather, in the section cited by Plaintiff, McCabe testified that during the June Meeting, Greer "refused to leave the room when [the BPCA Board] adjourned for executive session and only did so when [McCabe] threatened to call the police."  (Tremonte Decl. ¶ 4, Ex. 3 ("McCabe Dep.") at 32:15–20, ECF No. 373-3.)  The cited portion of the transcript further indicates that McCabe testified that Plaintiff was banned from BPCA offices dues to his abusive and disruptive behavior (*id.* at 32:24 – 33:3); that McCabe knew of several instances where Plaintiff called and harassed staff, including calling one female staff member a "cunt" (*id.* at 33:8–11); and that Plaintiff "interfered with the course of business with the board conducting executive session by refusing to leave the board[room]" (*id.* at 33:20–22).

5

the BPCA did not need to wait until Plaintiff inflicted bodily harm before taking action to protect

its community members and staff.  Likewise, Plaintiff's reliance upon testimony of BPCA

Comptroller Karl Koenig to dispute these facts is completely misplaced.[6]  Plaintiff's reliance on

Koenig's testimony ignores the fact that Koenig is "in charge of various items that happen in the

finance department" (Koenig Dep. at 9:22–23), and not matters related to security or the orderly

operation of board meetings.  Indeed, there is no reason, or evidence of any such reason, that

anyone at the BPCA would have consulted Koenig about Plaintiff's behavior.  Thus, Koenig's

testimony that he was unaware of anyone at the BPCA having expressed concern about

Plaintiff's behavior during board meetings is entirely irrelevant and lends no support to

Plaintiff's claims.  Koenig's testimony does not, in any way, undermine the voluminous record

---

[6] Plaintiff cites to the following testimony as supporting his contention that, despite the well-established record, Plaintiff was not excluded because of his disruptive behavior:

> Q. Has anyone on the board or employed by the BPCA expressed concern about me, Steven Greer, and my behavior during any public meeting?
>
> MR. TREMONTE: Objection.
>
> A. Not to my knowledge.
>
> ***
>
> Q. Dennis Mehiel and Kevin McCabe have both said, under oath, that Dennis [*sic*] McCabe ordered the staff at the BPCA to not let me in to Battery Park City Authority board meets that are public.  Were you made aware of that?
>
> MR. TREMONTE: Objection.
>
> A.  I was made aware of that after.
>
> Q. After what?
>
> A. The event occurred, I guess, when you were no longer able to come to our meetings.
>
> ***
>
> Q. What was the reason given to you as to why Dennis Mehiel banned me from public meetings?
>
> MR. TREMONTE: Objection.
>
> A. I don't recall any reason.

(*See* Greer Decl. ¶ 16, Ex. I ("Koenig Dep.") at 25:3 – 26:8, ECF No. 370 (exhibit filed under seal)).

of Plaintiff's misconduct, including Plaintiff's outburst at the June Meeting.  In short, Plaintiff's attempt to direct the Court to such transparently irrelevant and non-material details, which in no way advance his claims, simply underscores the complete lack of material evidence in the record that support his claims.

Not only does the undisputed evidence demonstrate that Plaintiff was excluded from the July Meeting solely because of his behavior, but the limited restriction imposed upon Plaintiff – requiring him to view the July Meeting from a separate room – was reasonably tailored to achieve the goal of ensuring the business of the BPCA board could be conducted in an orderly fashion, while still complying with the New York Open Meetings Law.[7]  In particular, the record contains no evidence that it impaired Plaintiff's ability to gather the news in any way.  (*See* BPCA's Mem. of Law at 11–13, ECF No. 372.)  Plaintiff's assertion that he suffered harm because the BPCA took questions from reporters during board meetings (*see* Pl.'s Mem. of Law at 9–10) is demonstrably false.  The undisputed evidence – including the three videos cited by Plaintiff – establishes that, at all times relevant to this lawsuit, the BPCA never took comments or questions during board meetings.  (*See* 56.1 ¶¶ 67–76.)  BPCA Chairman Dennis Mehiel's testimony, upon which Plaintiff relies, is clear that "[w]e don't engage in public dialogue during the public meetings."  (*See* Tremonte Decl. ¶ 5, Ex. 4 ("Mehiel Dep.") at 38:25 – 39:2, ECF No. 373-4.)  This testimony is entirely consistent with the first video submitted by Plaintiff (with the misleading description "Mehiel replying to a question by BatteryPark.TV"), in which Mehiel responds to a question from Plaintiff by stating:  "Unfortunately, I apologize for this but due to the protocols there are no public comments and we can't change that precedent unfortunately,

