**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN E. GREER, MD,

                                        Plaintiff,

        -against-

DENNIS MEHIEL, ROBERT SERPICO, THE
BATTERY PARK CITY AUTHORITY, HOWARD
MILSTEIN, STEVEN ROSSI, JANET MARTIN,
MILFORD MANAGEMENT, and MARINERS COVE
SITE B ASSOCIATES,

                                        Defendants.

ECF CASE

CIVIL ACTION NO.
15 CV 6119 (AJN)(JLC)


# LANDLORD DEFENDANTS' MEMORANDUM OF LAW
# IN OPPOSITION TO PLAINTIFF'S MOTION FOR
# SUMMARY JUDGMENT


**ROSENBERG & ESTIS, P.C.**
*Attorneys for Defendants Howard
Milstein, Stephen Rossi, Janet
Martin, Milford Management, And
Mariners Cove Site B Associates*
733 Third Avenue
New York, New York 10017
(212) 867-6000

DEBORAH E. RIEGEL
ISAAC TILTON
*Of Counsel*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

FACTS ................................................................................................3

ARGUMENT .......................................................................................3

POINT I -  SUMMARY JUDGMENT STANDARD ...................................3

POINT II - PLAINTIFF CANNOT ESTABLISH A *PRIMA*
 *FACIE* SECTION 1983 CLAIM AGAINST
 LANDLORD DEFENDANTS .........................................3

    A.    The Applicable Analytic Framework...................................3

    B.    Plaintiff Has Failed to Show Entitlement to Summary Judgment as a
 Matter of Law ...............................................................4

    C.    Landlord Defendants' Adopt their Arguments in Favor of Their Motion
 for Summary Judgment Herein .........................................4

    D.    Plaintiff Has Not Proffered Any Evidence to Support His Conspiracy
 Claim...........................................................................5

        I.    Kirk Swanson's Testimony........................................5

        II.    Allyson Ford's Testimony .........................................6

        III.    The Recorded Phone Conversation Does Not Support the
 Existence of a Conspiracy..........................................6

        IV.    Plaintiff's Other Claims Are without Merit .................11

POINT III - PLAINTIFF'S SANCTIONS CLAIM IS WITHOUT MERIT ...............................14

CONCLUSION.....................................................................................17

- i -

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*CAT3, LLC v. Black Lineage, Inc.*,
14 Civ. 5511 (AT) (JCF), 164 F. Supp. 3d 488 (S.D.N.Y. Jan. 12, 2016) ............................ 15

*Ciambriello v. County of Nassau*,
292 F.3d 307 (2d Cir. 2002) ..................................................................................... 4, 6

*D'Amico v. City of New York*,
132 F.3d 145 (2d Cir. 1998) .......................................................................................... 3

*Evans v. Port Auth. of N.Y. & New Jersey*,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) ......................................................................... 8

*Garcia v. Brown*,
268 Fed.Appx. 127 (2d Cir. 2008) ........................................................................... 4, 6

*Hargett v. National Westminster Bank, USA*,
78 F.3d 836 (2d Cir. 1996) ............................................................................................ 9

*Hoppe v. G.D. Searle & Co.*,
779 F.Supp. 1413 (S.D.N.Y.1991) ............................................................................... 9

*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977) ...................................................................................................... 2

*New York ex rel. Spitzer v. St. Francis Hosp.*,
94 F.Supp.2d 423 (S.D.N.Y.2000) ............................................................................ 10

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
262 F. Supp. 2d 251 (S.D.N.Y. 2003) (emphasis supplied). ...................................... 7

*Silverstein v. Chase*,
260 F.3d 142 (2d Cir. 2001) .......................................................................................... 9

*Thaxton v. Simmons*,
No. 9:10-cv-1318, 2013 WL 4806457 (N.D.N.Y. Sept. 9, 2013) ............................... 6

*Thomas v. Roach*,
165 F.3d 137 (2d Cir. 1999) .......................................................................................... 3

*Union Ins. Soc. of Canton, Limited v. William Gluckin & Co.*,
353 F.2d 946 (2d Cir. 1965) .......................................................................................... 8

**Rules**

42 U.S.C. § 1983 ...................................................................................................... 1, 3

RE\55673\0424\2194862v7

FRCP Rule 37 ................................................................................................................. 11, 12

