UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN GREER,

                      Plaintiff,

      - against -

DENNIS MEHIEL, ROBERT SERPICO, THE
BATTERY PARK CITY AUTHORITY, HOWARD
MILSTEIN, STEVEN ROSSI, JANET MARTIN,
MILFORD MANAGEMENT and MARINERS COVE
SITE B ASSOCIATES,

                  Defendants.

No. 15-CV-06119 (AJN) (JLC)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE BATTERY PARK CITY AUTHORITY AND
ROBERT SERPICO'S MOTION FOR SUMMARY JUDGMENT**

Michael Tremonte
Justin J. Gunnell
Michael W. Gibaldi
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel:  212.202.2600
Fax:  212.202.4156
E-mail:  mtremonte@shertremonte.com

*Attorneys for the Hugh L. Carey Battery
Park City Authority and Robert Serpico*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

FACTUAL BACKGROUND ....................................................................................... 1

ARGUMENT ............................................................................................................... 1

I.      THERE IS NO EVIDENCE OF A § 1983 CONSPIRACY ............................. 1

II.     THE BPCA PROPERLY EXCLUDED PLAINTIFF FROM THE BOARD
        MEETING ON JULY 29, 2015, BASED UPON PLAINTIFF'S UNDISPUTED
        HISTORY OF ABUSIVE AND HARASSING CONDUCT ........................................ 5

III.    *MONELL* FORECLOSES PLAINTIFF'S CLAIMS AGAINST THE BPCA ............... 7

IV.     AT MOST, PLAINTIFF IS ENTITLED TO NOMINAL DAMAGES ......................... 9

CONCLUSION ........................................................................................................... 11

## **TABLE OF AUTHORITIES**

### **Cases**

*Batista v. Rodriguez*,
    702 F.2d 393 (2d Cir. 1983)...................................................................... 7

*Cameron v. Cmty. Aid For Retarded Children, Inc.*,
    335 F.3d 60 (2d Cir. 2003)........................................................................ 6

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981).................................................................................. 9

*Crenshaw v. N.Y.C. Hous. Auth.*,
    No. 16-2654-CV, 2017 WL 2644637 (2d Cir. June 20, 2017) ......................... 8

*Cusamano v. Sobek*,
    604 F. Supp. 2d 416 (N.D.N.Y. 2009).......................................................... 3

*Dees v. Hyundai Motor Mfg. Ala., LLC*,
    605 F. Supp. 2d 1220 (M.D. Ala. 2009) ...................................................... 6

*Dockery v. Tucker*,
    No. 97-CV-3584 (ARR), 2006 WL 5893295 (E.D.N.Y. Sept. 6, 2006) ......... 10

*Elrod v. Sears, Roebuck & Co.*,
    939 F.2d 1466 (11th Cir. 1991) ................................................................. 7

*Flanagan v. N. Shore Long Island Jewish Health Sys.*,
    No. 11-CV-5246, 2014 WL 4905124 (E.D.N.Y. Sept. 30, 2014) .................... 6

*Guan N. v. NYC Dep't of Educ.*, No. 11-CV-4299 (AJN),
    2014 WL 1275487 (S.D.N.Y. Mar. 24, 2014) ............................................... 8

*H & P Research, Inc. v. Liza Realty Corp.*,
    943 F. Supp. 328 (S.D.N.Y. 1996) ............................................................ 10

*Hnot v. Willis Grp. Holdings Ltd.*,
    No. 01-CV-6558 (GEL), 2005 WL 831664 (S.D.N.Y. Apr. 8, 2005) ............... 6

*In re World Trade Center Lower Manhattan Disaster Site Litig.*,
    846 F.3d 58 (2d Cir. 2017)........................................................................ 9

*Jackson v. Dallas School Dist.*,
    No. 12-CV-1903, 2015 WL 4460975 (M.D. Pa. July 21, 2015) ..................... 9