---

[7]      The Court has already held that "the fact that Greer was sent to an overflow room, where he could observe the BPCA's July 29, 2015 meeting, did not violate the Open Meetings Law."  Order at 9, ECF No. 177.

but I do understand your interest and I will try to be as complete as I can in my explanation."
(Tremonte Decl. ¶ 31, Ex. 30 at 0:22.)  Mehiel further explained: "We do not have public
comment during the meetings," and "I don't want to get into a dialog."  (*Id.* at 0:45.)  Indeed,
Plaintiff's own description of this video concedes the point by stating: "During the January 22,
2015 BPCA board meeting, Chairman and CEO Dennis Mehiel admitted on video record that *he
does not allow questions from the public*, possibly violating NY Open Meeting law."  (*Id.* at 0:02
(emphasis added).)

While Mehiel clarified that he has occasionally responded to press inquiries, he was
equally clear that he did not take such questions during board meetings.  Mehiel testified:  "On
occasion *after a meeting is over*, a reporter has asked me a question or two and I've answered it.
It's not common, but it happens, and when it does I try to respond."  (Mehiel Dep. at 39:19–23
(emphasis added).)  The second video cited by Plaintiff (with the description "Mehiel answering
questions from the press") corroborates Mehiel's testimony entirely, as is apparent from
Plaintiff's own description of the events depicted in the video:  "*When the meeting concluded*,
reporters asked BPCA Chairman Dennis Mehiel to comment."  (Gunnell Decl. ¶ 4, Ex. 3 at 0:12
(emphasis added).)  Thus, nothing in this video undermines the essential fact that the BPCA did
not take comments or questions during board meetings at any time relevant to this lawsuit.[8]

---

[8]      The third video cited by Plaintiff (described as "Mehiel and others answering questions at town hall") does
not even depict a BPCA board meeting.  Therefore, this video bears no relevance on the issue presented by this case,
which concerns Plaintiff's limited exclusion from a BPCA board meeting at which questions from the public were
not permitted.

## II.    THERE IS NO EVIDENCE THAT THE BPCA DEFENDANTS CONSPIRED WITH THE LANDLORD DEFENDANTS TO EVICT PLAINTIFF FROM HIS APARTMENT

The undisputed evidence shows that Steven Rossi and Loraine Doyle decided not to renew Plaintiff's lease because of Plaintiff's nonpayment of rent and complaints about Plaintiff's behavior toward other residents of 200 Rector Place.[9]   (*See* Rossi Decl. ¶¶ 7, 9, ECF No. 381 (filed under seal)).   Nevertheless, Plaintiff now contends that he is entitled to summary judgment on his conspiracy claim, arguing that the non-renewal of his lease was really the result of a conspiracy between the BPCA Defendants and the Landlord Defendants.   The only evidence (some of which is not admissible) cited by Plaintiff in support of such contention is the following:   (1) the vague, hearsay description by a former BPCA employee of an email wherein Serpico allegedly asked Rossi to "look into [Plaintiff's] rent situation"; (2) the testimony of former BPCA employee Kirk Swanson that Serpico shrugged and rolled his eyes after Swanson asked him whether he had caused the non-renewal of Plaintiff's lease; and (3) the vague testimony of former BPCA employee Allyson Ford about "watercooler" talk and her opinions about the BPCA.   This evidence is insufficient to support Plaintiff's Motion for Summary Judgment; rather, there is absolutely no admissible evidence to support the existence of a

---

[9]       Plaintiff continues to insist that he paid his rent on time.  However, in addition to the voluminous evidence in the record to the contrary, collateral estoppel bars Plaintiff from relitigating the issue that he owed $10,887.00 in arrears – over three months' rent – as of April 2014, when his lease expired and Mariners Cove Site B Associates ("MCSBA") commenced a nonpayment proceeding against him in the Civil Court of the City of New York ("Housing Court").  The Housing Court determined that Plaintiff had "failed to raise even one legal defense to the payment of rent," and accordingly granted MCSBA's motion for the release of the arrears to MCSBA.  (*See* Housing Court Order, ECF No. 184-3.)  Because the Housing Court necessarily determined that Plaintiff owed $10,887.00 in arrears in the nonpayment proceeding, during which Plaintiff had a full and fair opportunity to litigate the issue, this determination should be given preclusive effect.  *See, e.g.*, *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947, at *13 (E.D.N.Y. Sept. 26, 2014) (holding that "default judgment in a summary non-payment proceeding has collateral estoppel effect").

conspiracy between Rossi and Serpico (or anyone else at the BPCA) to remove Plaintiff from his apartment in retaliation for his blogging.  (*See* BPCA Defs.' Mem. of Law at 3–7, ECF No. 372.)