FRCP Rule 56 ................................................................................................................... 1, 3

FRE 1002 ............................................................................................................................... 9

FRE 801(d)(2) ................................................................................................................... 7, 8

FRE 804(b) ............................................................................................................................ 8

FRE 804(b)(3) ....................................................................................................................... 8

FRE 805 ................................................................................................................................. 8

**Treatises**

10A Fed. Prac. & Proc. Civ. § 2727.2 (4th ed.) ................................................................... 7

**LANDLORD DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Defendants Mariners Cove Site B Associates ("**MCSBA**"), Howard Milstein, Steve Rossi, Janet Martin, and Milford Management ("**Milford**") (collectively "**Landlord Defendants**") respectfully submit this memorandum of law in opposition to plaintiff Dr. Steven Greer's ("**Plaintiff**") motion for summary judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("**FRCP**"; "**Rule**" shall refer to a Rule of the FRCP), for judgment as a matter of law.

It is respectfully submitted for the reasons set forth herein, as well as for the reasons set forth in the declaration of Deborah E. Riegel ("**Riegel Decl.**") and Landlord Defendants' motion for summary judgment, including the prior declaration of Stephen Rossi filed in support of same ("**SJ Rossi Decl.**"), that Plaintiff's motion be denied in its entirety. Capitalized terms not defined herein have the meanings ascribed to them in Landlord Defendants' motion for summary judgment.

**PRELIMINARY STATEMENT**

Plaintiff commenced this 42 U.S.C. § 1983 ("**Section 1983**") action against Landlord Defendants, Battery Park City Authority ("**BPCA**"), and Robert Serpico, claiming that BPCA and Mr. Serpico (collectively "**BPCA Defendants**") and Landlord Defendants conspired to not renew Plaintiff's market rate Lease in retaliation for Plaintiff's blogging, which he alleges was critical of defendants. Plaintiff's Section 1983 claim against Landlord Defendants is his only surviving claim against Landlord Defendants; Plaintiff's second, third, and fourth causes of action were dismissed by the Court's Memorandum and Order dated September 30, 2016 (Dkt. No. 177).

Plaintiff now seeks summary judgment as a matter of law with respect to his Section 1983 claim against defendants, however, summary judgment in favor of Plaintiff here is improper because Plaintiff cannot show that there are no issues of material fact that would entitle him to summary judgment as a matter of law.  To the contrary, Plaintiff has not cited any evidence to support his claim, and the record shows that summary judgment should be granted in favor of Landlord Defendants.

Plaintiff's motion for summary judgment on his Section 1983 claim against the Landlord Defendants should be denied.  As demonstrated in Landlord Defendants' summary judgment motion, which is adopted here in its entirety as if fully set forth herein, there is no evidence in the record that suggests that the BPCA Defendants were in any way involved in the decision not to renew Plaintiff's Lease.  Rather, the record overwhelmingly supports the finding that (i) MCSBA had the right, as a matter of law, to elect not to renew Plaintiff's Lease for any reason; (ii) Plaintiff's Lease was not renewed (a) because of Plaintiff's erratic rent payment history and (b) because Plaintiff harassed Building tenants and staff and that (iii) the decision was made solely by Landlord Defendant Mr. Rossi and former Milford employee Lorraine Doyle.

Furthermore, even if Plaintiff could establish a prima facie Section 1983 claim as against Landlord Defendants, which he cannot, summary judgment should still be granted in favor of Landlord Defendants because Landlord Defendants can establish that Plaintiff's habitual failure to pay rent on time and his harassment of Building tenants and staff, standing alone, would have caused Landlord Defendants to elect not to renew Plaintiff's Lease regardless of Plaintiff's blogging history or any actions taken by BPCA Defendants.  *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

- 2 -

## FACTS

We respectfully refer the Court to the Riegel Decl. and Landlord Defendants' motion for summary judgment for the facts of the case.