*Jones v. City of Key West, Fla.*,
    679 F. Supp. 1547 (S.D. Fla. 1988) ............................................................... 9

*Kaur v. N.Y.C. Health & Hosps. Corp.*,
    688 F. Supp. 2d 317 (S.D.N.Y. 2010) ............................................................ 6

*Mancuso v. N.Y. State Thruway Auth.*,
    909 F. Supp. 133 (S.D.N.Y.1995) ................................................................. 9

*Monell v. Dep't of Social Services of the City of N.Y.*,
    436 U.S. 658 (1978) .................................................................................... 7, 9

*Pangburn v. Culbertson*,
    200 F.3d 65 (2d Cir. 1999) ........................................................................... 4

*Phipps v. Comprehensive Cmty. Dev. Corp.*,
    No. 00-CV-6063 (RJH) (KNF), 2005 WL 287413 (S.D.N.Y. Feb. 4, 2005) ................... 2

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ......................................................................... 4

*Smith v. Stratus Computer, Inc.*,
    40 F.3d 11 (1st Cir. 1994) ............................................................................ 2

*Stevens v. N.Y. Racing Ass'n, Inc.*,
    665 F. Supp. 164 (E.D.N.Y. 1987) ............................................................... 5

*Washington v. Kellwood Co.*,
    No. 05-CV-10034 (SN), 2016 WL 3920348 (S.D.N.Y. July 15, 2016) ......................... 10

**Statutes**

42 U.S.C. § 1983 .................................................................................... 1, 9–10

N.Y. Pub. Auth. Law § 1973(7) ................................................................ 8

New York Open Meeting Law ................................................................... 9

**Rules**

Federal Rule of Civil Procedure 26 .......................................................... 10

Federal Rule of Civil Procedure 60(b) ..................................................... 4

Federal Rule of Civil Procedure 59(e) ..................................................... 4

Defendants the Hugh L. Carey Battery Park City Authority ("BPCA") and Robert

Serpico ("Serpico," and together with the BPCA, the "BPCA Defendants") respectfully submit

this Reply Memorandum of Law in further support of their Motion for Summary Judgment.[1]

## FACTUAL BACKGROUND

For the relevant factual background, the BPCA Defendants refer the Court to their Reply

Statement of Material Facts filed pursuant to Local Rule 56.1 (cited herein as Reply 56.1 ¶ __).

## ARGUMENT

**I.   THERE IS NO EVIDENCE OF A § 1983 CONSPIRACY**

The undisputed evidence shows that Plaintiff's lease was not renewed because Plaintiff

failed to pay rent on time and because of complaints about his behavior toward other residents of

200 Rector Place.[2]  (*See* Rossi Decl. ¶¶ 7, 9, ECF No. 381 (filed under seal)).  Plaintiff's

purported "evidence" of an unlawful eviction conspiracy, discussed below, amounts to nothing

more than conclusory assertions and innuendo.  Because he has failed to adduce any competent

evidence to support his eviction conspiracy claim, it must be dismissed.

First, Plaintiff points to the deposition testimony of former BPCA employee Kirk

Swanson, who testified that he "asked Bob [Serpico] if he had anything to do with Greer not

getting his lease renewed" and that, in response, Serpico "visibly smirked" and "shrugged."[3]

---

[1]    The BPCA Defendants adopt and incorporate herein by reference all of the arguments set forth in their opposition to Plaintiff's motion for summary judgment.  (*See* BPCA Defs.' Opp'n, ECF No. 400.)

[2]    Plaintiff continues to insist that he paid his rent on time.  (*See* Pl.'s Opp'n at 6–7.)  Voluminous evidence in the record contradicts this assertion.  (*See* Rossi Decl. ¶¶ 10–22, ECF No. 381 (filed under seal).)  Moreover, Plaintiff is barred by collateral estoppel from relitigating the established fact that he was $10,887.00 in arrears – over three months' rent – as of April 2014, when his lease expired and Mariners Cove Site B Associates ("MCSBA") commenced a nonpayment proceeding against him in the Civil Court of the City of New York ("Housing Court").  (*See* BPCA Defs.' Opp'n at 9 n.9.)