First, notwithstanding the uncontroverted evidence showing that the Landlord Defendants made the decision not to renew Plaintiff's lease based on his failure to pay rent on time and for harassing other tenants and staff, *see infra* at 16–17, Plaintiff relies upon portions of a March 12, 2017 telephone call between himself and Linda Soriero,[10] which Plaintiff apparently recorded. During this call, Soriero claimed to have observed an email on Serpico's computer screen from Serpico to Rossi "over a year and a half ago" and sometime before Plaintiff was evicted. According to Soriero, Serpico's email stated that Rossi should "look into" Plaintiff's "rent situation."  (*See* Greer Decl. ¶ 23, Ex. Q ("Soriero Call Tr.") at 17:6–10, 18:9–18, ECF No. 370 (exhibit filed under seal).)  For the following reasons, this vague description of an email is inadmissible and should not be considered on summary judgment.  *See, e.g.*, *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

Soriero's out-of-court description of an email from Serpico constitutes inadmissible hearsay.[11]  Recognizing that Soriero's statement is hearsay, Plaintiff unsuccessfully attempts to

---

[10]     The BPCA Defendants do not concede the authenticity of Linda Soriero's voice, which has never been established.  Plaintiff's failure to authenticate Soriero's voice alone renders the call transcript inadmissible on summary judgment.  *See, e.g.*, *Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*, No. 02-CV-6493 (RJH), 2005 WL 2453078, at *15 (S.D.N.Y. Sept. 30, 2005) ("Since the transcripts of the undated voicemail message from 'Ms. Greene' to plaintiff and the audio recording of the January 2, 2002 meeting between Prager, Cotter and plaintiff were not authenticated, they shall be disregarded.")  *Accord Lomax v. Sears, Roebuck & Co.*, 238 F.3d 422 (Table), 2000 WL 1888715, at *3 (6th Cir. 2000) ("Lomax bases most of his claims against Sears on an audio tape containing conversations he recorded surreptitiously while he was employed at Sears, as well as on transcripts of the audio tape.  The district court correctly ruled, however, that the tape and transcripts are not properly authenticated.").

[11]     Soriero's out-of-court description of an email from Serpico constitutes double hearsay, in that Soriero's out-of-court statement describes Serpico's out-of-court statement.  For double hearsay to be admissible, each level of hearsay must be covered by an exception to the hearsay rule.  *See, e.g.*, *Rodriguez v. Modern Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 622 (S.D.N.Y. 2009).

invoke the hearsay exception for a statement against the interest of an unavailable declarant. *See* Fed. R. Evid. 804(b)(3). In order for the hearsay objection relied upon by Plaintiff to apply, the witness must be unavailable *and* the hearsay testimony must be a statement against interest. *See id.* Neither prong is met here. First, Plaintiff has failed to show that Soriero is unavailable to testify at trial. *See, e.g.*, *Mackay v. Massad*, No. 16-CV-6906 (PAE), 2017 WL 2377986, at *5 (S.D.N.Y. May 31, 2017) ("Mackay as yet has not substantiated that Sacco is unavailable to testify at trial. On the present record, therefore, Sacco's statements cannot be considered on summary judgment for the truth of the matter asserted by Sacco."). *See also Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183, 1187 (S.D.N.Y. 1989) (holding that party offering statement bears "foundational burden of establishing the unavailability of the declarant"). Soriero's failure to appear for her deposition, without more, does not establish her unavailability for purposes of Federal Rule of Evidence 804. *See Flagg v. City of Detroit*, No. 05-74253, 2010 WL 4366868, at *2 (E.D. Mich. Oct. 28, 2010) (holding that declarant's "mere failure to appear for his deposition, standing alone, does not establish his unavailability"). *Accord United States v. Oliver*, 626 F.2d 254, 261 (2d Cir. 1980) (noting that "the court never ordered him to testify, which is an essential requisite to the invocation of Rule 804(a)(2)"). Further, Plaintiff has failed to demonstrate that he has taken any steps whatsoever, let alone the requisite "reasonable means," to procure Soriero's attendance at trial (or at a deposition). *See* Fed. R. Evid. 804(a)(5) (requiring that proponent of statement take "reasonable means" to procure statement of declarant who is absent from trial or hearing); *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 176 (S.D.N.Y. 2006) (holding that "some affirmative steps must be taken" to demonstrate "reasonable means" to procure declarant's appearance). After Soriero failed to appear for a

deposition noticed by Plaintiff, at no point did Plaintiff seek to compel Soriero's testimony or otherwise attempt to procure her attendance.[12]