## ARGUMENT

## POINT I

## SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Rule 56 is properly granted where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  In deciding a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences drawn in his favor.  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

## POINT II

## PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* SECTION 1983 CLAIM AGAINST LANDLORD DEFENDANTS

**A.**    **The Applicable Analytic Framework**

Plaintiff claims that Landlord Defendants and BPCA Defendants colluded to evict Plaintiff from the Premises in retaliation for his blogging, in violation of Section 1983.  Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

RE\55673\0424\2194862v7

"The elements of a § 1983 claim are: (1) that the conduct in question deprived a person of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and (2) that the acts were attributable at least in part to a person acting under color of state law." *Garcia v. Brown*, 268 Fed.Appx. 127, 129 (2d Cir. 2008).

"Although section 1983 only applies to acts committed under color of state law, a plaintiff may state a section 1983 claim against a private entity 'on a section 1983 conspiracy theory' if the complaint 'allege[s] facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *See* February 2016 Order (Dkt. No. 138), pp. 8-9 (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)).

**B.      Plaintiff Has Failed to Show Entitlement to <u>Summary Judgment as a Matter of Law</u>**

Plaintiff's motion for summary judgment fails to demonstrate that Plaintiff, as a matter of law, is entitled to summary judgment against the Landlord Defendants.  Rather than being undisputed, the basic premise of Plaintiff's claim, that defendants conspired with one another not to renew Plaintiff's Lease, is unsupported by any evidence whatsoever, and instead, as set forth in Landlord Defendants' summary judgment motion, the undisputed evidence shows that Steven Rossi and Loraine Doyle independently and without coercion or collusion with any of the BPCA Defendants elected not to renew Plaintiff's Lease due to his chronic non-payment of rent and harassment of Building staff and tenants, each a non-discriminatory reason to do so.  *See* SJ Rossi Decl., ¶¶ 6-64 (and the exhibits annexed and cited therein).

**C.      Landlord Defendants' Adopt their Arguments in Favor <u>of Their Motion for Summary Judgment Herein</u>**

Landlord Defendants adopt all of the arguments made in their motion for summary judgment, filed on June 19, 2016, as if fully made herein. For the same factual and legal reasons that summary judgment should be granted in favor of Landlord Defendants, Plaintiff's motion for

RE\55673\0424\2194862v7

summary judgment must be denied.   Any arguments not already addressed in Landlord Defendants' summary judgment motion are addressed below.

**D.      Plaintiff Has Not Proffered Any Evidence**
**         to Support His Conspiracy Claim**

Plaintiff alleges that the defendants conspired not to renew his Lease, however, Plaintiff has not proffered any evidence, let alone admissible evidence, demonstrating that the BPCA Defendants played any part in Landlord Defendants' decision not to renew the Lease or in Plaintiff's subsequent eviction.   Accordingly, Plaintiff cannot establish a Section 1983 claim against Landlord Defendants.   Plaintiff claims that he has proven his conspiracy theory based on a "mountain of evidence" consisting of the deposition testimony of Kirk Swanson and Allyson Ford and an unauthenticated and inadmissible audio recording of a purported former BPCA employee making a vague description of an email which is, in all events, hearsay.   As set forth below, Plaintiff's claim is without merit.

I.        Kirk Swanson's Testimony

First, Plaintiff alleges that the deposition testimony of Kirk Swanson proves the existence of a conspiracy.   *See* Plaintiff's memorandum of law in support of summary judgment ("**P. Mem.**"), p. 13.   However, as set forth in Landlord Defendants' memorandum of law in support of its summary judgment motion ("**L.D. S.J. Mem.**"), Mr. Swanson, who was fired by the BPCA and is currently suing the BPCA (*see* Swanson Tr., p. 23:19-21, Ex. 60), has no first-hand knowledge of a conspiracy, and based his biased opinion (and only his opinion) that Mr. Serpico was involved in the eviction of Plaintiff on a literal smirk and shrug allegedly made by Mr. Serpico.   *See* L.D. S.J. Mem. pp. 8-9; Swanson Tr., p. 24:8-20, 29:7-25, P. Ex. K. Mr. Swanson's opinion, based on his interpretation of a smirk and shrug, carries no evidentiary

RE\55673\0424\2194862v7

value whatsoever.  *See, e.g.*, *Thaxton v. Simmons*, No. 9:10-cv-1318, 2013 WL 4806457, *11-*12 (N.D.N.Y. Sept. 9, 2013).