[3]    Plaintiff falsely claims that "the Swanson testimony never mentioned anything about a "roll of the eyes." (Pl.'s Opp'n at 2 n.1.)  Swanson testified:  "The subject might have come up in subsequent conversations and would have elicited a similar response, *an eye roll or something like that*."  (*See* Greer Decl. ¶ 18, Ex. K ("Swanson Dep") at 30:5–8, ECF No. 370 (exhibit filed under seal) (emphasis added).)

1

(*See* Swanson Dep. at 24:16–20.)  Plaintiff erroneously contends that Serpico's response (as recalled by Swanson) constitutes an "adoptive admission" through silence.  (*See* Pl.'s Opp'n at 2–3.)  Courts decline to afford evidentiary weight to such non-verbal gestures because they are inherently ambiguous and unreliable.  *See, e.g.*, *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 18 (1st Cir. 1994) (holding that a "shrug" carried "absolutely no probative force whatsoever").  As Serpico's shrug "could have meant any number of things, or nothing at all," *Smith*, 40 F.3d at 18, Plaintiff cannot demonstrate, as he must, that Serpico's vague gesture "manifested an intent to adopt the statement." *Phipps v. Comprehensive Cmty. Dev. Corp.*, No. 00-CV-6063 (RJH) (KNF), 2005 WL 287413, at *13 (S.D.N.Y. Feb. 4, 2005).  Accordingly, Plaintiff's adoptive admission theory fails.[4]

Equally meritless is Plaintiff's fanciful theory that the existence of an unlawful conspiracy to evict him is established by a cryptic January 2014 email from Vince McGowan to Plaintiff, which states:  "it is good to see that you appreciate what we have on the West Side[.] Hope you can stay[.]"  (Tremonte Decl. ¶ 16, Ex. 15.)  Plaintiff erroneously contends that this email is "not hearsay . . . is admissible and . . . is not irrelevant" because at some unspecified point in time McGowan had "direct communications with Serpico."  (*See* Pl.'s Opp'n at 4.) There is no evidence of such "direct communications" between McGowan and Serpico, and even if there were, such communications would not establish the admissibility of the email.[5]  To the contrary, the email is inadmissible hearsay.  Moreover, as discussed in the BPCA Defendants' moving papers, the McGowan email is entirely irrelevant to Plaintiff's retaliatory eviction claim.

---

[4]    Plaintiff's argument that Swanson's testimony is admissible misses the point.  The BPCA Defendants have not contested the admissibility of Swanson's statements; rather, they contend that the Swanson statements are not probative of a conspiracy to violate Plaintiff's First Amendment rights.

[5]    The BPCA Defendants note that Plaintiff chose not to depose McGowan and failed to ask any questions about communications with McGowan during Serpico's deposition.

(*See* BPCA Defs.' Mem. of Law at 7, ECF No. 372.)  Because the McGowan email is inadmissible and irrelevant, this purported "evidence" must also be disregarded.

The Court should also ignore Plaintiff's baseless arguments predicated on the unauthenticated recording of a phone call purportedly between himself and former BPCA employee Linda Soriero.[6]  As discussed in the BPCA Defendants' opposition to Plaintiff's motion for summary judgment, this recording is not only irrelevant, but it is also double hearsay and violates the Best Evidence Rule (*see* BPCA Opp'n at 10–14), and nothing in Plaintiff's opposition brief in any way supports its admissibility.