Moreover, Soriero's description of an email was not "so contrary to [her] proprietary or pecuniary interest or had so great a tendency to invalidate [her] claim against someone else or to expose [her] to civil or criminal liability" that it could be admissible under Federal Rule of Evidence 804(b)(3)(A). In *Williamson v. United States*, 512 U.S. 594 (1994), the Supreme Court held that the statement-against-interest exception "is to be read narrowly," such that "although the self-inculpatory parts of a declarant's narrative are admissible, any non-self-inculpatory statements are not admissible under this rule." *United States v. DeSalvo*, No. 94-CR-119 (RPP), 1995 WL 479487, at *3 (S.D.N.Y. Aug. 10, 1995); *see Williamson*, 512 U.S. at 600–01 (holding that Fed. R. Evid. 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory"); *Silverstein v. Chase*, 260 F.3d 142, 148 (2d Cir. 2001) (holding that *Williamson* standard applies equally to statements against pecuniary interests and statements against penal interests). Here, without focusing on any particular statement made by Soriero, Plaintiff contends generally that Soriero's statements were against her interest because speaking to Plaintiff "got her fired." (Pl.'s Mem. of Law at 16.) It does not follow, however, that every statement made by Soriero to Plaintiff is necessarily the kind of damaging statement that a person would make only if true. *See* Fed. R. Evid. 804 advisory committee's note ("The circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to

---

[12] In his Memorandum of Law, Plaintiff has revived his unfounded accusation that the BPCA "tampered" with Soriero. (*See* Pl.'s Mem. of Law at 15, 20.) Plaintiff has already raised this issue with Magistrate Judge Cott, who denied Plaintiff's request for relief based upon alleged witness tampering. *See* Order, ECF No. 313. Now, as before, Plaintiff offers no evidence to support his assertion that the BPCA's personnel action and its service of subpoenas upon Soriero constitute witness tampering, and the BPCA categorically deny this baseless claim.

themselves unless satisfied for good reason that they are true.").  Instead, under *Williamson*, Plaintiff must demonstrate that the particular statement he seeks to admit – here, Soriero's description of an email – qualifies as a statement against interest.  Plaintiff has not, and could not possibly, meet that burden because there is nothing about the Serpico email that runs contrary to Soriero's interest.  In fact, the circumstances of the call suggest that Soriero believed it to be in her interest to ingratiate herself with Plaintiff, thereby making her description of the email *less* reliable.[13]  *See Marks v. Scalabrini*, 204 F. Supp. 3d 514, 525 (S.D.N.Y. 2016) ("Aitken's statements to Deluca were not contrary to his interests at the time they were made—to the contrary, they were, according to the plaintiff's argument, made to further Aitken's interest as he stood to gain from doing business with EMC.").

Even if Soriero's statement fell within a hearsay exception, the Best Evidence Rule bars Plaintiff from relying upon Soriero's statement to establish the content of the purported email from Serpico to Rossi.  *See* Fed. R. Evid. 1002 (requiring the "original writing . . . in order to prove its content").  Indeed, the Best Evidence Rule was created precisely to preclude this sort of vague and incomplete description of an email that Soriero claims to have seen over eighteen months earlier.  *See Gordon v. United States*, 344 U.S. 414, 421 (1953) ("The elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description . . . .").  Additionally, Plaintiff cannot demonstrate that the email in question was lost, destroyed, or otherwise unavailable.  *See* Fed. R. Evid. 1004.  To the contrary, the BPCA Defendants produced an email to Plaintiff that fits Soriero's precise description both in timing

---

[13]        In fact, Soriero demanded at one point that "I need to know what's in it for me."  (Soriero Call Tr. at 16:13–14.)