II.     Allyson Ford's Testimony

Plaintiff also mischaracterizes the testimony of former BPCA in-house counsel Allyson Ford.  *See* P. Mem. pp. 13-14.  As Plaintiff points out, Ms. Ford testified that she believes that BPCA and Mr. Serpico engaged in "wrongdoing" (P. Ex. L, 25:10-26:6, 42:6-43:12), however, the purported wrongdoing is entirely unrelated to this matter, and Ms. Ford testifies that the "wrongdoing" she is referring to "is not particularly relevant" (P. Ex. L, 26:5-6) to this matter. Ms. Ford's testimony that Mr. Serpico instructed staff not read Plaintiff's blog because it contained false stories does not on its own establish Plaintiff's case against Landlord Defendants. It is not even an element of Plaintiff's prima facie case. *See, e.g., Garcia*, 268 Fed.Appx. at 129; *Ciambriello*, 292 F.3d at 324.

III.    The Recorded Phone Conversation Does Not
        Support the Existence of a Conspiracy

The only other evidence cited to by Plaintiff as purported proof of a conspiracy comes from a recording of a conversation with a person Plaintiff claims to be former BPCA employee Linda Soriero[1], who alleges to have seen an email between Mr. Serpico and Mr. Rossi asking Mr. Rossi to "look into" Plaintiff's "rent situation."  *See* P. Ex. Q.

In the first instance, the Recording, which Plaintiff appears to have made without the permission of the person he alleges to have been Ms. Soriero, is unquestionably inadmissible.  With respect to the authentication of a sound recording, this Court has held the following:

---

[1]  Although it cannot be substantiated from the Recording that the female voice is Ms. Soriero, for the purpose of this motion opposition, Landlord Defendants will refer to the female voice as "Ms. Soriero," although Landlord Defendants do not concede the authenticity of the Recording.

RE\55673\0424\2194862v7

> Pursuant to Fed. R. Evid 901(a), the authentication of any evidence is a condition precedent to its admissibility. *See* Fed.R.Evid. 901(a). "[B]ecause tape recordings are likely to have a strong effect on the jury and are susceptible to alteration, the Second Circuit requires their authenticity to be established by clear and convincing evidence." *United States v. Dinero Express, Inc.,* No. 99 Cr. 75, 2000 WL 1134484, at *1 (S.D.N.Y. Aug.9, 2000); *United States v. Morrison,* 153 F.3d 34, 56 (2d Cir.1998).
>
> *264 13 In assessing whether a proffered sound recording is authentic, the Court is to consider a number of factors, including the following: (1) that the recording device used was capable of taping the conversation now offered in evidence; (2) that the operator of the device was competent to operate it; (3) that the recording is authentic and correct; (4) that changes, additions, or deletions have not been made to the recording; (5) that the recording has been preserved in the manner that is presented to court; (6) **that the speakers are identified**, and (7) that the conversation elicited was made voluntarily and in good faith. *Dinero Express,* 2000 WL 1134484, at *1 n. 3; *see also United States v. Fuentes,* 563 F.2d 527, 532 (2d Cir.1977).

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 263–64 (S.D.N.Y. 2003) (emphasis supplied).  In Penguin, the Court held that an audio recording was inadmissible because there "has been no evidence to establish the identity of the speakers or indeed the relevance of any statements to the publication issue." *Id.*

Plaintiff has not authenticated (and cannot authenticate) the Recording by submitting admissible evidence that the voice on the recording is Ms. Soriero.  Indeed, Plaintiff has not submitted <u>any</u> evidence with respect to the identity of the speaker.  The person on the audio could be anyone in the world claiming to be Ms. Soriero.  Thus, there is absolutely no foundation which would permit consideration of the audio recording.  On this basis alone, the recording should not be considered, since "[m]aterial that is inadmissible will not be considered on a

- 7 -

summary-judgment motion because it would not establish a genuine dispute of material fact if offered at trial and continuing the action would be useless."  10A Fed. Prac. & Proc. Civ. § 2727.2 (4th ed.) (*citing Union Ins. Soc. of Canton, Limited v. William Gluckin & Co.*, 353 F.2d 946, 952 (2d Cir. 1965)).