Plaintiff's attempted reliance on the testimony of former BPCA attorney Allyson Ford is similarly unavailing.  (*See* Pl.'s Opp'n at 17.)  As discussed in the BPCA Defendants' opposition brief, Ford could not recall a single instance in which Serpico became upset as the result of a blog post.  (*See* BPCA Opp'n at 15–16.)  Such meagre, generalized evidence of Serpico's dislike is wholly insufficient to establish the existence of a conspiracy to violate Plaintiff's constitutional rights.[7]  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 432 (N.D.N.Y. 2009).

Finally, Plaintiff argues that the BPCA must have participated in a conspiracy to remove him from his apartment because, he claims, the BPCA knew that Plaintiff's lease would not be

---

[6]    The BPCA Defendants do not concede that the voice on the recording is, in fact, Linda Soriero's.  (*See* BPCA Defs.' Opp'n at 10 n.10.)

[7]    Plaintiff's scurrilous allegations of spoliation have no merit.  As discussed in the BPCA Defendants' opposition to Plaintiff's motion for summary judgment, Plaintiff cannot establish the destruction of a single document.  (*See* BPCA Defs.' Opp'n at 14 & n.14.)  Plaintiff further misleads the Court by claiming that counsel's objections during depositions constituted "spoliation."  In particular, Plaintiff's assertion that counsel instructed Serpico not to answer any questions concerning a letter from the Office of the New York Inspector General dated September 19, 2013, is false.  At Serpico's deposition, Plaintiff described the letter and asked Mr. Serpico whether he had received it (*see* Greer Decl. ¶ 15, Ex. H at 27:11–28:23, ECF No. 370 (exhibit filed under seal)), and Serpico testified that he had received "hundreds of letters" and did not know the specific letter to which Plaintiff was referring (*see id.* at 29:21–23).  In any event, by Order dated February 8, 2017, Judge Cott expressly allowed counsel to direct a deponent not to answer a question "on the ground that the Court has ordered that such information is not subject to discovery."  Order at 7, ECF No. 241.  The Court's order covers extraneous matters like the Inspector General letter, which is entirely irrelevant to Plaintiff's claims for the reasons set forth in the BPCA Defendants' opposition to Plaintiff's motion for summary judgment.  (*See* BPCA Defs.' Opp'n at 21 n.20.)

renewed "in early January of 2014." (*See* Pl.'s Opp'n at 6.)  None of the evidence cited by

Plaintiff supports this assertion.  The inadmissible tape recording of Linda Soriero says

absolutely nothing about the dates on which she (or anyone else at the BPCA) learned of the

nonrenewal decision; the inadmissible McGowan email says nothing at all about the Landlord

Defendants' decision not to renew Plaintiff's lease; and, according to Swanson, Swanson learned

about the non-renewal decision right around the date of the non-renewal letter from Milford

Management to Plaintiff in late January 2014 (*see* Swanson Dep. at 19:9–15).  In any event,

evidence that the BPCA learned about the non-renewal before Plaintiff could not support the

inference of a conspiracy between Serpico and Rossi.  The non-renewal letter is dated January

24, 2014 (*see* Tremonte Decl. ¶ 17, Ex. 16, ECF No. 373-16), and Plaintiff alleges that he did not

receive the letter until February 2014 (*see* Corrected Am. Compl. ¶ 35, ECF No. 85), so it is

entirely possible that the BPCA could have learned about the non-renewal after the letter was

sent but before Plaintiff claims to have received it.  There is simply no evidence to suggest

otherwise.

In sum, none of Plaintiff's so-called "evidence" lends any support to his eviction

conspiracy claim.  To the contrary, the record contains no evidence of an agreement between

Serpico and Rossi to act in concert towards any unlawful goal.  *See, e.g.*, *Pangburn v.*

*Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Accordingly, the BPCA Defendants are entitled to

summary judgment on Plaintiff's conspiracy claim.[8]