and substance:  the May 2014 email in which Serpico asked Rossi, "Is he now evicted ?  Where is he living ?"  (Serpico Decl. ¶ 6, Ex. 1, ECF No. 374-1.)  Because the email itself "is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description," *Gordon*, 344 U.S. at 421, the Court should bar admission of Soriero's description of Serpico's email.  *See, e.g.*, *Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527 NG/LB, 2009 WL 3148764, at *4 (E.D.N.Y. Sept. 29, 2009) (holding that "averments by [defendant] concerning the content of the 'report,' and determinations about the 'report,' are inadmissible evidence barred as hearsay and by the best evidence rule); *N.Y. ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000) (disregarding affidavit concerning the content of certain letters "because the letters themselves are the best evidence of their contents," the letters were not attached to the affidavit, and there was no evidence that the letters were unavailable).  *Accord Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1122 (C.D. Cal. 2007) (holding that the plaintiff's references in a declaration to "the content of emails . . . violate the best evidence rule" and were, therefore, inadmissible on summary judgment).[14]

   Finally, even if Soriero's hearsay description of Serpico's email were admissible, it does not prove Plaintiff's alleged conspiracy.  As described in the BPCA Defendants' Memorandum of Law in support of their Motion for Summary Judgment, a single email from Serpico to Rossi along the lines described by Soriero concerning Plaintiff's tenancy is not sufficient to support an inference that Serpico and Rossi conspired to have Plaintiff removed from his apartment.  (*See* BPCA Defs.' Mem. of Law at 4–5, ECF No. 372.)

---

[14]    Because the BPCA Defendants have produced an email fitting Soriero's description, Plaintiff's scurrilous accusations of spoliation are baseless.  *See, e.g.*, *Farella v. City of New York*, No. 05-CV-5711 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) (holding that "for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence *actually existed and was destroyed*") (emphasis in original).

Second, Plaintiff's reliance upon the testimony of Kirk Swanson is similarly misplaced. As discussed in the BPCA Defendants' Memorandum of Law in support of their Motion for Summary Judgment, Swanson's vague and conclusory testimony provides no support for Plaintiff's claim of a retaliatory eviction.  (*See* BPCA Defs.' Mem. of Law at 6, ECF No. 372.) A shrug and an eye roll cannot support a reasonable inference – let alone conclusive proof – of an unlawful conspiracy to violate Plaintiff's constitutional rights.  *See Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17–19 (1st Cir. 1994).

Third, Plaintiff cannot salvage his conspiracy claim by resorting to the testimony of Allyson Ford, another former BPCA employee who described "watercooler" discussions about Plaintiff and his blog.  (*See* Greer Decl. ¶ 19, Ex. L ("Ford Dep.") at 9:17–19, 12:2–6, 16:5–16, ECF No. 370 (exhibit filed under seal).)  Evidence that various, unknown BPCA employees spoke about Plaintiff around the watercooler does not suffice to create even a material issue of fact as to whether those conversations included a conspiracy to violate Plaintiff's constitutional rights.  *Cf. San Filippo v. U.S. Trust Co. of N.Y.*, 737 F.2d 246, 256 (2d Cir. 1984) (holding that evidence of meetings is not "sufficient to create a material issue of fact as to whether something improper took place during them").  As to Ford's testimony that Serpico disapproved Plaintiff's blog, Ford could not even remember a particular instance where one of Plaintiff's stories had upset Serpico, and she testified that Serpico's attitude appeared to be "dismissal of the substance of the blog" rather than anger.  (*See* Ford Dep. at 12:7–16.)  In any event, Serpico's dislike of Plaintiff's blog, even if true, does not prove a conspiracy to remove Plaintiff from his apartment. *See, e.g.*, *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 432 (N.D.N.Y. 2009) (holding that "evidence of a series of expressions of a common dislike of a plaintiff by a handful of individuals is

different from evidence of a conspiratorial agreement between those individual[s]").[15]   At best,

Ford's testimony creates a tenuous inference that Serpico may have had a motive to act, but

nothing in the record in any way establishes that Serpico acted upon such motive by engaging in

"purposeful behavior aimed at furthering the goals of the conspiracy" – a necessary element to

establish a party's membership in a conspiracy.  *See Willingham v. Cty. of Albany*, No. 04-CV-

369 (DRH), 2005 WL 1660114, at *6 (N.D.N.Y. July 12, 2005) (quoting *United States v. Diaz*,

176 F.3d 52, 97 (2d Cir. 1999)).

Finally, for the reasons set forth in the Landlord Defendants Memorandum of Law in

support of their Motion for Summary Judgment, *see* ECF No. 380 (filed under seal), the

Landlord Defendants have shown that Mariners Cove Site B Associates would not have renewed