Moreover, even if Plaintiff could authenticate the recording, its contents are hearsay. Plaintiff's claim that the Recording is not hearsay pursuant to rule 801(d)(2) of the Federal Rules of Evidence ("**FRE**") "because she spoke about things that she directly witnessed" (P. Mem. p. 15) is not correct.  FRE 801(d) permits party statements under certain circumstances, however, the Recording is not a party statement because a statement is not considered a party statement unless the individual making the statement is acting within the scope of her employment.  *See, e.g., Evans v. Port Auth. of N.Y. & New Jersey*, 192 F. Supp. 2d 247, 262 (S.D.N.Y. 2002). ("The only arguable ground for receiving Ortiz's statement is as an admission of a party opponent—the Authority—i.e., as a "statement by a party's agent or servant concerning a matter within the scope of the employment, made during the existence of the relationship." The question, then, is whether Ortiz's statement concerns a matter within the scope of his employment.").

Ms. Soriero was clearly not acting within the scope of her employment when she made the Recording -- quite the opposite.  If, in fact, the speaker was Ms. Soriero, she was acting against BPCA's interest and on her own time without regard to her employment. Unquestionably, her statements were not authorized by BPCA, which was at all times represented by counsel in this action.  Thus, the Recording is not a party statement under FRE 801(d)(2).

Plaintiff's contention that the Recording should be admissible pursuant to FRE 804(b)(3) because it was made against the declarant's interest is equally unavailing.  First, Plaintiff has

- 8 -

made no showing that Ms. Soriero is unavailable, which is required under FRE 804(b).  *See, e.g., Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1413 (S.D.N.Y.1991).  Furthermore, the statements made by Ms. Soriero that Plaintiff is seeking to introduce concern matters in Ms. Soriero's interest – not against her interest.

To be admissible under this Rule, a statement must be known by the declarant to be "contrary to the author's pecuniary or proprietary interest."  *See, e.g., Hargett v. National Westminster Bank, USA*, 78 F.3d 836, 842 (2d Cir. 1996).  Further, "each particular assertion in a narrative should be interpreted within the context of the circumstances under which it was made to determine if that assertion is in fact sufficiently against interest."  *Silverstein v. Chase*, 260 F.3d 142, 148 (2d Cir. 2001).

Here, the Recording as a whole seems to be made entirely in Ms. Soriero's interest, as during the phone call she attempts to list a long list of grievances with BPCA (that are entirely unrelated to this case) and appears to be attempting to formulate a lawsuit against BPCA. Furthermore, the specific portion of statements Plaintiff is seeking to introduce do not concern Ms. Soriero's pecuniary interest; they concern a purported email from Mr. Serpico to Mr. Rossi unrelated to Ms. Soriero or her pecuniary interest in any way.

Additionally, the Recording is double hearsay in that it is an out-of-court description of an email.  Pursuant to FRE 805, "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."  Here, Plaintiff has not attempted to offer a hearsay exception for the purported email.  However, even assuming Plaintiff could provide such an exception, Plaintiff could not overcome FRE 1002, which states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  To the extent Plaintiff argues

- 9 -

that the email referred to in the Recording has not already been produced[2], Plaintiff cannot introduce the portion of the Recording concerning the email because Plaintiff does not have the original email (which is the best evidence of the email) referred to by Ms. Soriero.  *See, e.g., New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F.Supp.2d 423, 428 (S.D.N.Y.2000) (disregarding on summary judgment statements concerning documents because the documents "themselves are the best evidence of their contents").   Thus, the Recording should be disregarded.

However, even taking the Recording at face value and assuming it could overcome the myriad of foundation and hearsay issues described above, it is clear that Ms. Soriero is referring to an email sent *after* Landlord Defendants served the Non-renewal Letter on Plaintiff; not – as Plaintiff baselessly contends – an email made prior to the January 2014 Non-Renewal Letter that supports a conspiracy claim.

During the 11 minute 30 second mark of the Recording (P. Ex. Q, 17:6-14), Ms. Soriero states that she saw an email from Mr. Serpico to Mr. Rossi asking Mr. Rossi to "look into" Plaintiff's "rent situation."  *See* P. Ex. Q.  However, starting at the 12 minute and 34 second mark, Plaintiff asks Ms. Soriero "I first learned of this in January of 2014, when did you think – when do you think you saw that email from Steve Rossi?" Ms. Soriero replies "**Oh my god, over a year and a half ago … before you got evicted**" (emphasis supplied).  *See* P. Ex. Q, 18:7-13.