---

[8]       In opposition to the instant motion (*see* Pl.'s Opp'n at 8), as well as his reply in support of his own motion
for summary judgment (*see* Pl.'s Reply at 4–6, ECF No. 412), Plaintiff moves to "reinstate" Mehiel and Serpico as
defendants to his equal access claim pursuant to Federal Rule of Civil Procedure 60(b).  The BPCA Defendants note
that Plaintiff incorrectly relies upon Rule 60(b) instead of Rule 15; Rule 60(b) does not govern motions to amend
that are filed before the entry of a judgment.  *Cf. Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("A
party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant
to Fed. R. Civ. P. 59(e) or 60(b).").  In any event, Plaintiff's motion to "reinstate" Mehiel and Serpico fails whether
it is brought under Rule 15 or Rule 60 because adding Mehiel and Serpico would be futile.  (*See* BPCA Defs.'
Opp'n at 17–21.)

## II.   THE BPCA PROPERLY EXCLUDED PLAINTIFF FROM THE BOARD MEETING ON JULY 29, 2015, BASED UPON PLAINTIFF'S UNDISPUTED HISTORY OF ABUSIVE AND HARASSING CONDUCT

The undisputed record establishes that the BPCA's decision to provide an alternative location for Plaintiff to view the July Meeting was based upon Plaintiff's history of abusive and harassing conduct, was rationally related to the legitimate goal of maintaining security and public order, and did not outweigh the benefits inherent in lesser-restricted access.  Thus, the BPCA's decision comported in all respects with settled law.  *See Stevens v. N.Y. Racing Ass'n, Inc.*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987) (holding that the government may impose "a restriction which affords different degrees of access to members of the press" so long as it is "not content-based," is "rationally related to the accomplishment of a legitimate governmental purpose" and "outweigh[s] the systemic benefits inherent in unrestricted (or lesser-restricted) access.")

In his opposition brief, Plaintiff concedes that he engaged in abusive and harassing conduct.  Plaintiff admits that, at the June 9, 2015 BPCA board meeting, he refused to leave the boardroom after Kevin McCabe asked members of the public to leave so that the board could enter executive session.  (*See* Reply 56.1 ¶ 43).  Plaintiff also admits that he was the only one who refused to leave (*see id.* ¶ 47); that he "stood there and . . . challenged them" (*id.*); that he questioned Mehiel directly because Mehiel was "the guy that I wanted answers from" (*id.* ¶ 45); and that he reluctantly left the room only after McCabe warned that he would call the police (*see id.* ¶ 48).  Plaintiff admits that he repeatedly called BPCA employees – including the "BPCA legal team," its "President" Shari Hyman, Robin Forst, and Craig Hudon – on their private cell phones.  (*See* Pl.'s Opp'n at 15; *see also* Reply 56.1 ¶¶ 23, 25, 33–34, 36.)  And Plaintiff does not dispute that his behavior prompted a camp director to complain about Plaintiff's stalking (*see* Reply 56.1 ¶ 20(a)), or that a mother complained about Plaintiff's harassing children for playing

soccer (*see id.* ¶ 20(b)), although he claims that these events are "misrepresented."  (*See* Pl.'s Opp'n at 16.)

Nor does Plaintiff dispute that reports of Plaintiff's misconduct – that he called a BPCA attorney a "cunt" (*see id.* ¶ 27), stalked a summer camp director (*see id.* ¶ 20(a)), harassed children for playing soccer on a park lawn (*see id.* ¶ 20(b)), and called a BPCA receptionist a "lying piece of trash" (*id.* ¶ 26) – were communicated to Mehiel prior to Mehiel's decision to exclude Plaintiff from the BPCA boardroom.  (*See* Mehiel Decl. ¶ 12 (stating that he discussed with Hyman and McCabe "Plaintiff's documented history of abusive and threatening conduct").[9] These reports provide ample justification for Mehiel's decision to exclude Plaintiff from the BPCA boardroom.  *See Cameron v. Cmty. Aid For Retarded Children, Inc.*, 335 F.3d 60, 65 (2d Cir. 2003) (affirming summary judgment based in part on third-party complaints about Plaintiff, where Plaintiff "had the opportunity to take discovery, but adduces no evidence that these complaints were fabricated," and noting that "inaccuracy of those reports does not matter if [decision maker] believed them"); *Flanagan v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-5246, 2014 WL 4905124, at *10 (E.D.N.Y. Sept. 30, 2014) (holding that complaints about plaintiff's conduct provided non-retaliatory rationale for termination of his employment and noting that, "although plaintiff disputes the accuracy of these complaints, plaintiff does not controvert the clear evidence that these complaints were made").[10]