Plaintiff's lease – and would have evicted him after he held over – even in the absence of any

protected First Amendment conduct.  As detailed in the Declaration of Steven Rossi, Plaintiff fell

behind in his rent and was in significant arrears for the majority of the period beginning in June

2012 through his eviction in April 2016.  (*See* Rossi Decl. ¶¶ 10–22, ECF No. 381 (filed under

seal).)  In addition, Plaintiff instilled such fear in Rossi's staff that Rossi hired security.  (*See id.*

¶ 25.)[16]  Contrary to Plaintiff's contention that he was singled out, the Landlord Defendants have

produced litigation reports showing that Mariners Cove Site B Associates took legal action

against fourteen tenants of 200 Rector Place from 2011 through 2014.  (*See* Rossi Decl. ¶¶ 42–

---

[15]   Ford's testimony does not support Plaintiff's accusation that "Serpico was the source of anonymous information being leaked to Plaintiff in order for negative press to be written about Serpico's enemies." (*See* Pl.'s Mem. of Law at 14.) Ford testified only that she heard from unnamed sources that Serpico was "providing information to Steven Greer," but she explicitly disclaimed any firsthand knowledge of this behavior. (*See* Ford Dep. at 33:2–11.) Further, whoever the "source of anonymous information" was, this testimony is utterly irrelevant to Plaintiff's claims.

[16]   On one occasion shortly after the Landlord Defendants decided not to renew Plaintiff's lease, Plaintiff tried to enter Milford Management's office at 99 Battery Place and, when he was directed outside by security, became aggressive and "began to use profanities" with the security supervisor. (*See* Healy Aff. ¶ 5, ECF No. 381-33.)

53, ECF No. 381 (filed under seal).)  In all, the Landlord Defendants have established that they would have removed Plaintiff from his apartment whether Plaintiff blogged or not.  Therefore, Plaintiff's Motion for Summary Judgment on this claim should be denied and summary judgment granted in favor of Defendants.  *See, e.g.*, *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251–52 (2d Cir. 2006).

## III.    THE COURT SHOULD DENY PLAINTIFF'S BELATED MOTION TO ADD DEFENDANTS

### A.    The Motion Is Untimely

For the first time in his motion for summary judgment, Plaintiff moves to amend the CAC to allege that Mehiel and Robert Serpico were personally involved in the decision to exclude Plaintiff from the July Meeting.[17]  (*See* Pl.'s Mem. of Law at 6.)  At this juncture, after discovery has closed and the parties have filed summary judgment motions, the Court should reject Plaintiff's belated attempt to add defendants to his claim.  *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of motion to amend complaint where "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"); *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (holding that "a proposed amendment is especially prejudicial when discovery had already been completed and non-movant had already filed a motion for summary judgment" (internal brackets and ellipses omitted)); *see also Messier v.*

---

[17]     Although Plaintiff appears to move under Federal Rule of Civil Procedure 60(b) "to reinstate Mehiel and Serpico as defendants" (*see* Pl.'s Mem. of Law at 6 & n.4), his motion is essentially one to amend the CAC.  As the Court observed in its September 30, 2016 Order granting Mehiel and Serpico's motion to dismiss this claim against them, "[t]here are no allegations in the [CAC] that either [Mehiel or Serpico] had a role in excluding Greer from the meeting."  Order at 12, ECF No. 177.  Now Plaintiff seeks to amend the CAC to allege that both individuals were personally involved in the exclusion.

*Southbury Training Sch.*, No. 94-CV-1706 (EBB), 1999 WL 20907, at *4 (D. Conn. Jan. 5, 1999) ("The classic situation where courts deny leave to amend arises when a party files a Rule 15(a) motion after discovery has been completed or the nonmoving party has filed for summary judgment."). The parties have already conducted discovery and filed summary judgment motions based on the understanding that the BPCA was the only defendant to the First Amendment equal access claim, and neither Mehiel nor Serpico had the opportunity to take discovery on this claim. For instance, Serpico never had the opportunity to cross-examine Plaintiff concerning Plaintiff's wholly unsupported assertion that "Serpico carried out the plans" to exclude Plaintiff from BPCA board meetings. (*See* Pl.'s Mem. of Law at 6.)

### B. The Motion Is Futile Because Mehiel and Serpico Would Be Entitled to Summary Judgment

In any event, adding Mehiel and Serpico as defendants to this claim would be futile because Mehiel and Serpico would be entitled to summary judgment. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (holding that, where cross-motion to amend complaint is filed in response to summary judgment motion, summary judgment standard applies to determine whether amendment would be futile).