Plaintiff claims that the Recording was made March 12, 2017.  *See* P. Mem. p. 15.  Ms. Soriero states that she saw the email on Mr. Serpico's screen "over a year and a half ago."  Thus, Ms. Soriero at best stated that she saw the email in approximately September 2015, which is

---

[2]   As more fully set forth below, the email referred to in the Recording appears to have already been produced by BPCA Defendants (see P. Ex. P), and the email is not a "smoking gun" at all and was sent months after the Non-Renewal Letter was sent.  Plaintiff refuses to concede same because, once he does, he will have to face the reality that he has no evidence to support his claim.

**twenty months after Landlord Defendants served Plaintiff with the Non-renewal Notice** and seventeen months after a summary proceeding was commenced against Plaintiff. *See* P. Exs. R and V. September 2015 is also well before Plaintiff was evicted, which occurred in April 2016 (Landlord Defendants note that the lengthy State Court litigation that ultimately led to Plaintiff's eviction was commenced approximately two years prior to Plaintiff's eviction). *See* SJ Rossi Decl., ¶¶ 37-41 (and the exhibits annexed and cited therein). Thus, as per the Recording, Ms. Soriero did not see what could be described as a "smoking gun" email made prior to January 21, 2014, the date of the Non-Renewal Letter.

Furthermore, based on a review of the parties' document productions, Ms. Soriero seems to be referring to an email already produced by BPCA Defendants and Bates stamped BPCA000242 (the "**Email Chain**"; P. Ex. M, p. 2). The email on the top of the Email Chain, which is dated May 28, 2014, 11:43 a.m., from Mr. Serpico to Mr. Rossi, states: "Is he now evicted? Where is he living?" *See* P. Ex. M, p. 2.

Ironically, it was Plaintiff himself who prompted the email. Mr. Serpico sent the top email on the Email Chain to Mr. Rossi eight minutes after the bottom email in the Email Chain, which was sent *by Plaintiff* to twelve individuals (including Mr. Serpico, Mr. Rossi, three New York State Assembly Members, and to the Department of Justice) claiming that he was a victim of retaliatory eviction. It should not be surprising to Plaintiff that Mr. Serpico asked Mr. Rossi about Plaintiff's eviction eight minutes after Plaintiff emailed Mr. Serpico (and various politicians and the Department of Justice) to tell him he was being evicted.

IV.   Plaintiff's Other Claims Are without Merit

Plaintiff's claims that "nowhere in the extensive housing court litigation was evidence of [Plaintiff's nonpayment of rent] produced (P. Mem. p. 18) is entirely untrue. There is extensive evidence in the Housing Court Proceeding record regarding Plaintiff's nonpayment of rent and

- 11 -

his harassing behavior, including affidavits and a rent ledger (see Exhibits E, F, and G), and the claim is clearly refuted by Housing Court orders and judgment annexed as Exhibits A, B, C and D, finding that Plaintiff owed MCSBA rent.

Furthermore, Landlord Defendants note that the summary holdover proceeding commenced against Plaintiff was commenced because he failed to vacate the Premises after his Lease expired.  Riegel Decl., ¶ 12.  It was a tactical decision to bring the summary proceeding to evict Plaintiff based solely on the expiration of his lease rather than the non-payment of rent or because of Plaintiff's harassment (see State Court Proceeding petition; P. Ex. R), because the latter causes of action are more burdensome to prove than the mere expiration of a lease.  *See* Riegel Decl., ¶ 12.  This tactical decision is very common amongst experienced landlord/tenant law practitioners.[3]  In any event, because MCSBA did not assert a cause of action for harassment or non-payment of rent during the time period prior to service of the Non-Renewal Letter in the State Court Proceeding and such claims were not adjudicated by the State Court (although the State Court made multiple rulings that Plaintiff failed to make payments of rent [*see* Exhibits A, B, C and D]), Landlord Defendants are not barred from asserting same in this action.