---

[9]     This evidence is not hearsay because it is offered for its effect on Mehiel's state of mind, and not for its truth.  *See, e.g.*, *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010) (holding that "personnel documents, including the performance reviews, complaints, and the accompanying hand-written notes, are not hearsay because they are not being offered to prove the truth of what they assert."); *Hnot v. Willis Grp. Holdings Ltd.*, No. 01-CV-6558 (GEL), 2005 WL 831664, at *6 n.7 (S.D.N.Y. Apr. 8, 2005) ("Somerville's statements are non-hearsay, admissible not for the truth of the matter asserted (*i.e.*, whether his complaints about plaintiff were accurate), but for their effect on the state of mind of Sarrey, the listener.").

[10]     *Accord Dees v. Hyundai Motor Mfg. Ala., LLC*, 605 F. Supp. 2d 1220, 1225–26 (M.D. Ala. 2009) (holding that "even if, as [Plaintiff] contends, the allegations against him were fabricated, there is no evidence whatsoever

Finally, Plaintiff cannot credibly argue that his inability to take live photographs of BPCA board meetings impaired his constitutional rights.  He has presented no legal authority and no evidence to support his erroneous contention that the ability to take in-person videos or photographs was material to his reporting on BPCA board meetings or that the live video feed was of poor quality.  In fact, the record establishes the exact opposite.  (*See* BPCA Defs.' Mem. of Law at 11–12; BPCA Defs.' Opp'n at 20 n.19.)  Plaintiff often reported on BPCA board meetings by viewing the publicly available live streams without attending the meetings in person, which belies his claim that the video quality was unsatisfactory for his reporting.  (*See* Reply 56.1 ¶¶ 60–63.)  Accordingly, Plaintiff's retaliatory exclusion claim must be dismissed.

## III.   *MONELL* FORECLOSES PLAINTIFF'S CLAIMS AGAINST THE BPCA

The BPCA has produced undisputed evidence establishing that the BPCA lacks the authority to cause either the non-renewal of a lease between any Battery Park City landlord and an individual tenant or the eviction of any individual tenant.  (*See* Reply 56.1 ¶¶ 4–5.)  The BPCA has also established that Plaintiff's exclusion from the BPCA board meeting on July 29, 2015 (the "July Meeting") was not the result of an official BPCA policy or an action by a person with "final authority" over such matters.  (*See id.* ¶ 54).  Plaintiff took no discovery concerning the requirements of *Monell* and has failed to adduce any evidence that he was subjected to any action resulting from an official BPCA policy or custom.  Accordingly, Plaintiff cannot prove – as he must because the BPCA is a public benefit corporation – that his constitutional rights were violated as the consequence of "an official policy or custom."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

---

that the termination committee was not acting in good faith when it terminated him on the basis of those allegations" (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).