First, Plaintiff asserts, without any citation to the record (or support from it), that "Serpico carried out the plans" to exclude Plaintiff from the BPCA boardroom. (*See* Pl.'s Mem. of Law at 6.) Indeed, the opposite is true. Serpico testified that he played no role in the decision to exclude Plaintiff from the July Meeting (*see* Gunnell Decl. ¶ 2, Ex. 1 ("Serpico Dep.") at 36:20 – 37:5), and nothing in the record contradicts his sworn testimony. Accordingly, Serpico would be entitled to summary judgment based upon his lack of personal involvement in the meeting exclusion. *See, e.g., Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (holding that

that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").

Second, to the extent his actions caused a constitutional violation, Mehiel would be entitled to qualified immunity.[18]  The doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks omitted).  A defendant is entitled to qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Id.* (internal brackets and quotation marks omitted).  "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act," *i.e.* "if officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted).

Under this deferential standard, Mehiel would be entitled to qualified immunity because the law on equal access was not clearly established in July 2015.  As the Sixth Circuit has observed in evaluating a First Amendment reporter's access claim, "[a]lthough the Supreme Court has established general principles with respect to access claims, *what is missing from these*

---

[18]     The same analysis would apply to Serpico if he had any personal involvement in the decision to exclude Plaintiff from the July Meeting, which he did not.

cases is a clearly defined framework in which to analyze these claims." *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 560 (6th Cir. 2007) (emphasis added).  Indeed, neither the Supreme Court nor the Second Circuit have set forth a standard to govern this type of claim.  Further, even if this Court were to hold that Plaintiff's rights were violated because he was unable to record the July Meeting in person, such a right was not clearly established at the time Mehiel acted, as "[c]ourts have generally held that there is no constitutional right to videotape public proceedings, particularly where the public has an alternative means of gathering information, such as making an audio recording or taking notes." *Malta v. Slagle*, No. 05-CV-342S, 2007 WL 952045, at *5 (W.D.N.Y. Mar. 29, 2007) (citing cases).[19]

Moreover, it was "objectively reasonable" for Mehiel to believe that his actions were lawful under the circumstances at the time.  As discussed in the BPCA Defendants' Memorandum of Law in support of their Motion for Summary Judgment, Mehiel excluded Plaintiff from the July Meeting on the basis of Plaintiff's history of harassing and disruptive behavior.  (*See* BPCA Defs.' Mem. of Law at 8–13, ECF No. 372.)  Additionally, Plaintiff was not even prevented from reporting on the July Meeting, as Plaintiff concedes that he was able to view a real-time video broadcast of the July Meeting from a separate room.  (*See* 56.1 ¶ 56.)  In light of Plaintiff's behavior – particularly his behavior at the immediately preceding board meeting on June 9, 2015 – and the limited restriction imposed upon Plaintiff, it cannot be said that Mehiel's actions were objectively unreasonable.  Accordingly, Mehiel would be entitled to summary judgment on the basis of qualified immunity, and Plaintiff's motion to amend the CAC

---

[19]     Plaintiff also stands in contrast to the plaintiff in *Stevens v. New York Racing Association, Inc.*, who had presented affirmative evidence that "photographs of racing people, including pictures of the plaintiff himself, are an important part of [the plaintiff's newspaper] *Post Time USA*'s coverage," and that "photojournalism is important to maintaining readership interest and securing advertising." 665 F. Supp. 164, 166 (E.D.N.Y. 1987).  Plaintiff has not presented any evidence that his ability to take in-person videos or photographs were important to his reporting and, in fact, the record reveals the opposite is true.

should be denied.  *See, e.g.*, *DiPace v. Goord*, 308 F. Supp. 2d 274, 289 (S.D.N.Y. 2004) (denying motion to amend where defendants to be added would be entitled to qualified immunity on summary judgment).

## IV.  PLAINTIFF HAS FAILED TO ESTABLISH THAT EITHER THE ALLEGED MEETING EXCLUSION OR ALLEGED CONSPIRACY WERE COMMITTED PURSUANT TO AN OFFICIAL POLICY OR CUSTOM

To prevail on his claims against the BPCA (and Serpico, in his official capacity), Plaintiff must prove that the alleged meeting exclusion and alleged conspiracy were caused by an official policy or custom.  *See, e.g.*, *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (holding that § 1983 claim against municipal entity requires plaintiff "to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right").  *See generally Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658 (1978).  Nowhere in his memorandum of law does Plaintiff address this requirement.[20]  For this reason, as well as the reasons set forth in the BPCA Defendants' Memorandum of Law in support of their Motion for Summary Judgment, ECF No. 372, the Court should deny Plaintiff's Motion for Summary Judgment as to the BPCA and Serpico (in his official capacity) and grant summary judgment in favor of the BPCA Defendants.