Plaintiff's claim that his Exhibit W (pp. 1, 4, 7, 8, and 9) shows that Landlord Defendants admitted they made accounting mistakes and that Landlord Defendants' rent accounting system was "chronically inaccurate" (P. Mem p. 18) is a misrepresentation of the content of the emails (which appear to be haphazardly cut and pasted into some sort of word processing document). None of these pages contain any such admissions or evidence thereof.  *See* P. Ex. W, pp. 1, 4, 7, 8, and 9.  The pages show that Landlord Defendants disagreed on amounts owed related to late fees and payments for Plaintiff's storage space, and the disputed amount was at no time greater

---

[3]  The undersigned notes that she has over twenty years of experience litigating in landlord/tenant matters and I am an adjunct professor at Brooklyn Law School and teach its landlord/tenant litigation course.  *See* Riegel Decl., ¶ 13.

than $500.00.  *See* P. Ex. W, pp. 1, 4, 7, 8, and 9.  Further, the pages also do not show Landlord Defendants "admitted to being wrong" (P. Mem p. 18), although Landlord Defendants offered to split the difference to end the contentious dispute.  *Id*.  In any event, disputes over a few hundred dollars, regardless of who is at fault (although Plaintiff appears to be at fault), do not excuse Plaintiff from paying his base rent in the amount of approximately $3,000.00 each month.

Plaintiff's claim that Landlord Defendants never evicted anyone for being "slightly late in rent" (P. Mem. p. 18) is correct, but misleading since Plaintiff was not "slightly late in rent."  As fully set forth in Landlord Defendants' summary judgment motion, Plaintiff owed at least two months of rent during fifteen of the twenty months prior to Plaintiff's eviction, which constitutes extreme chronic non-payment.  *See* SJ Rossi Decl., ¶¶ 10-22 (and the exhibits annexed and cited therein).  Landlords are not interested in chasing tenants for rent each month, which was the case with Plaintiff for years prior to the service of the Non-Renewal Letter.  Further, as set forth in Landlord Defendants' summary judgment motion, Landlord Defendants did take legal action where other residents of the Building who did not pay rent in similar amounts to Plaintiff.  *See* SJ Rossi Decl., ¶¶ 42-53 (and the exhibits annexed and cited therein).

Plaintiff's statement that Landlord declined to renew his Lease "just months" after renewing it in May 2013 (P. Mem. p. 19) is a mischaracterization.  Plaintiff served the January 24, 2014 Non-Renewal Letter *seven* month after his Lease was renewed in May 2013.  *See* P. Ex. V.

Plaintiff's claim that he has been previously designated by this Court as a journalist (P. Mem. p. 4) is without merit.  *See* Dkt. No. 177, p. 10 FN 6 ("At this stage, the Court accepts as true Greer's allegation that he is a journalist"); P. Ex. A at 34:16 to 37:24.

## POINT III

## PLAINTIFF'S SANCTIONS CLAIM IS WITHOUT MERIT

Plaintiff's claims of spoliation of the purported "smoking gun" email (which is no smoking gun at all; *see* P. Ex. P) are instead an admission that he lacks any evidence that would grant him summary judgment. Plaintiff alleges that the defendants' purported spoliation of the purported email warrants sanctions, however, Plaintiff is not entitled to a finding of spoliation. First, as set forth above, no evidence exists to support the existence of the document Plaintiff seeks. However, to the extent the Court disagrees with the foregoing, Plaintiff cannot make a showing that, inter alia, the document he seeks is not available from another source, which is required for a spoliation finding by Rule 37(e).

The standards concerning spoliation are set forth in Rule 37:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

As set forth in Rule 37(e), mere loss of a document or electronically stored information ("**ESI**") is not sufficient for a finding of spoliation; it must also be shown that the evidence "cannot be restored or replaced through additional discovery."  Here, no spoliation has occurred because the purported "smoking gun" email (to the extent such a document existed, which it does not) is available through other means of discovery – namely through BPCA Defendants.  *See, e.g., CAT3, LLC v. Black Lineage, Inc*., 14 Civ. 5511 (AT) (JCF), 164 F. Supp. 3d 488, 497 (S.D.N.Y. Jan. 12, 2016) ("First, it cannot be said that the information lost has been 'restored or replaced.'  Referring to this language in Rule 37(e), the Advisory Committee noted that '[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.'").