In a futile attempt to avoid the consequences of his inability to demonstrate the existence of an official policy or custom, Plaintiff insists, without reference to any evidence, that Dennis Mehiel, as Chairman and CEO of the BPCA, *must have* possessed final decisionmaking authority to exclude Plaintiff from the BPCA boardroom.  (*See* Pl.'s Opp'n at 10–12.)  This bald assertion ignores the critical distinction between decisionmaking authority, which Mehiel undeniably possessed, and *final* decisionmaking authority, which he did not (*see* Reply 56.1 ¶ 54 (citing Mehiel Decl. ¶ 16)).  *See, e.g.*, *Guan N. v. NYC Dep't of Educ.*, No. 11-CV-4299 (AJN), 2014 WL 1275487, at *14 (S.D.N.Y. Mar. 24, 2014) (Nathan, J.).  The Second Circuit rejected the very argument advanced by Plaintiff in a recent decision, which was published shortly after the BPCA moved for summary judgment.  *See Crenshaw v. N.Y.C. Hous. Auth.*, No. 16-2654-CV, 2017 WL 2644637, at *3–4 (2d Cir. June 20, 2017).  As in this case, the plaintiff in *Crenshaw* insisted that the New York City Housing Authority Chairman "as a matter of common sense . . . exercises policymaking authority for NYCHA."  2017 WL 2644637, at *4.  The Second Circuit rejected this argument, holding that, under applicable law, final policymaking authority had been vested in a seven-member board, rather than the chairman of that board, and found no evidence that the board had delegated final policymaking authority the chairman.  *See id.*  Because there is no evidence that Mehiel possessed final decisionmaking authority over the matters at issue here, the result in *Crenshaw* is also compelled here.[11]

Finally, the Court should ignore Plaintiff's purely speculative assertion that "the BPCA could exert power over those building managers, as any landlord can to any tenant, in [sic] to

---

[11]     Although Plaintiff's observes that the BPCA Act *permits* delegation of authority to individual members, officers, or employees (*see* Pl.'s Opp'n at 11 (citing N.Y. Pub. Auth. Law § 1973(7))), Plaintiff has failed to adduce any evidence that the BPCA *in fact* delegated final decisionmaking authority to Mehiel on the subject of excluding individuals from board meetings.

influence individual resident leases, as the BPCA did in this instant case before the Court" (*see* Greer Decl. ¶ 2, ECF No. 395), which is unsupported by any evidence in the record.[12]  Because Plaintiff cannot meet his burden under *Monell*, the BPCA Defendants (and Serpico in his official capacity) are entitled to summary judgment on both of Plaintiff's remaining claims.

## IV.    AT MOST, PLAINTIFF IS ENTITLED TO NOMINAL DAMAGES

Under settled law, as a public benefit corporation, the BPCA enjoys complete immunity from punitive damages for § 1983 claims.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Plaintiff cannot cite to contrary authority, because no such authority exists.[13] Accordingly, Plaintiff's claim punitive damages against the BPCA must be dismissed.

Plaintiff is not entitled to compensatory damages for the additional reason that he has failed to develop any facts in discovery to support his various theories of damages.  Indeed, Plaintiff adamantly refused during his deposition to answer even the most basic questions concerning his claimed damages based on his alleged mental anguish and reductions in the value of his businesses and apartment lease.  (*See* BPCA Defs.' Mem. of Law at 17–24.)  Nothing in Plaintiff's reply can salvage Plaintiff's own refusal to develop the factual record as to damages.[14]

---

[12]    Plaintiff does not support his conclusory assertion that his claims also stem from a "failure to train."  (*See* Pl.'s Opp'n at 11–12.)  His vague attempts to point to the Inspector General's letter and testimony concerning trainings on the New York Open Meeting Law in support of his *Monell* claims is misplaced.  First, the Court has already dismissed Plaintiff's open meeting law claims, and second, none of the evidence Plaintiff cites bears any causal connection to Plaintiff's alleged harms.

[13]    None of the cases cited by Plaintiff – *In re World Trade Center Lower Manhattan Disaster Site Litigation*, 846 F.3d 58 (2d Cir. 2017), *Mancuso v. New York State Thruway Authority*, 909 F. Supp. 133 (S.D.N.Y.1995), *Jones v. City of Key West, Florida*, 679 F. Supp. 1547 (S.D. Fla. 1988), and *Jackson v. Dallas School District*, No. 12-CV-1903, 2015 WL 4460975 (M.D. Pa. July 21, 2015) – held that punitive damages may be imposed against a municipal entity.