---

[20]    Plaintiff asserts that the BPCA was "grossly negligent in training its staff" based upon his discovery of a letter from the Office of the New York Inspector General to Serpico dated September 19, 2013.  (*See* Pl.'s Mem. of Law at 25.)  To the extent the Court characterizes this argument as a failure-to-train theory of *Monell* liability, nothing in the letter supports *Monell* liability.  Far from "damning direct evidence" (*see id.*), the letter states only that the New York State Inspector General had provided a training session on "Uniform Guidelines and Code of Conduct" to "executive management, counsels, ethics officers, and internal control officers of all Executive branch agencies and authorities," and that Serpico had missed the training.  (*See* Greer Decl. ¶ 6, Ex. Z, ECF No. 367-5.)  This letter – ostensibly a form letter sent to anyone who missed a training – does not support the existence of any official policy or custom that caused a violation of Plaintiff's constitutional rights.

**V.    EVEN IF PLAINTIFF COULD ESTABLISH A VIOLATION OF HIS FIRST AMENDMENT RIGHTS, THERE IS NO EVIDENCE TO SUPPORT ANY RELIEF OTHER THAN NOMINAL DAMAGES**

Plaintiff maintains that he is entitled to punitive damages and various forms of equitable relief against the BPCA for the alleged constitutional violations.  Even if Plaintiff could establish a violation of his constitutional rights, Plaintiff is not entitled to either form of relief.  Indeed, Plaintiff has failed to prove that he is entitled to an award greater than nominal damages.  (*See* BPCA Defs.' Mem. of Law at 17–24, ECF No. 372.)

First, although Plaintiff devotes several pages to his argument for punitive damages against the BPCA, it is well established that a public benefit corporation enjoys immunity from punitive damages under § 1983.  *See, e.g.*, *Tanvir v. LaPorte*, No. 93-CV-6923 (JGK), 1997 WL 473084, at *3–4 (S.D.N.Y. June 13, 1997); *Majer v. Metro. Transp. Auth.*, No. 90-CV-4608 (LLS), 1992 WL 110995, at *4 (S.D.N.Y. May 7, 1992); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Accordingly, the Court should dismiss Plaintiff's claim for punitive damages against the BPCA.

Second, equitable relief would not be appropriate in this case.  In particular, the Court should deny Plaintiff's request for his "immediate return" to 200 Rector Place, Apartment 35F. (*See* Pl.'s Mem. of Law at 30.)  Specific performance is an "'extraordinary' remedy for which the requesting party 'must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.'"  *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 502 (S.D.N.Y. 2011) (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)).  Because Plaintiff has failed to demonstrate that money damages would provide inadequate compensation for his alleged injuries, the Court should deny Plaintiff's extraordinary request to lease 200 Rector Place, Apartment 35F.

Moreover, the Court should deny Plaintiff's request for "equitable relief in the form of restructuring of the Battery Park City Authority."  As a general matter, the requested relief would go far beyond what is necessary in response to the purported issues in this lawsuit.  *Cf. Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree *to the necessities of the particular case*." (emphasis added)).  Plaintiff has neither established a likelihood of future injury, nor has he articulated how the relief he requests would redress any such injury. Accordingly, Plaintiff's claim for equitable relief must be dismissed for lack of standing.  *See, e.g.*, *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (holding that standing to seek injunctive relief requires plaintiff to "show a likelihood that he will be injured in the future," and that without standing, the court "lack[s] subject matter jurisdiction to entertain a request for such relief") (internal quotation marks omitted).

## CONCLUSION

For the reasons set forth above, the Court should deny the Plaintiff's Motion for Summary Judgment in its entirety.

Dated:     July 19, 2017
           New York, New York

SHER TREMONTE LLP

By:   /s/ Justin J. Gunnell
      Michael Tremonte
      Justin J. Gunnell
      Michael W. Gibaldi
      90 Broad Street, 23rd Floor
      New York, New York 10004
      Tel:  212.202.2600
      Fax:  212.202.4156
      E-mail:  mtremonte@shertremonte.com

      *Attorneys for the Hugh L. Carey Battery
      Park City Authority and Robert Serpico*

23