The "smoking gun" email as imagined by Plaintiff (if it even exists) is an email sent from BPCA Defendant Mr. Serpico to Mr. Rossi.  Thus, the document would, even now, be in the possession of BPCA Defendants.  BPCA Defendants have reviewed their ESI, produced relevant ESI, and have produced all communications between Defendants Serpico and Rossi, which would necessarily include the purported "smoking gun" email described by Plaintiff.

Because the purported "smoking gun" document would be available from another source, Plaintiff must seek the document from BPCA Defendants before a finding of spoliation can even be considered.  *See, e.g., CAT3, LLC v. Black Lineage, Inc*., 14 Civ. 5511 (AT) (JCF), 164 F. Supp. 3d 488, 497 (S.D.N.Y. Jan. 12, 2016) ("**Thus, relief would not be available under the amended rule where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian**") (emphasis supplied).

Prior to the close of discovery, Plaintiff did not make a motion to compel BPCA Defendants to produce the purported "smoking gun" email, instead subpoenaing Iron Mountain,

which he claims stores all of BPCA Defendants' email, to produce the purported "smoking gun" email. However, Plaintiff's motion was quashed (Dkt. Nos. 324 and 345) and discovery is now closed. Thus, it is Landlord Defendants' position that Plaintiff has the documents at issue (*see* Plaintiff's Exhibit P) or has failed to do so, and has thereby waived any spoliation claims by not seeking the document prior to the close of discovery. Further, there are no special circumstances warranting the reopening of discovery, since no evidence exists supporting the existence of the purported "smoking gun" email and Plaintiff formed his incorrect belief about the purported "smoking gun" email during the March 12, 2017 conversation memorialized in the Recording, which occurred well before the close of discovery on April 14, 2014. *See* April 14, 2017 Order at pp. 1-2; Dkt. No. 319. That said, to the extent the Court disagrees, Plaintiff must first establish that the purported "smoking gun" email "cannot be restored or replaced through additional discovery." *See* Rule 37(e).

Additionally, Plaintiff cannot show that Landlord Defendants could have reasonably anticipated litigation requiring the preservation of Plaintiff's emails prior to the filing of this action. The duty to preserve ESI and other evidence arises when litigation is reasonably anticipated. *Cat3, LLC*, 164 F. Supp. 3d at 496. Landlord Defendants do not concede that Plaintiff's emails from March and May 2014 (*see* Exs. O & P), sent more than a year prior to the commencement of this litigation, put Plaintiff on reasonable notice to preserve its emails. At the time the first of those two emails was sent to Landlord Defendants on March 28, 2014, MCSBA had already served a rent demand, which is a predicate notice to commencing a non-payment proceeding in State Court, on Plaintiff. *See* Exhibit I. Neither non-payment proceedings nor holdover proceeding in State Court require discovery. *See* CPLR 408. Accordingly, in that MCSBA had already taken legal action against Plaintiff that would not (and did not) require

discovery, it had no reason to believe discovery of emails would be required.  Further, Plaintiff does not make any reference to bringing a federal lawsuit in the emails he annexes (*see* P. Exs. O & P) and waited sixteen months after those emails were sent (and after the issuance of a State Court order requiring him to pay twelve months of rent and striking most of his defenses (*see* Exhibit B)) before bringing this action.  Finally, by the last quarter of 2014, and prior to the commencement of this action, Landlord Defendants installed a server which retained all emails through the present.  *See* P. Ex. N.

Finally, any inadvertent loss of ESI on the part of Landlord Defendants was not intentional.  *See* P. Ex N.  In short, in the fourth quarter of 2014, well prior to the commencement of this Action, Landlord Defendants' emails should have been migrated to a new archival server.  *See* P. Ex. N, ¶¶ 16-24.  Some were not, for reasons that cannot be determined.  *Id.*

Accordingly, a finding of spoliation and/or sanctions is not appropriate here.

## CONCLUSION

For the reasons set forth above, it is respectfully requested that Plaintiff's motion for summary judgment be denied in its entirety.

Dated:   New York, New York
         July 19, 2017

                                            Respectfully submitted,

                                            **ROSENBERG & ESTIS, P.C.**
                                            *Attorneys for Landlord Defendants*

                                            By:  _____
                                                      Deborah Riegel
                                            733 Third Avenue
                                            New York, New York 10017
                                            (212) 867-6000

DEBORAH RIEGEL
ISAAC TILTON
   *Of Counsel*

- 17 -