[14]    For the first time in this litigation, Plaintiff now claims that he is "an Expert Witness on Business Valuation."  (*See* Pl.'s Opp'n at 25.)  The Court should not consider Plaintiff's attempt to inject his "expert" opinion into his opposition to summary judgment, particularly where Plaintiff refused to answer questions at his deposition that would relate to his qualifications as an expert, such as questions about his background in the financial sector. (*See, e.g.*, Greer Decl. ¶ 17, Ex. J ("Greer Dep.") at 32:25 – 33:25 (refusing to answer questions about employment at Sigma Capital Management and Merrill Lynch), ECF No. 370 (exhibit filed under seal).)  Should Plaintiff's claims survive summary judgment (which they should not), the BPCA Defendants reserve the right to demand a

9

Plaintiff's citation to Ohio law lends no support to his "lost business value" damages

calculation.  (*See* Pl.'s Opp'n at 22–23.)  Whether couched as lost profits or a loss in company

value, such damages – like any other type of damages – "must be proven with sufficient certainty

and not be speculative."  *H & P Research, Inc. v. Liza Realty Corp.*, 943 F. Supp. 328, 331

(S.D.N.Y. 1996).  Plaintiff's method of establishing his companies' value – by comparison to

other, purportedly similar businesses – "can rarely provide a stable basis for a damages

calculation because the ultimate conclusions are still projections . . ."  *Washington v. Kellwood*

*Co.*, No. 05-CV-10034 (SN), 2016 WL 3920348, at *8 (S.D.N.Y. July 15, 2016) (internal

citations and quotations omitted).  Here, Plaintiff has failed to adduce any evidence to support

his comparisons, apart from the purely subjective, self-serving calculations in his initial

disclosures.  Plaintiff's guesswork, unsupported by evidence and unconnected to any cogent

rationale or causal connection with his alleged constitutional violations, must be disregarded.

Finally, Plaintiff's assertion that he was "frugal and reasonable rather than profligate,"

(Pl.'s Opp'n at 28), carries no weight on summary judgment and, in any event, is flatly

contradicted by the record.  The documentation of Plaintiff's multiple moves, extended stays at

luxury hotels, purchase of a Mercedes-Benz, and meals at expensive restaurants speaks for

itself.[15]

---

written expert report pursuant to Federal Rule of Civil Procedure 26(a)(2), to depose Plaintiff in his capacity as an
expert pursuant to Federal Rule of Civil Procedure 26(b)(4)(A), and to object to Plaintiff's qualification as an expert
in the field of business valuation.

[15]     Plaintiff erroneously asserts that *Dockery v. Tucker* is inapposite because it is a criminal case.  (*See* Pl.'s
Opp'n at 24.)  *Dockery* is a civil case in which a *pro se* plaintiff had alleged § 1983 claims, just as Plaintiff does
here. *See Dockery v. Tucker*, No. 97-CV-3584 (ARR), 2006 WL 5893295, at *6 (E.D.N.Y. Sept. 6, 2006).

## CONCLUSION

For the reasons set forth above, the Court should grant the BPCA Defendants' Motion for

Summary Judgment in its entirety.


Dated:       August 2, 2017
             New York, New York

                                         SHER TREMONTE LLP

                                         By: ___/s/ Michael W. Gibaldi_____
                                         Michael Tremonte
                                         Justin J. Gunnell
                                         Michael W. Gibaldi
                                         90 Broad Street, 23rd Floor
                                         New York, New York 10004
                                         Tel:  212.202.2600
                                         Fax:  212.202.4156
                                         E-mail:  mtremonte@shertremonte.com

                                         *Attorneys for the Hugh L. Carey Battery*
                                         *Park City Authority and Robert Serpico*

11